# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF TEXAS

# BEAUMONT DIVISION

| | | |
|---|---|---|
| **GUSTAVO JULIAN GARCIA, #999018** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:08-cv-720 |
| | § | |
| **DIRECTOR, TDCJ-CID,** | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND
## ORDER OF DISMISSAL

Petitioner Gustavo Julian Garcia ("Garcia"), an inmate confined in the Texas prison system, filed the above-styled and numbered petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Garcia is challenging his capital murder conviction and death sentence imposed by the 366th Judicial District Court of Collin County, Texas in Cause Number 366-80185-91, in a case styled *The State of Texas vs. Gustavo Julian Garcia*. For reasons set forth below, the Court finds that the petition is not well-taken and that it will be denied.

## PROCEDURAL HISTORY OF THE CASE

On December 17, 1991, Garcia was convicted of the offense of capital murder for shooting and killing Craig Turski in the course of committing a robbery at a liquor store where Turski worked. Tex. Penal Code § 19.03(a). After granting the State's motion for rehearing, the Texas Court of Criminal Appeals ("TCCA") upheld Garcia's conviction and death sentence. *Garcia v. State*, 919 S.W.2d 370 (Tex. Crim. App. 1996) (*Garcia I* ). Garcia did not file a petition for a writ of certiorari.

Garcia filed his first application for a writ of habeas corpus in state court in 1997. On December 31, 1998, the state trial court issued findings of fact and conclusions of law. The TCCA denied the application without written order. *Ex parte Garcia*, No. WR-40,214-01 (Tex. Crim. App. Feb. 10, 1999) (unpublished).

Garcia filed his first petition for a writ of habeas corpus in this Court on August 23, 1999, which was supplemented on August 16, 2000. *Garcia v. Director, TDCJ-ID*, Civil Action No. 1:99cv134. In response, the Director confessed error as to Garcia's claim that the trial court allowed improper testimony by the State's expert witness during the punishment phase of the trial. On September 6, 2000, as a result of the response, the Court issued a conditional writ of habeas corpus, requiring the State to conduct a new sentencing hearing.

A punishment retrial was begun in January 2001. Based on the jury's answers to the special issues, Garcia was sentenced to death a second time on March 23, 2001. The Texas Court of Criminal Appeals affirmed the judgment. *Garcia v. State*, No. AP-71,417, 2003 WL 22669744 (Tex. Crim. App. Nov. 12, 2003) (unpublished) (*Garcia II* ). The Supreme Court denied his petition for a writ of certiorari. *Garcia v. Texas*, 543 U.S. 855 (2004).

Garcia then filed a second application for a writ of habeas corpus in state court. On February 12, 2008, the state trial court issued thorough findings of fact and conclusions of law. The TCCA denied relief. *Ex parte Garcia*, No. WR-40,214-02, 2008 WL 4573962 (Tex. Crim. App. Oct. 15, 2008) (unpublished).

Garcia began the present proceedings on November 27, 2008. He filed a petition for a writ of habeas corpus (docket entry #5) on October 11, 2009. The petition contains sixty-six claims, many of which overlap and are repetitious. Related claims will be grouped together for purposes of

discussion and analysis. The Director filed an answer (docket entry #31) on August 1, 2012. Garcia

filed a reply (docket entry #37) on April 26, 2013.

## FACTUAL BACKGROUND OF THE CASE

The TCCA summarized the facts of the offense as follows:

> The evidence at trial established that on December 9, 1990 [Garcia] and Christopher Vargas entered a liquor store, Beverage Warehouse, in the city of Plano. [Garcia] was armed with a single shot .20 gauge sawed-off shotgun and had additional shells in his possession. [Garcia] ordered the clerk, Craig Turski, to give him the money from the cash register. At the same time, Vargas took beer from the store and put it in their car. A female customer walked in the store, saw [Garcia], and immediately left.

> [Garcia] shot Turski at close range in the abdomen. Turski fled outside the store, pursued by [Garcia]. [Garcia] then reloaded the shotgun and shot Turski in the back of the head. The female customer, Donna Delozier Sawtelle, subsequently returned to the store with her husband. Finding the store deserted, they called the police. Turski was found and was transported to the hospital, where he later died from gunshot wounds.

> On January 5, 1991 at about 12:30 a.m., Vargas, [Garcia] and [Garcia's] girlfriend (Sheila Phanae Loe) stopped at a Texaco station in Plano. While Loe pumped gas, [Garcia] and Vargas entered the station with the same .20 gauge shotgun used to kill Turski. The clerk, Gregory Martin, was on the phone with his girlfriend. As he saw them enter, he informed her he thought he was about to be robbed and asked her to call the police. Martin was taken into a back room and shot at point blank range in the back of the head. He died at the scene.

> [Garcia] claimed Vargas shot Martin. Evidence introduced at trial, however, indicated Vargas was carrying beer to their car (as he did in the earlier robbery) while [Garcia] shot the clerk. In addition, the shotgun was found near the freezer in close proximity to [Garcia] at the time of his capture. Two firearms experts testified at trial that the shotgun found at the scene of Martin's murder was the same weapon used in Turski's murder.

> Alerted by Martin's girlfriend, the police arrived at the scene to find [Garcia], Vargas and Loe still present, Vargas was found, unarmed, standing over Martin's body. He claimed to have just entered the store and found Martin lying there. [Garcia] was found hiding in the freezer area close to where the shotgun was found.

> [Garcia] was transported to the Plano Police Department. He was read his "Miranda" warnings repeatedly. He subsequently confessed, both orally and in writing, to the murders of both Turski and Martin. His confessions were videotaped, and a separate written confession was prepared for each offense.

[Garcia's] written statement regarding the killing of Turski in its entirety reads as follows:

> Det. Wilson is writing my statement. Approx. 3–4 weeks from today's date, Chris Vargas & I robbed a liquor store & I killed the clerk. The liquor store was behind a 7–11 store at Plano Pkwy. & Ave. K. I was driving Sheila's Chev. Monza. We waited in the liquor store parking lot until the customers all left. Both Chris & I pulled a 20 ga. sawed-off shotgun on the clerk. I had the clerk give me the money out of the cash register & it was about $500. Chris was grabbing up beer. Chris went outside to pull the car up to the front door. I had the clerk go into a little room next to the cash register & I had him get on his knees. A customer, a white woman walked in the store & saw me & she walked back out. I then panicked and I shot the clerk with the shotgun. The clerk started coming at me & threw a chair at me and then he ran outside. I loaded the shotgun & shot the clerk again outside the store. The clerk had jumped over the fence & was in some grass when I shot him the 2nd time. I then ran to the car & we drove off. I told Sheila my common-law wife about the robbery after we did it. End—G.G.

> The statement was completed at 9:05 a.m. on January 5, 1991. Each page is signed by [Garcia] and two witnesses. The statement was taken by Det. David Wilson of the Plano Police Department. . . .

> At trial, an acquaintance of [Garcia], Bobby Flores, testified he was at Vargas' house the night of the Turski murder. Flores testified that Vargas and [Garcia] left the house and subsequently returned with beer and a lot of money. Flores asked [Garcia] where he got the beer and money. [Garcia] in response stated he went into a store, took the beer and money, shot the clerk and left.

*Garcia I*, 919 S.W.2d at 383-85.

## STANDARD OF REVIEW

The petition was filed in 2009, thus review is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas corpus relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "By its terms § 2254 bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, ___, 131 S. Ct. 770, 784 (2011). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation and internal quotation marks omitted). With respect to the first provision, a "state court decision is 'contrary to' clearly established federal law if (1) the state court 'applies a rule that contradicts the governing law' announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts." *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (*en banc*) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)), *cert. denied*, 551 U.S. 1141 (2007). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). As such, "evidence later introduced in federal court is irrelevant." *Id.* at 1400. "The same rule necessarily applies to a federal court's review of purely factual determinations under § 2254(d)(2), as all nine Justices acknowledged." *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011), *cert. denied*, 133 S. Ct. 105 (2012). With respect to § 2254(d)(2), a Texas court's factual findings are presumed to be sound unless a petitioner rebuts the "presumption of correctness by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). The "standard is demanding but not insatiable; . . . [d]eference does not by definition preclude relief." *Id.* (citation and internal quotation marks omitted). More recently, the Supreme Court held that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*,

131 S. Ct. at 786.   The Supreme Court has explained that the provisions of AEDPA "modified a

federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas

'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."

*Bell v. Cone*, 535 U.S. 685, 693 (2002).   Federal habeas corpus relief is not available just because a

state court decision may have been incorrect; instead, a petitioner must show that a state court decision

was unreasonable.   *Id.* at 694.   Furthermore, when a state court provides alternative reasons for

denying relief, a federal court may not grant relief "unless *each* ground supporting the state court

decision is examined and found to be unreasonable under AEDPA."   *Wetzel v. Lambert*, 132 S. Ct.

1195, 1199 (2012) (emphasis in original).

## DISCUSSION AND ANALYSIS

**Claim Number 1:  Plano police interrogated Garcia and obtained a confession in violation of *Miranda v. Arizona*[1] and the guarantee against self-incrimination afforded by the Fifth Amendment to the United States Constitution.**

**Claim Number 2:  Plano police interrogated Garcia and obtained a confession in violation of his Sixth Amendment right to effective assistance of counsel.**

**Claim Number 3:  Plano police interrogated Garcia and obtained a confession in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.**

Garcia's first three claims concern his confession where he admitted killing Turski.   He asserts

that the Plano police did not comply with the long-standing requirements of *Miranda* and the Fifth,

Sixth and Fourteenth Amendments.   He argues that his confession should not have been admitted.

The issue of whether Garcia's confession should have been admitted into evidence was fully

developed in his first direct appeal.   In *Garcia I*, the TCCA discussed the facts surrounding the making

of the confession as follows:

---

[1]384 U.S. 436 (1966).

[Garcia] was transported to the Plano Police Department. He was read his "Miranda" warnings repeatedly. He subsequently confessed, both orally and in writing, to the murders of both Turski and Martin. His confessions were videotaped, and a separate written confession was prepared for each offense. . . . The statement was completed at 9:05 a.m. on January 5, 1991. Each page is signed by [Garcia] and two witnesses. The statement was taken by Det. David Wilson of the Plano Police Department. At the top of the first page of the statement appears the following:

> I, the undersigned Gustavo Julian Garcia, am 18 years of age, having been born on 9-27-72 at _____. I now live at 804 N. Tennessee, McKinney, Tx. I have been duly warned and advised by Det. David Wilson, a person who has identified himself as an office of the Plano Police Department, that:
>
> GG[ ] (1) I have the right to remain silent and not make any statement at all and any statement I make will be used against me at my trial.
>
> GG[ ] (2) Any statement I make will be used as evidence against me in court.
>
> GG[ ] (3) I have the right to have a lawyer present to advise me prior to an during questioning;
>
> GG[ ] (4) If I am unable to employ a lawyer, I have the right to have a lawyer appointed (without cost to me) to advise me prior to and during my questioning; and
>
> GG[ ] (4) [sic] I have the right to terminate the interview at any time.

Before each of the numbered warnings appear the initials "G.G." These warnings are repeated on each page of the statement and the initials "G.G." appear before each part of the warnings.

Finally, at the bottom of each page, immediately above [Garcia's] signature, appears the following:

> I have read each page of this statement consisting of *2* page(s), each page of which bears my signature, and corrections, if any bear my initials, and I certify that the facts contained herein are true and correct. I further certify that I have made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

*Garcia I*, 919 S.W.2d at 384-85. Garcia subsequently filed a motion to suppress the confession. After

a hearing, the trial court found that Garcia "evidenced his understanding of his rights and waiver

thereof on the face of the statement by placing his initials by each of the warnings that appear on the

face of his written confession. . . . The court also found he orally waived his rights *after* being informed of his rights under *Miranda*, *supra*, and *prior* to giving his written statement." *Id.* at 387 (emphasis in original).

The issue of whether the written statement should have been admitted into evidence was the primary bone of contention in Garcia's first direct appeal. The Texas Legislature codified the requirements of *Miranda* in passing Tex. Code Crim. Proc. Ann. art. 38.22. The TCCA initially reversed Garcia's conviction and held that the written statement did not comply with art. 38.22 § 2(b). *Id.* at 379. The TCCA explained that "[u]nder art. 38.22, § 2(b) the written statement must show *on its face* the knowing, intelligent, and voluntary waiver of each of the rights of art. 38.22, § 2(a). Art. 38.22, § 2(b) is clear and unambiguous, and 'the Legislature is *constitutionally entitled* to expect that [we] will faithfully follow the specific text that was adopted.'" *Id.* (emphasis in original) (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). The TCCA chose to forego considering whether the statement substantially complied with the statutory requirements. *Id.*

The TCCA reversed itself after the State filed a motion for rehearing. The Court observed that Garcia was clearly given his warnings and that Garcia specified that he understood his rights and knew what he was doing when he gave his statement. *Id.* at 386. "[T]he individual initialing of the paragraphs by [Garcia] pertaining to his right to remain silent and to the likelihood that any statement he made would be used against him in court, when taken into context with the language at the bottom of each page next to his signature, is evidence that he knowingly, voluntarily and intelligently waived the protections afforded [Garcia] by Sections 2(a)(1) and 2(a)(2)." *Id.* The TCCA noted that the preferable practice is for a written statement, to unambiguously meet the requirements of Section 2(b), to include the words "I knowingly, voluntarily and intelligently waived the rights described above before and during the making of this statement." *Id.* (citations omitted). The TCCA, nonetheless,

found that "though a close call, [Garcia] did, on the face of his voluntary statement, knowingly, voluntarily and intelligently waive his Section 2(a) rights in a manner sufficient to comply with the legislature's intent when it enacted Section 2(b)." *Id.*

Garcia challenged the admission of his confession in both of his state applications for a writ of habeas corpus. In the first habeas corpus proceedings, the trial court found that "review is procedurally barred from Habeas Corpus Review as each assertion has been raised and rejected on direct review." SHCR-01 at 97.[2] The TCCA subsequently denied the application without written order. Garcia challenged the confession again in claim numbers twelve through fourteen of his second state application for a writ of habeas corpus. The TCCA found that the allegations were procedurally barred from habeas review because they had already been raised and rejected on direct appeal. *Garcia*, 2008 WL 4573962, at *1 (citing *Ex parte Acosta*, 672 S.W.2d 470, 472 (Tex. Crim. App. 1984)).

In claim number one, Garcia argues that the police interrogated him and obtained a confession in violation of *Miranda* and the guarantee against self-incrimination afforded by the Fifth Amendment. The Supreme Court held that prior to custodial interrogation a suspect must be informed:

> 1) that he has the right to remain silent
> 2) that anything he says can be used against him in court
> 3) that he has the right to consult with counsel prior to questioning
> 4) that he has a right to have counsel present at the interrogation, and
> 5) that if he cannot afford an attorney, one will be appointed for him

*Miranda*, 384 U.S. at 468-70. If an individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, and/or that he wants an attorney, the interrogation must cease. *Id.* at 474. However, a suspect's invocation of either his right to remain silent or his right to counsel must be unambiguous. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).

---

[2] "SHCR-01" refers to the state habeas clerk's record from the initial habeas proceeding, followed by the page number.

9

"*Miranda* holds that '[t]he defendant may waive effectuation' of the rights conveyed in the warnings 'provided the waiver is made voluntarily, knowingly and intelligently.'" *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Miranda*, 384 U.S. at 444, 475).  The inquiry has two dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran*, 475 U.S. at 421 (internal quotations and citations omitted).  "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." *Id.* at 422-23.

In the present case, Garcia was clearly told of his rights and the written statement provides evidence that he understood those rights and voluntarily, knowingly and intelligently chose to waive them.  Garcia emphasizes that although he was informed of his rights in writing, he did not explicitly waive them in writing.  The Texas Court of Criminal Appeals initially held that under state law the form Garcia signed was inadequate because he did not sign an expressed waiver of his rights and that he only initialed that he understood those rights.  On rehearing, the Texas Court of Criminal Appeals held that even without an expressed written waiver, the police had substantially complied with the state law requirements.

Garcia contends that "the written statements were clearly flawed in the absence of written waivers of Garcia's Fifth Amendment rights." Pet. 80.  This contention is without merit.  "[W]aivers may be direct or, in some instances, they may 'be clearly inferred from the actions and words of the person interrogated.'"  *United States v. Collins*, 40 F.3d 95, 99 (5th Cir. 1994) (quoting *North*

10

*Carolina v. Butler*, 441 U.S. 369, 373 (1979)). "A refusal to sign a waiver may indicate nothing more than a reluctance to put pen to paper under the circumstance of custody." *United States v. McDaniel*, 463 F.2d 129, 135 (5th Cir. 1972), *cert. denied*, 413 U.S. 919 (1973). The Supreme Court recently emphasized that a "suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police." *Berghuis*, 560 U.S. at 388-89. Furthermore, *Miranda* "does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights." *Id.* at 385. The Fifth Circuit has accordingly held if the circumstances surrounding an arrest and interview reveal that a waiver was voluntary, then the confession is admissible despite the suspect's refusal to sign a waiver form. *United States v. Oliver*, 630 F.3d 397, 410 (5th Cir.) (citing *Berghuis*, 560 U.S. at 384-85), *cert. denied*, 132 S. Ct. 758 (2011). It is clear under the circumstances of this case that Garcia's waiver of his rights was voluntary. Garcia's contention that he had to explicitly waive his rights in writing lacks any basis in clearly established federal law.

The Court would add that Garcia's focus on an alleged violation of Texas law is misplaced. A petitioner seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). In the course of reviewing state proceedings, a federal court does "not sit as a super state supreme court to review error under state law." *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007), *cert. denied*, 552 U.S. 1314 (2008); *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983), *cert. denied*, 469 U.S. 873 (1984). Garcia's first claim lacks merit.

Moreover, the TCCA's analysis appropriately focused on whether Garcia knowingly, intelligently and voluntarily waived his rights in determining that the written statement was admissible. Garcia has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Claim number one should be denied because it lacks merit under clearly established federal law and for the additional reason that Garcia has not satisfied the requirements of § 2254(d).

Garcia's second claim is that the police interrogated him and obtained a confession from him in violation of his Sixth Amendment right to effective assistance of counsel. Under *Miranda,* a suspect in custody must be informed of certain rights before he can be questioned, and three of those rights concern his right to the assistance of counsel. Garcia was informed of those rights, and nevertheless answered the detectives's questions and confessed. He now contends that "had he been notified that he had the right not to waive the rights described to him, then it is possible that Garcia would have sought the advice of counsel, who would have advised him not to give a written confession . . ." Pet 83.

In *Davis v. United States*, 512 U.S. 452, 462 (1994), the Supreme Court of the United States held that police questioning of a suspect must cease once the suspect clearly asserts his right to counsel, but ambiguous statements such as "maybe I should talk to a lawyer" are insufficient to invoke that right. In the present case, Garcia was clearly informed of his right to counsel. He made no statements at all concerning his right to counsel, ambiguous or otherwise, so the police's interrogating Garcia and obtaining a confession from him did not violate his right to the assistance of counsel. The state court's rejection of this claim was neither contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in *Berghuis, Miranda* and *Davis.*

The Director also appropriately noted that Garcia incorrectly alleged that the right to counsel attached at the time he confessed. The Sixth Amendment right to counsel attaches when the State commences prosecution against a defendant. *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). Prosecution commences at "the initiation of adversary judicial criminal proceedings - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery v. Gillespie County*, *Tex.*, 554 U.S. 191, 198 (2008) (citations omitted). Garcia was not arraigned until after he had given his confessions. He did not invoke his right to counsel before confessing. He was not denied his Sixth Amendment right to effective assistance of counsel. Garcia's second claim lacks merit.

Garcia's third claim is that Plano police interrogated him and obtained a confession in violation of the Due Process Clause of the Fourteenth Amendment. The admission of a confession which was not made voluntarily and with knowledge of the rights being waived is a violation of the Due Process Clause. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *Moran*, 475 U.S. at 421. There are two inquiries to determine whether the accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination. First, the waiver of the right must be voluntary in that it was not a product of intimidation, coercion, or deception. "[C]oercive police activity is a necessary predicate to a finding that a confession was not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Connelly*, 479 U.S. at 167. Second, the relinquishment must be made with a full awareness of the nature of the right being waived and the consequences of the decision to waive it. "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." *Moran*, 475 U.S. at 422-23.

Garcia contends that the police engaged in deception in extracting his written statements. He asserts that the normal practice under state law was for a suspect to explicitly waive his *Miranda* rights by initialing a paragraph so stating. The forms utilized by the police department for written statements originally contained these provisions, but the forms which contained Garcia's written statements appeared to have been altered - the waiver provisions had been removed. Garcia also contends that he did not have full awareness of the rights he was waiving and the consequences of his decision to waive them because he was only four months past his eighteenth birthday, with moderate education, and he was exhausted, hung over, lacking his glasses, and unable to adequately read the statements written for him. Pet. 80.

Because the Constitution does not require an explicit written declaration of waiver of *Miranda* rights, the removal of provisions to that effect in a standardized form cannot constitute deception for purposes of the Due Process Clause. Further, the Court presumes that an English-speaking citizen over the age of 18 with moderate education understands the meaning of properly worded *Miranda* warnings.[3] With respect to whether Garcia could read his confession, Detective Wilson testified that Garcia could not only read without his glasses, but also told him that he could read without his glasses. 12 RR(1991) 1037-38.[4] Wilson added that he watched Garcia read it and appeared to understand it. *Id.* at 1038. On state habeas review, the state court found both that Garcia could and did read his written statements without his glasses. SHCR-01 at 96. The TCCA subsequently denied the application, meaning that it was a finding on the merits. *See Miller v. Johnson*, 200 F.3d 274, 281

---

[3] *Compare Garner v. Mitchell*, 557 F.3d 257 (6th Cir. 2009)

[4] "RR" refers to the Reporter's Record of the transcribed trial proceedings, preceded by the volume and followed by page number(s). Because there were two trials in this case, "RR" is followed in parenthesis by a designation of the year in which the trial was conducted.

(5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). The TCCA further found that Garcia was not so intoxicated that his confessions could be considered involuntary.[5] Garcia has made no attempt to show that these findings were unreasonable, as required by 28 U.S.C. § 2254(d); thus, the Court finds that the state court's rejection of this claim was neither contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in *Connelly* and *Moran*, nor based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Garcia's third claim lacks merit.

Finally, with respect to the first three claims, relief should be denied even if there was error because the error was harmless. The Director correctly noted that the proper harmless error analysis on federal habeas corpus review is whether the error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Garcia argued that the *Chapman*[6] harmless error analysis applies, but *Chapman* concerns the standard to apply on direct appeal. *See Horn v. Quarterman*, 508 F.3d 306, 322 n.24 (5th Cir. 2007), *cert. denied*, 553 U.S. 1020 (2008).

Here, putting aside Garcia's confession, the jury heard testimony from Shawn Robinson and Bobby Flores, who were friends of Garcia and Vargas, regarding the events of that night. Bobby Flores testified that the four friends were at Vargas' home in Plano, Texas on the afternoon of December 9, 1990. 62 RR(1991) 188. Shawn Robinson provided identical testimony. 64 RR(1992) 631-32. They were listening to music and drinking beer. 61 RR(1991) 190. Vargas and Garcia left

---

[5] *Garcia* , 919 S.W.2d at 387.

[6] *Chapman v. California*, 386 U.S. 18 (1967).

to get more beer, taking a .20 gauge shotgun with them. 64 RR(1991) 633. When they returned, Vargas was described as "jumpy and hyper." *Id*. at 639. Robinson went on to testify as to what Garcia told him about the events of that night. Robinson testified that Garcia stated that "he got the guy from behind the counter and he shot him in the chest or the back." *Id*. at 641. Flores likewise testified that Garcia stated that he asked the clerk for money and "they took the beer and he shot him and he left." 62 RR(1991) 218. They were interrupted by a woman entering the store. After she left, Garcia "noticed that the guy had crawled away and he went – and that the guy had crawled out the back of the store, went around the back of the store or something, and he reloaded the gun and shot him in the back of the head." 64 RR(1991) 641-42. Robinson further testified that Garcia specified that he shot the clerk in the back of the head "so they couldn't be identified." *Id.* at 642. Consequently, even without Garcia's formal confession to the police, the jury heard that he confessed to two friends and that those two friends told essentially the same story. The Director persuasively argued that any error from the admission of Garcia's confession as contained in the written statement was harmless error. Garcia's first three claims lack merit.

**Claim Number 4: In the 1991 trial, the State improperly used a peremptory challenge to strike prospective juror Hazel Holmes on the basis of her race, thereby violating the Due Process Clause of the Fourteenth Amendment.**

**Claim Number 5: In the 1991 trial, the State improperly used a peremptory challenge to strike prospective juror Hazel Holmes on the basis of her race, thereby violating the Equal Protection Clause of the Fourteenth Amendment.**

**Claim Number 6: In the 1991 trial, the State improperly used a peremptory challenge to strike prospective juror Hazel Holmes on the basis of her race, thereby violating the right to a Fair and Impartial Jury Clause of the Sixth Amendment.**

**Claim Number 7: In the 1991 trial, the State improperly used a peremptory challenge to strike prospective juror Hazel Holmes on the basis of her race, thereby violating the Cruel and Unusual Punishment Clause of the Fourteenth Amendment.**

**Claim Number 8:  In the 1991 trial, the State improperly used a peremptory challenge to strike prospective juror Hazel Holmes on the basis of her race, thereby violating the Due Process Clause of the Fourteenth Amendment.**

**Claim Number 9:  In the 1991 trial, the State improperly used a peremptory challenge to strike prospective juror Albert R. Diaz on the basis of his race, thereby violating the Due Process Clause of the Fourteenth Amendment.**

**Claim Number 10:  In the 1991 trial, the State improperly used a peremptory challenge to strike prospective juror Albert R. Diaz on the basis of his race, thereby violating the Equal Protection Clause of the Fourteenth Amendment.**

**Claim Number 11:  In the 1991 trial, the State improperly used a peremptory challenge to strike prospective juror Albert R. Diaz on the basis of his race, thereby violating the right to a Fair and Impartial Jury Clause of the Sixth Amendment.**

**Claim Number 12:  In the 1991 trial, the State improperly used a peremptory challenge to strike prospective juror Albert R. Diaz on the basis of his race, thereby violating the Cruel and Unusual Punishment Clause of the Fourteenth Amendment.**

Claims four through twelve are based on *Batson v. Kentucky*, 476 U.S. 79 (1986).  Garcia argued that the State improperly used peremptory challenges to prospective jurors Hazel Holmes and Albert R. Diaz to strike them on the basis of race.  The issue was raised on direct appeal and rejected by the TCCA.  *Garcia I*, 919 S.W.2d at 394-95.

Garcia has clothed his *Batson* claims regarding Ms. Holmes in separate grounds citing individually the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Right to a Fair and Impartial Jury Clause of the Sixth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment; he added a fifth claim, ground Eight, but it is identical to ground Four ("Due Process") and the Court considers it an inadvertent repetition.  Garcia similarly cited the same four constitutional provisions with respect to his claims regarding Mr. Diaz.  He does not make separate arguments as to each purported constitutional basis for his *Batson* challenge.  Instead, he ultimately argues the Equal Protection analysis that is consistent

with the Supreme Court's holding in *Batson*. This Court considers all of the individualized claims together in the same *Batson* analytical framework.

*Batson* stands for the proposition that the prosecution may not use peremptory challenges to remove potential jurors from the petit jury simply because they are members of a minority racial group. *Id.* at 87. The Supreme Court provided the following explanation for the decision:

> [T]he component of the jury selection process at issue here, the State's privilege to strike individual jurors through peremptory challenges, is subject to the commands of the Equal Protection Clause. Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges "for any reason at all, as long as that reason is related to his view concerning the outcome" of the case to be tried, *United States v. Robinson*, 421 F. Supp. 467, 473 ([D.] Conn. 1976), mandamus granted *sub nom. United States v. Newman*, 549 F.2d 240 ([2d Cir.] 1977), the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.

*Batson*, 476 U.S. at 89 (footnote omitted). "Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination." *Purkett v. Elem*, 514 U.S. 765, 767 (1995) (citing *Hernandez v. New York*, 500 U.S. 352, 358-59 and 375 (1991) and *Batson*, 476 U.S. at 96-98). *See also Miller-El v. Cockrell*, 537 U.S. 322 (2003). The ultimate burden of persuasion stays with the defendant throughout. *Batson*, 476 U.S. at 94 n.18.

Here, Garcia has brought identical *Batson* challenge claims with regard to the prosecution's peremptory strikes of veniremembers Ms. Holmes and Mr. Diaz. At the time of the 1991 trial, Garcia objected to the prosecutor's peremptory strikes of Ms. Holmes and Mr. Diaz on the grounds that the strikes were racially motivated. 36 RR(1991) 3759-60 (Holmes); 39 RR(1991) 4358-59 (Diaz). In

each instance, the trial court asked the prosecutor to state his reasons for the challenge. 36 RR(1991) 3760; 39 RR(1991) 4358-59. When a trial court calls "on the government to provide race-neutral justifications for the use of its peremptory strikes," a reviewing federal court will assume that the petitioner satisfied his initial burden (step one), and the burden shifts to the government to proffer race-neutral explanations (step two). *United States v. Webster*, 162 F.3d 308, 349 & n.55 (5th Cir. 1998), *cert. denied*, 528 U.S. 829 (1999).

The record reveals that the prosecutor then offered the following explanation for striking Ms. Holmes:

> In the selection process here we have determined or I have determined to exercise a peremptory strike in this case primarily because of this panel member's stated opposition to the death penalty. I will note in the questionnaire that it was an unequivocal opposition to the death penalty. I will note the prior reasons that we requested that this juror be stricken for cause and ask that the Court recall those particular instances. Those are reasons as well that I am exercising a peremptory strike.
>
> I note further that this juror has had a son who has been subjected apparently to multiple prosecutions some of which occurred in Collin County. She has expressed at least once that she feels that her son was not fairly treated either by police officers or the criminal justice system. I will also note the change in her answer at the very end of my examination of her. I asked her if she could ever answer special issue number two no and she responded huh-uh which I believe most people in this courtroom including me interpreted to be a no. When it was quickly pointed out to her that the Court and I did not hear that answer she essentially refused to give it and stated several times that she wanted me to ask the question again. When she was finally coerced into answering the question she said that her huh-uh had in fact meant yes rather than what was the apparently obvious no.
>
> Judge, for those reasons we have exercised our peremptory strike.

36 RR(1991) 3763-64. The trial court found that the State had offered legitimate and racially neutral reasons for exercising a peremptory challenge. *Id.* at 3764-65.

The record reveals that the prosecutor also provided several race-neutral reasons for striking Mr. Diaz. He noted that Mr. Diaz "expressed a real concern with youth and participating in a capital murder case with a youthful defendant." 39 RR(1991) 4359. He further noted that Mr. Diaz expressed

19

a real concern in imposing a death penalty in a 7-Eleven type holdup, and the present holdup of a beer

and wine store was the same type of situation. *Id.* at 4360. One of the prosecutor's biggest concerns

involved Mr. Diaz's response regarding the burden of proof on the special issues. *Id.* The prosecutor

explained that although Diaz's verbal response would not render a challenge for cause, his demeanor

gave him the impression that he would hold the State to a higher burden of proof during the

punishment phase. *Id.* The prosecutor expressed the opinion that Mr. Diaz's standard of reasonable

doubt was such a "very extreme standard" that he did not think "any prosecutor could meet it." *Id.*

He further noted that Diaz stated that he wanted a "significant track history of violence" in order to

assess the death penalty. *Id.* at 4361. Finally, the prosecutor believed that the defense "obviously

like[d] this juror" and was reluctant to accept him for that reason alone. *Id.* at 4361-62. The trial court

found that "either side could have legitimately and from a racially neutral standpoint exercised a

peremptory strike with respect to this particular juror, and so any objections to the State's being able

to exercise its peremptory strike are overruled." *Id.* at 4364-65. The trial court went on to specifically

find that the State's explanations were racially neutral. *Id.* at 4365.

On direct appeal, the TCCA reviewed the statements by Holmes and Diaz, along with the

development of this issue by the parties and the trial court, and found that the State had offered racially

neutral reasons. The TCCA offered the following analysis in rejecting the *Batson* claim:

> The record shows the State had legitimate concerns as to the impartiality of
> venirepersons Diaz and Holmes. [Garcia] fails to show any purposeful discrimination on the
> part of the State. Indeed, [Garcia] does not make a prima facie showing that the State's
> peremptory challenges were racially motivated, which he is required to do. *Wheatfall v. State,*
> 882 S.W.2d 829, 835 (Tex.Cr.App.1994), *cert. denied,* 513 U.S. 1086, 115 S.Ct. 742, 130
> L.Ed.2d 644 (1995). Each venireperson's responses to questions posed to them during voir dire
> clearly demonstrate that they were not favorable to the State and that the State had very good
> reasons—having absolutely nothing to do with their race—for not wanting either on the jury.
> In exercising its peremptory challenges to Holmes and Diaz, the State was merely acting in a
> manner that the peremptory challenge system encourages—the selection of juries that are

devoid of members who are markedly partial to either side. See *Holland v. Illinois,* 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990).

We have held that where the decision of the trial court with respect to peremptory challenges or challenges for cause is supported by the record and appellant fails to show an abuse of discretion, we will not reverse based on such decision. *Vargas v. State,* 838 S.W.2d 552 (Tex.Cr.App.1992). *Cantu, supra; Caldwell, supra; White, supra.* See also *Whitsey v. State,* 796 S.W.2d 707 (Tex.Cr.App.1989); *Williams v. State,* 804 S.W.2d 95, 101 (Tex.Cr.App.), *cert. denied,* 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). In the present case, the record supports the findings of the trial judge that there were ample, non-racial reasons to justify the State's exercise of peremptory challenges to Diaz and Holmes; appellant fails to show any abuse of discretion on the part of the court in so finding. Furthermore, [Garcia] fails to show the State's racially-neutral explanations given to justify these two peremptory challenges were merely a sham or were pretextural. See *Williams, supra,* at 101.

*Garcia I*, 919 S.W.2d at 395. Garcia did not raise the issue again in his first state application for a writ of habeas corpus. On the other hand, he reurged the grounds in claims numbers 53 through 62 in his second state application for a writ of habeas corpus. The TCCA dismissed the claims as "tantamount to a subsequent writ application and are dismissed pursuant to the provisions of Article 11.071 § 5." *Garcia*, 2008 WL 4573962, at *2.

In the present petition, Garcia discussed the case law at great length without showing how it applies to the present case. He argued that the reasons provided by the State for striking Ms. Holmes were pretextual and that the "real reason for striking her was because they could ill afford the risks of a minority juror." Pet. 109. With respect to Mr. Diaz, Garcia reviewed the explanations provided by the State and editorialized that several reasons were untrue and surmised that they were pretextual.

The Director, in response, noted that the requirement of a race neutral explanation (step two) "does not demand an explanation that is persuasive, or even plausible . . . the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Purkett*, 514 U.S. at 768 (citation omitted); *see also Rice v. Collins*, 546 U.S. 333, 338 (2006) (*Batson* "does not demand an explanation

that is persuasive, or even plausible; so long as that reason is not inherently discriminatory, it suffices.") (citing *Purkett*, 514 U.S. at 767-68). The Director added that "the ultimate inquiry for the [trial] judge [in determining whether an explaantion is race neutral] is not whether counsel's reason is suspect, weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not race-biased." *Webster*, 162 F.3d at 349 (citation omitted); *see also Miller-El*, 537 U.S. at 339 ("In that instance the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations credible."). The "evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within the trial judge's province.'" *Hernandez*, 500 U.S. at 365 (citation omitted). The Director stressed that on federal habeas review, a petitioner is not entitled to have a court second-guess credibility determinations, and the resulting factual findings are entitled to a presumption of correctness. *Purkett*, 514 U.S. at 769; 28 U.S.C. § 2254(e)(1). A federal court can only grant habeas relief "if it is unreasonable to credit the prosecutor's race neutral explanations for the *Batson* challenge." *Rice*, 546 U.S. at 338.

The Director's arguments are persuasive. As a preliminary matter, there is no question that the state court employed the proper steps under *Batson* in evaluating Garcia's claims. The only issue remaining is whether the state court's findings of fact were unreasonable. The role of a federal court in a § 2254 proceeding in reviewing a *Batson* claim decided on the merits by a state court is very limited. "A state trial court's finding of the absence of discriminatory intent is a pure issue of fact and is accorded great deference; it will not be overturned unless clearly erroneous. Therefore, the federal court's role is to 'determine whether the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary.'" *Hoffman v. Cain*, 752 F.3d 430 (5th Cir. 2014) (citations omitted). In the present case, the trial court's finding that the State provided "legitimate and racially neutral reasons" for

striking Ms. Holmes is entitled to great deference. Garcia claims that the State's reasons were pretextual, but he has not shown with clear and convincing evidence that the trial court's determination on this issue was unreasonable. The trial court likewise found that the State's reasons for striking Mr. Diaz were racially neutral. Garcia questions the reasons provided by the State, but he has not shown with clear and convincing evidence that the trial court's determination on this issue was unreasonable. At best, he has shown only that he disagrees with the findings, but a "[m]ere disagreement with the state court factual findings is not sufficient to overcome those findings." *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995). Overall, with respect to the *Batson* claims, Garcia has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief on claim numbers four through twelve should be denied.

> **Claim Number 13: In the 1991 trial, the trial court improperly granted the State's challenge for cause of venireman Robert Rea Phillips, violating the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution.**

> **Claim Number 14: In the 1991 trial, the trial court improperly granted the State's challenge for cause of venireman Robert Rea Phillips, violating the Cruel and Unusual Punishment Clause of the Eighth Amendment to the Federal Constitution.**

> **Claim Number 15: In the 1991 trial, the trial court improperly granted the State's challenge for cause of Venireman Robert Rea Phillips, violating the Effective Assistance of Counsel Clause of the Sixth Amendment to the Federal Constitution.**

> **Claim Number 18: In the 1991 trial, the trial judge excused juror, Cornelius John Collins, Jr., who was opposed generally to the death penalty, thereby violating *Witherspoon v. Ilinois*.[7]**

---

[7]391 U.S. 510 (1968).

**Claim Number 19: In the 1991 trial, the trial court improperly excused venireman General A. Adam Gallo on grounds that he would always find a mitigating circumstance when answering special issue number four, thereby violating *Witherspoon v. Illinois*.**

**Claim Number 20: In the 1991 trial, the trial court improperly excused venireman Richard Eugene Wycoff on grounds that he would always find a mitigating circumstance when answering special issue number four, thereby violating *Witherspoon v. Illinois*.**

Garcia raises several claims pursuant to *Witherspoon* with regard to the State's removal of four prospective jurors in grounds 13 through 15 (veniremember Robert Rea Phillips), 18 (veniremember Cornelius John Collins, Jr.), 19 (General A. Adam Gallo) and 20 (Reverend Richard Eugene Wycoff). Here, Garcia contends that veniremembers Phillips, Collins, Gallo and Wycoff were improperly excused as prospective jury members because they "voiced general objections to the death penalty" in violation of *Witherspoon*. As the Fifth Circuit has observed, "[U]nder *Witherspoon* 'a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction.'" *Gomez v. Quarterman*, 529 F.3d 322, 330-31 (5th Cir.) (quoting *Witherspoon*, 391 U.S. at 522), *cert. denied*, 555 U.S. 1050 (2008). But,

> nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt.

*Witherspoon*, 391 U.S. at 522 n.21. The Supreme Court further amplified this reservation as follows:

> That standard is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. We note that, in addition to dispensing with *Witherspoon*'s reference to "automatic" decisionmaking, this standard likewise does not require that a juror's bias be proved with unmistakable clarity. This is because determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism. What common sense should have realized experience has proved: many veniremen simply cannot be asked enough questions to reach the point where their bias has been made unmistakably clear; these veniremen may not know how

they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. [And] this is why deference must be paid to the trial judge who sees and hears the juror.

*Wainwright v. Witt*, 469 U.S. 412, 424-26 (1985) (internal citations and quotations omitted); *see also*

*Gomez*, 529 F.3d at 331.

Therefore, the standard under *Witherspoon* is not whether a prospective juror voiced an absolute determination against the death penalty but whether he or she "voiced general objections to the death penalty."

### A.    Veniremember Phillips

With regard to grounds 13, 14 and 15, involving veniremember Phillips, Garcia "challenges the release for cause of a juror merely because he voiced general objections to the death penalty, thereby violating *Witherspoon v. Illinois*." Pet. 121. He further contends that "[t]he State challenged prospective juror Robert Rea Phillips for cause on grounds that he would always find a defendant's youth to be a sufficient mitigating circumstance in answering special issue number four in the sentencing phase." *Id.* at 123. He therefore asserts that the removal was a violation of the Equal Protection clause of the Fourteenth Amendment, the Cruel and Unusual Punishment Clause of the Eighth Amendment and the Effective Assistance of Counsel clause of the Sixth Amendment in his three grounds for relief, respectively.

Mr. Phillips was subjected to voir dire on November 8, 1991. 53 RR(1991) 6828. The prosecutor examined Mr. Phillips on the issue of whether he would always find a defendant's youthfulness a sufficiently mitigating circumstance under the fourth special issue to avoid imposition of the death penalty:

Q       What I'm trying to determine is whether or not you've got a bias or prejudice on an area of the law on which I am entitled to rely as Mr. Blake explained bias and prejudice yesterday.  Okay?

A       Right

Q       And what I hear you saying is that in a case of a mass murderer in the case of a serial murderer you don't have a problem?

A       No.  Not considering - -

THE COURT:          Excuse me.

Q       No, you couldn't do it, or no, you - - you disagree with me?

A       Consider the defendant's age in a robbery-murder.  I couldn't do it.  No.

Q       Okay.  So in the case of a youthful defendant, even though the law says anyone seventeen years of age or above can be sentenced to death?

A       It doesn't say should be sentenced to death.

Q       No. I understand.  I understand.  It's an option.  What I'm saying is in the case of a youthful defendant in a robbery-murder, you will never answer those questions in a way that will lead to the imposition of the death sentence.  Is that correct?

A       Not the fourth one.  No.

Q       Okay.

A       That's right.  The first three - - the first three, as far as convicting him of the crime - -

Q       Okay.  You can find him guilty.

A       Yes.  Absolutely.

Q       You could look at these first three special issues and answer them yes or no, depending on the evidence?

A       Absolutely.

Q       Absolutely.  Fourth special issue, though, is always going to be yes in the case of a youthful defendant in a robbery-murder, regardless of the facts?

A       That's right.

53 RR(1991) 6833-35.  Defense counsel then objected that the prosecutor was placing an additional fact of a "youthful defendant" into the examination.  *Id.* at 6835.  The trial court found the addition "appropriate" and overruled the objection.  Id.  The prosecutor continued:

Q      So you can answer my question.

A      That I would always say yes in the case of a youthful defendant in a robbery-murder.

Q      In a robbery-murder, youth will always be sufficient so you will always answer this question yes?

A      In my state of mind now and for the - - I mean I don't - - people change, but now, and for some time now, that's the way I feel.  Yes.

Q      So even - - and that's fine.

A      I can't say always.  I mean, I come in here three years from now and it may not be.  It may be something that happens to my own son and I have a totally different opinion of it.

Q      I understand.  But I need to know what - -

A      Right now.

Q      Right now.

A      Right.

Q      And in this case, not five years from now, ten years from now, if it's your son that gets blown away - -

A      It'd be yes.

Q      And I'm not quarreling with you, but are you essentially telling me that if you're on this jury I don't have a shot at the death penalty?

A      That's correct.

Q      And that's because - -

A      That's because it's sufficient mitigating circumstances due to the victim's age - - or the defendant's age.

27

Q        And you - - just - - just so that I'm clear, you just, even though the law allows a youthful defendant to be sentenced to death, you essentially disagree with that area of the law?

A        Well, it allows, but it doesn't require, as I said.

Q        So - - okay. . . .  Judge, we'll submit the juror for cause.

*Id.* at 6835-37.  Defense counsel then cross-examined Mr. Phillips, but did not elicit any change in his responses.  Counsel asked, "But I think what you're saying is that in your mind someone who is a young enough age, whatever you deem that to be?"  *Id.* at 6838.  Mr. Phillips responded, "Uh-huh." *Id.*  Counsel then asked, "In your mind that is mitigating, and in a robbery-murder situation that's going to be sufficient in and of itself for you to impose a life sentence rather than a death sentence?"  *Id.* at 6838-39.  Mr. Phillips responded, "That's what I said.  Yes."  *Id.* at 6839.  At the completion of cross-examination, defense counsel nonetheless objected to the challenge for cause, calling it an "improper" challenge.  *Id.* at 6840.

Following a lengthy colloquy during which counsel discussed numerous case precedent, including *Evans v. Thigpen*, 631 F. Supp. 274, 281-82 (S.D. Miss. 1986) (*Witherspoon* does not preclude exclusion of a prospective juror who could consider the death penalty only if the defendant had killed several people over a long period of time but could not follow the law or consider the death penalty where a killing in the course of a robbery was involved), *aff'd*, 809 F.2d 239 (5th Cir.), *cert. denied*, 483 U.S. 1033 (1987), as well as consistent state cases, the trial court ruled:

Okay.  All right.  I think it's sufficiently clear to me that Mr. Phillips cannot and will not be unbiased in this matter, that he has, in fact, as he's indicated, predetermined the answer to question number four, and I don't believe that he can be a fair and unbiased juror in this particular case.  So I will grant the State's challenge for cause.

53 RR(1991) 6852-53.  Defense counsel raised the same objections to the ruling that now form Garcia's grounds 13, 14 and 15, *id.* at 6854-56, which the trial court overruled.  *Id.* at 6856.

Having also reviewed pertinent portions of Mr. Phillips' voir dire testimony, the TCCA upheld the trial court's ruling:

> Under Texas Code of Criminal Procedure, art. 35.16(b)(3), a challenge for cause may be made by the State for the following reason: "(3) that [the juror] has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment."

> In *Hawkins v. State*, 660 S.W.2d 65 (Tex. Cr. App.1983), we held that the trial court properly sustained the State's challenge for cause to a venireperson who testified she would vote in such a manner so as to avoid the death penalty for the defendant regardless of the evidence which might be developed at trial. See also *Staley v. State*, 887 S.W.2d 885, 894 (Tex. Cr. App.1994); *Riley v. State*, 889 S.W.2d 290, 301 (Tex. Cr. App.1993); *Morgan v. Illinois*, 504 U.S. 719, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992). In *White v. State*, 779 S.W.2d 809 (Tex. Cr. App.1989) we found the trial court ruled correctly in sustaining the State's challenge for cause to a venireperson who could vote for the death penalty only for "premeditated" murders and to another venireperson who could not consider the entire range of punishment of the offense.

> We have held on several occasions that, "on appeal, we recognize that great deference must be given to the trial court judge who is in the best position to see and hear the prospective jurors and to evaluate their responses. We will reverse a trial court's ruling on these issues only when the record shows a clear abuse of discretion on the trial court's part." *Jacobs v. State*, 787 S.W.2d 397, 402 (Tex. Cr. App.1990). See also *Callins v. State*, 780 S.W.2d 176, 194 (Tex. Cr. App.1986); *Cantu v. State*, 842 S.W.2d 667, 683 (Tex.Cr.App.1992); *Butler v. State*, 872 S.W.2d 227, 235 (Tex. Cr. App.1994); *White*, *supra*, at 822.

> The record shows venireperson Phillips testified he would never vote so as to impose the death penalty and therefore was properly subject to a challenge for cause by the State under Article 35.16(b)(3). A prospective juror who is unable to consider the full range of punishment may be challenged for cause under the standards established by *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), and *Morgan v. Illinois*, *supra*. See also *Martinez v. State*, 588 S.W.2d 954 (Tex. Cr. App.1979); *Fearance v. State*, 771 S.W.2d 486 (Tex. Cr. App.1988). [Garcia] fails to show any abuse of discretion by the trial court. Points of errors numbers one through four are overruled.

*Garcia I*, 919 S.W.2d at 389. In so doing, the Court explicitly applied the *Witherspoon* standard through *Witt*. *Id.*

Garcia contends that the trial court impermissibly excused Mr. Phillips because he "voiced general objections to the death penalty." Pet. 123. However, it is clear from the transcript quoted

above that Mr. Phillips' objection was far from a generalized statement subject to qualification and exceptions, but "made unmistakably clear (1) that [he] would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before [him], or (2) that [his] attitude toward the death penalty would prevent [him] from making an impartial decision as to the defendant's guilt." *Witherspoon*, 391 U.S. at 522 n.21. While Mr. Phillips stated without qualification that he could find Garcia guilty of the offense charged, he stated several times and without any qualification or exception whatsoever that, at that point in time at trial and despite prevailing law at the time, he would find Garcia's youthfulness to be a sufficiently mitigating reason to preclude the death penalty regardless of any other consideration. The trial court was fully justified in sustaining the State's challenge for cause and excluding him from the jury.

To the extent that Garcia has further couched his claims in terms of the Fourteenth, Eighth and Sixth Amendments, his arguments still fail.

First, there is no Fourteenth or Sixth Amendment violation inherent in the exclusion of a prospective juror for that individual's inability to follow the law in jury proceedings. As the Supreme Court has pointed out, its "prior jury-representativeness cases, whether based on the fair-cross-section component of the Sixth Amendment or the Equal Protection Clause of the Fourteenth Amendment, have involved such groups as blacks (equal protection); women (fair cross section); and Mexican-Americans (equal protection)." *Lockhart v. McCree*, 476 U.S. 162, 175 (1986) (internal citations omitted). Such exclusions are "for reasons completely unrelated to the ability of members of the group to serve as jurors in a particular case[.]" *Id.* The Court went on to observe:

> The group of "*Witherspoon* -excludables" involved in the case at bar differs significantly from the groups we have previously recognized as "distinctive." "Death qualification," unlike the wholesale exclusion of blacks, women, or Mexican-Americans from jury service, is carefully designed to serve the State's concededly legitimate interest in obtaining a single jury that can properly and impartially apply the law to the facts of the case at both the guilt and sentencing

phases of a capital trial. There is very little danger, therefore, and McCree does not even argue, that "death qualification" was instituted as a means for the State to arbitrarily skew the composition of capital-case juries.

Furthermore, unlike blacks, women, and Mexican-Americans, "*Witherspoon* -excludables" are singled out for exclusion in capital cases on the basis of an attribute that is within the individual's control. It is important to remember that not all who oppose the death penalty are subject to removal for cause in capital cases; those who firmly believe that the death penalty is unjust may nevertheless serve as jurors in capital cases so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law. Because the group of "*Witherspoon* -excludables" includes only those who cannot and will not conscientiously obey the law with respect to one of the issues in a capital case, "death qualification" hardly can be said to create an "appearance of unfairness."

*Id.* at 175-76 (footnotes and citations omitted); *see also Spinkellink v. Wainwright*, 578 F.2d 582, 597-98 & n.21 (5th Cir. 1978) (proper exclusion of veniremen under *Witherspoon* does not violate either the representative cross-section requirement of the Sixth and Fourteenth Amendments nor the equal protection requirement of the Fourteenth Amendment), *cert. denied*, 440 U.S. 976 (1979). Therefore, Garcia's Sixth and Fourteenth Amendment rights are not implicated in Mr. Phillips' exclusion.

Second, although he cites boilerplate authority as to the meaning of the Eighth Amendment's prohibition of cruel and unusual punishments, he ultimately merely asserts, without citation to authority, that the "[i]mposition of death by eliminating jurors who would have favorably considered Garcia's few mitigating circumstances violates the Cruel and Unusual Punishment Clause," while renewing his apparent argument that "[t]his decision must be made by a fair range of jurors who can weigh aggravating and mitigating circumstances . . . ." Pet. 130. However, as the Fifth Circuit has observed in the light of a virtually identical argument, a jury from which prospective jurors have been properly excluded under *Witherspoon* does not implicate the cruel and unusual punishment dictates of the Eight Amendment and is a constitutionally empanelled jury. *Spinkellink*, 578 F.2d at 598-99. *See also Witt, supra*, 469 U.S. at 423 ("*Witherspoon* is not grounded in the Eighth Amendment's

prohibition against cruel and unusual punishment, but in the Sixth Amendment. Here, as elsewhere, the quest is for jurors who will conscientiously apply the law and find the facts. That is what an 'impartial' jury consists of, and we do not think, simply because a defendant is being tried for a capital crime, that he is entitled to a legal presumption or standard that allows jurors to be seated who quite likely will be biased in his favor."). Hence, Garcia's Eighth Amendment claim fails as well.

At bottom, Garcia has failed to satisfy the requirements of 28 U.S.C. § 2254(d) in order to show that the decision of the TCCA was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## B.    Veniremember Collins (Ground 18)

In his ground 18, Garcia asserts that the trial court improperly excused Cornelius John Collins, Jr., who he alleges was opposed generally to the death penalty, in violation of *Witherspoon*. In Mr. Collins' case, as in Mr. Phillips' case, his exclusion from the jury is rooted in his response to the last special issue, mitigation, and whether he was able to consider the death penalty in Garcia's case. Garcia does not repeat the separate claims of Sixth, Eighth and Fourteenth Amendment violations as with Mr. Phillips in grounds 13 through 15, above. Instead, he contends that the mitigation special issue does not have a burden of proof, meaning the State "was not in a position to argue that it was *entitled* to a juror who would follow the law in a manner to its favor because the state had no corresponding *duty* to prove the absence of mitigating evidence." Pet. 142 (emphasis in original). He further contends that the very question leaves "it to the juror alone to determine what constitutes a mitigating circumstance." *Id.* at 142-43. He asserts that what the State demanded, and the trial court

32

allowed, was "a juror who will commit to the possibility of answering the special mitigation issue

'no'" although it has never been required by the Supreme Court.  *Id.* at 144.

Mr. Collins was subjected to voir dire examination on October 28, 1991.  44 RR(1991) 5415

(and at caption).  On direct examination by the prosecution, the transcript reflects:

Q   Will you turn to page four please of the questionnaire.  On the top of page four you write no next to, I am not in favor of the death penalty.  Then next  -- then down below that on answer F you write yes out next to the answer that says, I would not vote in a manner that would lead to the imposition of the death penalty regardless of the facts.  Then down below on question number two you circled answer number four which 10 you said would best represent your feelings, and it reads, I could never under any circumstances and regardless of the facts return a verdict which resulted in the death penalty.  What -- okay. I would just like to discuss your feelings on the death penalty for a little bit.  All right?

A   Okay.

Q   You understand from this morning that each side in this lawsuit is entitled to somebody who can consider, and fairly consider, and do those things that, from the State's point of view, would lead to somebody being sentenced to death and from the Defense' point of view would lead to a lift sentence.  Do you understand that?

A   Yes, sir.

Q   Do you have any problem with that?

A   Well, I don't believe in the death penalty.

Q   I understand, but do you have any problem with the concept that each side is entitled to a fair trial?

A   Oh, no.  No.

Q   All right.  A lot of people don't believe in the death penalty, Mr. Collins.  Nobody here is going to argue with you.  Nobody here is going to try to change your opinion.  What I need to know, though, is do these answers here on page four accurately reflect the way you feel?

A   Yes.

Q   Okay.  You understand that by this point in the proceedings that juries do not say life or death, they answer the special issues in the punishment phase.  You understand that?

A    Yes. Uh-huh.

Q    As a result of whatever answers a jury renders, a judge is either going to sentence somebody to life or they're going to sentence somebody to death. Do you understand that?

A    Yes. Uh-huh.

Q    Excuse me. For some people that makes a lot of difference, that they're not actually saying life, they're not actually saying death, they're answering questions. What I want to know is since you now understand that it's the answers to your questions that say life or death?

A    Uh-huh.

Q    Does that change your feelings at all?

A    No.

Q    All right. Excuse me, Mr. Collins. When you answered question number two by circling number four, I could never under any circumstances and regardless of facts return a verdict which could result in the death penalty, are you talking about a verdict that the guilt-innocence phase or are you talking about answers in the punishment phase or are you talking about both?

A    The punishment phase primarily.

Q    You say primarily. Primarily is one of the words that's sort of like sticking blood in the water around a bunch of sharks. Lawyers, kind of sets off lights and buzzers. Does that mean that your feelings about the death penalty could influence the way you vote in the guilt-innocence phase of a trial and affect whether or not you would find somebody guilty of capital murder to begin with?

A    It could have some effect.

Q    Okay. But the greater effect will be in the punishment phase. Is that what you're saying?

A    Yes. Yes.

Q    And, please, don't let me put words in your mouth.

A    No.

Q	And if it sounds like I'm doing that, just tell me and express it, but would it be fair to say, then, that you are either not going to answer those special issues or you will answer them in a way to make sure that a life sentence rather than a death sentence is imposed regardless of the evidence?

A	I would say that would be true.  Yes.

Q	Okay.  So even if I proved to you beyond a reasonable doubt those first three special issues or any of those first three special issues, I can't realistically expect a yes answer on any one of those.  Is that correct?

A	That's right.

Q	Here's the big question one last time.  And is it true then that, Mr. Collins, that your views about the death penalty would prevent or substantially impair the performance of your duties as a juror in - - in accordance with your instructions and your oath?

A	It probably would impair it to a degree because I would not go with the death penalty under any circumstances.  I would go with a life sentence, but not the death penalty.

Q	Doesn't matter what I show you, what I prove, what the evidence is?

A	No.

Q	There's absolutely no way in this green earth that you're ever going to answer these questions in a way that would result in the Judge assessing a death sentence?

A	No.  No.

Q	That's an accurate statement?

A	That is.  That is.  Yes.

	[PROSECUTOR]:	Judge, we'll submit the juror.

44 RR(1991) 5525-29.  On cross-examination by defense counsel, Mr. Collins agreed that he could return a "yes" answer as to the first three special issues.  44 RR(1991) 5533-34.  He repeated his answer to the prosecution in responding to defense counsel about the fourth special issue, mitigating circumstances:

Q	In dealing with special issue number four, it becomes a little bit different because there is no burden of proof on the State; however, when you take a look at all of the evidence

that's been presented to you in the case and you take a look at that evidence and you find that there is no sufficient mitigating circumstance, would you under that situation, because there are no sufficient mitigating circumstances that would warrant a life sentence, could you take the facts as you find them, follow your oath, and if there are no sufficient mitigating circumstance, answer the question no because you could not find one?

A    No. I wouldn't be able to do that because I would not vote for the death penalty. I wouldn't want to Judge to give that.

*Id.* at 5534-35. Again, defense counsel inquired:

Q    [. . .] In going back to what I was saying in the evidence in a particular case, no matter how remote, but if that case does present itself and there was absolutely no sufficient mitigating circumstance, not one, and therefore the facts do not prove to you at all any sufficient mitigating circumstance, the law requires that that question to be answered in the no. And I'm asking you if you could follow your oath and determine the facts and answer that question based upon the facts that are presented either yes or no?

A    No.

Q    You would answer this question - -

A    I don't believe in the death penalty and I wouldn't vote for anything what would lead to the death penalty.

*Id.* at 5538. Ultimately, Mr. Collins again repeated himself to defense counsel as well as to the trial court:

A    I am confident that I will find some significant mitigating circumstance which would warrant my answering yes to question number four.

COURT:    You don't intend to answer question number four - -

A    With a no.

COURT:    - - with a no under any circumstance?

A    No. That's right. That's correct.

*Id.* at 5547-48. Following a recess, the trial court granted the State's challenge for cause over defense counsel's objection, stating, "I think Mr. Collins has made his opinion very clear with respect to his

feelings about the death penalty and, consequently, his ability to go into this with an open mind without

a bias toward the law. So I'm going to grant the State's challenge for cause." *Id.* at 5548-49. Counsel

further objected, and the trial court overruled the objection, saying "He didn't say in all likelihood. He

said he would not answer that question no and that the will always answer it yes, and that's about as

clear as I think anybody can make it, but anyway, challenge for cause is granted." *Id* at 5549.

In his instant argument, Garcia contends that some of Mr. Collins' comments were at odds with

the trial court's decision. In particular,

Q     [. . .] I just need to know whether or not you would, if picked as a juror, whether or
      not you would ignore your oath, violate your oath, and answer that question if there
      were no sufficient mitigating circumstances, that you would violate your oath as a juror
      and answer that question yes.

A     I wouldn't - - I wouldn't - - what I would find, I'm sure, is a sufficient mitigating
      circumstance that would enable me to answer yes . . . . That's what I'm sure I would
      be able to find.

Q     And in other words, you're going to do everything you can to follow your oath?

A     Oh, sure. Certainly.

      * * *

A     I'll answer it as I answered it before. I will find sufficient mitigating circumstances.
      There would be. I would answer the question yes. . . I would find - - well, I'll find
      some kind of significant mitigating circumstances to warrant that where I'm not
      violating my oath as a juror.

      * * *

A     Well, I wouldn't create one [mitigating circumstance], certainly not, but I feel confident
      that I could find one in the evidence presented. . . .

Q     That you could probably come up with one legitimately out of the evidence. Is that
      right?

A     That is true.

Q     Therefore you would not be violating your oath either way?

37

A       That's right.

Pet. 143-44 (citing and quoting 44 RR(1991) 5539-40, 5543-45; omitting defense interjections and questions).  Based on these responses, Garcia contends that "What Mr. Collins was explaining was that *he would* read the special issue, *he would* follow the dictates of the special issue, *he would* follow his oath to render a true verdict, and *he would* answer the special issue as the question required given the instructions and the law."  Pet. 144 (emphasis in original).  That argument is wholly unrealistic and ignores that Mr. Collins repeatedly responded to defense counsel, the prosecution and the trial judge that he would find a mitigating circumstance and answer "yes" to special issue number four regardless of the evidence presented at trial, including in the passages Garcia proffers, above.  Mr. Collins simply responded that he was confident he would find such a mitigating circumstance and would therefore not violate his oath, but regardless, he would find that mitigating circumstance.  Garcia further contends that the State demanded a juror "who will commit to the possibility of answering the special mitigation issue 'no[,]'" which he also contends the Supreme Court has never required.  *Id.*

However, the Supreme Court's rulings have explicitly allowed for situations in which it is clear to the trial court that a prospective juror would not follow the law or instructions at trial: "[T]here will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.  [And] this is why deference must be paid to the trial judge who sees and hears the juror."  *Witt*, 469 U.S. at 425-26.  That is exactly the case with regard to Mr. Collins and the trial court's grant of the challenge for cause was upheld by Mr. Collins' every response during voir dire, including the passages upon which Petitioner now relies, without further authority to support his position.  Additionally, Mr. Collins did not express a generalized antipathy toward the death penalty, he expressed an explicit and repeated determination that he would

not answer the mitigation issue so as to allow the trial judge to impose a sentence of death.

*Witherspoon*, 391 U.S. at 522 n.21. Garcia's argument is therefore unfounded.

Furthermore, the TCCA also reviewed this claim and upheld the trial court's determination:

[Garcia] avers in point of error number eight that the trial court erred in granting the State's challenge for cause to venireperson Collins. Venireperson Collins stated in his jury questionnaire he did not believe in the death penalty. In response to questions from both the State and appellant's counsel, Collins testified he would answer the special issues in such a way as to avoid imposition of the death penalty.

Collins was properly subject to the State's challenge for cause *not because* of his views on capital punishment but because he clearly stated he would answer the special issues so as to prevent its imposition. *Wainwright v. Witt, supra; Staley, supra; Holland v. State*, 761 S.W.2d 307 (Tex. Cr. App. 1988); *Smith v. State*, 744 S.W.2d 86 (Tex. Cr. App. 1987). Finding no abuse of discretion by the trial court, we overrule appellant's point of error number eight.

*Garcia I*, 919 S.W.2d at 390. As was the case with Mr. Phillips, Garcia has failed to satisfy the requirements of 28 U.S.C. § 2254(d) in order to show that the decision of the TCCA was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. His ground 18 therefore fails.

### C.    Viniremember Gallo (Ground 19)

In his ground 19, Garcia asserts that the trial court improperly excused A. Adam Gallo, a retired United States Army general, who he alleges was opposed generally to the death penalty, in violation of *Witherspoon*. Similar to his argument with regard to Mr. Collins, above, Garcia here contends that the trial court granted the State's challenge of Mr. Gallo for cause because he would not commit to answering "no" to the special mitigation issue. Pet. 148.

Mr. Gallo was examined at voir dire on October 16, 1991. 38 RR(1991) 4061 (and at caption). After ascertaining that the trial judge, Judge White, had previously been Mr. Gallo's attorney but that

the former relationship would not influence Mr. Gallo, *id.* at 4250-51, the prosecution began by

identifying an apparent inconsistency in Mr. Gallo's questionnaire:

Q    If you would, turn to page four, please. On the top of page four you checked answer C, and that C saying you are in favor of the death penalty, and E indicating that you would vote in a manner that would lead to the imposition of the death penalty if the facts warranted it and the law provided for it, but down below under question two you circled three, although I do not believe the death penalty should ever be invoked, as long as the law provides for it, I could return a verdict that would result in the death penalty if the facts warranted it. Down below on question number three, which is not inconsistent with either of those, you checked yes, you though in some instances a life sentence rather than a death sentence would be appropriate. To a lawyer at first blush, circling three under two is a little inconsistent with C and E. If you could - - it may very well be my problem.

A    I think I can at this point. I'd just like to bring to the Court's attention the fact that I am a retired Army general. I served in two conflicts, in both Korea and Viet Nam. I had to experience, of course, seeing a lot of people die, a lot of people maimed. I'm not so sure at this point in my own experiences, even though we are in a civilized legal environment, whether I,in fact, could in my own heart adjudge a person to the death penalty.

Q    Let me - - I was told once that I should address retired military officers by their title. Do you wish to be addressed as General?

A    It's not necessary.

Q    All right. Let's talk about that a little bit. Okay. I do not know much about the military, but it appears from the way you've answered this that the area of the Army that you were in, you were the general who sent guys into battle or at least worked on part of the staff that drew up the plans that sent people into battle.

A    That engaged in battle. Two wars.

Q    You have been - -

A    Two wars.

Q    - - in combat under fire yourself?

A    Yes, I have.

Q    You have shot people and people have shot at you?

40

A      That's correct.

Q      You have also ordered young men into conflict knowing that they very well could not come back alive?

A      That's - - yes.

Q      What I want to know, then, because this is what I'm hearing from you - please tell me if I'm wrong.  Are you telling me that you basically have seen enough of killing and you're not going to be part of it any more?

A      That's correct.

Q      All right.  That's fine, General, and I don't want to - I'm not going to quarrel with that.  Are your feeling such - - well, have you come - - express for me what you - - how you feel about the sanctity of human life.

A      Human life?

Q      Yes, sir.

A      Well, my experiences are, of course one in which in the military everything is a very informal situation.  I don't know the enemy, they don't know me.  All I know is it's a question of survival.  We have a responsibility in that conflict to bring it to a successful conclusion under any circumstance, whether we're talking about a skirmish, a battle, or invasion or whatever it is.  In that particular role, of course, it is somewhat infamiliarity, the fact that I don't know some of my men, of course, but the responsibility rests upon my shoulder to employ those individuals that is conducive to being successful.  Of course, we take into consideration the fact that we know that there's going to be a certain degree of casualties, both in the number of deaths and number of men who are going to be wounded in action.  That does not negate the fact that I still have a compassion for human life and the fact that I know that there are going to be letters written to families and wives and sweethearts relating to the unfortunate demise of a lot of those young fellows.  That is my expression as far as an actual situation is concerned.  []  Now, in the legal end of things where we don't go around killing people, I'm not too sure in this kind of environment whether I can still myself, having experienced what I did, to be able to view it and to exercise that kind of judgment.

Q      Are you telling me that your past experiences would prevent you from being a fair and impartial juror in this case?

A      Yes.

Q      And would that fair - - or that lack of fairness or impartiality would that be detrimental to the State or to the Defense or to both?

A      I think it would be detrimental to both, if we're talking about - -

Q      You can't give him a fair trial; you can't give me a fair trial?

A      I don't feel I can.

[PROSECUTOR}:      Judge, we'll submit the juror.

38 RR(1991) 4251-55.  On cross-examination by defense counsel, Mr. Gallo repeated his testimony

to the prosecutor, including but not limited to:

. . . I think as an intelligent individual I think I can make those perceptions and I think I could certainly make them with sufficient deductions and deductions of facts, but that does not preclude the fact that if the end result is one in the assessment of the death penalty, then I cannot, I would not be a party to that.

*Id.* at 4258.

Being a party to a jury that's structured by law and certain requirements and certain things that you have to do and prosecuting attorney has to do and the Judge has to do, that I'm a party to that, the end result can result in the death penalty.  I cannot.  My conscience will not allow me.

*Id.* at 4269.

Wait a minute before you go any further on that.  I have been through a lot of experiences in life, Korea and Viet Nam, and when you start talking about that, that's a very personal thing to me any more.  And as time has gone it - - it has taken its toll on me as an individual in many ways, and I'm now at the point in my life I just can't take that kind of stuff.  I'm going to be very honest with you.  If you're going to tell me you're to sit in this court of law, which I fought for, and my whole life and being in the military is to defend the Constitution of the United States and everything that I've done, and you are asking me as a citizen to pass judgment and if you're going to ask me for my own moral reasons, I'm expressing those to you.  If you're trying to say, well, that doesn't mean anything, that I've going to have to go through all this process, doesn't mean whether a man is guilty or he's innocent, I can't take that chance.  If the preponderance of the evidence says this man gets the death penalty, he gets the death penalty. If I'm going to sit there along with twelve other jurors, I have to be a party to it, and I don't want to be a party to it.  Not any more.  I've had my fill of it.

*Id.* at 4270.  Despite having repeated his position several times, defense counsel nonetheless elicited

from Mr. Gallo that he could answer each of the special issues taken alone:

Q      If those facts are proven to you beyond a reasonable doubt based upon the presentation of evidence, and that means that a yes answer should be there, because that's what the law says, could you follow your oath and say yes to them because the evidence compelled it beyond a reasonable doubt on these three issues?

A      Yes.

Q      Okay.  Now when we get down to fourth final issue, this issue as framed right now has no burden of proof on it.  It simply allows you to take into consideration all of the evidence and they give you examples in the question itself.  The circumstances of the offense, the defendant's character, his background and his personal moral culpability.  It is not limited to that whatsoever.  If you find - - and this is one those extreme hypotheticals just to illustrate - - that the offense occurred on a Sunday and that alone is sufficient reason for you to go ahead and say, I don't believe the life - -      d e a t h sentence is appropriate, this question certainly gives you that realm of possibility.  It is the generalist, the broadest question that we have to deal with in this case.  []  And so this question just asks you one thing.  Do you think you're capable of looking at that evidence again and deciding for yourself, based upon whether or not there exists in your mind a sufficient mitigating circumstance that would warrant a life sentence or if there is no sufficient mitigating circumstances, you will answer that question no.  Could you do that?

A      I'm not sure.  I can't answer that.  I really don't.  I really can't answer that.

       * * *

Q      You're not being required to envision the case that would never find a mitigating circumstance in.  I mean, we're not talking about the Damler murders or Ted Bundy type murders.  We're not talking about Hitler, we're not talking about heinous, so heinous that everyone and their brother would say, you know, this guy deserves to die.  We're not asking you for that.  All we're asking you - - and we're not asking you to narrow your scope of mitigating circumstances.  I mean, if you have so many of these things that you can predict on 99.9 percent chance on that, you're every time going to answer this question no.  It leaves that small 0.1 percent chance that the Hitler case can come along.  As long as you feel - - and you know - - you're almost - - these questions are in the appropriate case, in the proper case.  That's what the law requires me to say, that in the appropriate case where there clearly is no sufficient mitigating circumstance in your mind, however small, slight, that chance may be, but if that case does come up and the evidence clearly says there is no mitigating circumstance that is sufficient in your mind - - remember, we're talking about your mind - - there is none and you clearly know that you look at the evidence and say, man, there is none.  Could you answer that question no?

A      Of course.

Q     And so essentially by that process you can take a look at all of these questions that we've covered, evaluate the evidence, and base your decision, follow the law, and base your decision on the evidence: is that correct?

A     Yes.

*Id.* at 4274-75, 4277-78. Defense counsel then tendered Mr. Gallow back to the trial court, which immediately inquired:

Q     Mr. Gallo, let me see if I understand. Because you've made your - - you've made your opinions quite clear, but assuming in this hypothetical case we've been batting around that you have found the defendant guilty, the jury has found the defendant guilty, and that the answer to questions one, two, three are yes, you found that beyond a reasonable doubt that the conduct was committed deliberately and so forth or that there is - - well, we refer to it as future dangerousness, that the response to any provocation was unreasonable, and now we're talking about the fourth question which is mitigation. Are you saying that any mitigating circumstance whatsoever is going to be sufficient in your mind simply because you have such a bias against participating in the death - - participating on a jury in a capital case, that you're going to answer that question yes, that there's always going to be sufficient mitigating circumstance?

A     Yes.

THE COURT:     I'll grant the challenge for cause.

*Id.* at 4278-79. Based on the line of cross-examination above, Garcia contends that although Mr. Gallo repeatedly told the prosecution that he could not return an answer to the mitigation special issue resulting in the death penalty, he did tell defense counsel that "he could answer it 'no' in favor of the State." Pet. 150. Nonetheless, Garcia admits that after defense counsel's cross-examination, "[t]he trial court granted the state's cause motion because the court asked whether Gen. Gallo would always find a mitigating circumstance in answering special issue number four. He said yes." *Id.* at 148 (citations to the record omitted).

Garcia's argument is virtually identical to the argument he presented with regard to Mr. Collins in the preceding analysis. He contends that Mr. Gallo had a general disposition against the death penalty and only "predicted his answer to mitigation special issue would be 'yes.'" *Id.* at 149. He

also repeats his argument that the State demanded a commitment to answering "no" to the special issue, or he was not qualified to be a juror. *Id.* This argument is equally fallacious here as it was with regard to Mr. Collins.

Mr. Gallo did not express a "general" attitude against the death penalty; he explicitly, repeatedly and pointedly stated he could not and would not return a finding or participate in a decision that would return the death penalty. He gave detailed reasons for his position, including his extensive wartime military service and exposure to death in that context. He did not "predict" a finding of "yes" to the mitigation question; he bluntly stated he would find a reason to say "yes." In other words, he would not have followed the law or the instructions regarding the death penalty. *Witherspoon*, 391 U.S. at 522 n.21. Accordingly, the trial judge was wholly correct in his decision to exclude Mr. Gallo from the jury. *Witt*, 469 U.S. at 425-26.

Furthermore, the TCCA upheld the trial court's grant of challenge for cause of General Gallo:

In point of error number nine, appellant contends the trial court erred in excusing for cause venireperson Gallo. The record indicates Gallo opposed the death penalty and testified his past experiences as an army general and combat veteran would prevent him from being a fair and impartial juror.

Gallo indicated he could return a verdict of guilty "if they prove beyond a reasonable doubt, there ain't no doubt in your mind that appellant committed the crime." During voir dire, Gallo initially testified he could not answer the first three special issues in such a way as to result in imposition of the death penalty. Later, he indicated he could answer the special issues based on the facts. However, in response to a question asked by the court, Gallo stated he would answer special issue three in the affirmative as he would always find there to be sufficient mitigating evidence. Whereupon, the court granted the State's challenge for cause.

The record supports the trial judge's finding that Gallo, due to his views on the death penalty, would be unable to follow the law with respect to the special issues. We have held that a trial court's ruling on such matters should be reversed only when the record shows a clear abuse of discretion. *Jacobs, supra*, at 402; *Davis v. State*, 782 S.W.2d 211, 216 (Tex.Cr.App.1989); *Briddle v. State*, 742 S.W.2d 379 (Tex.Cr.App.1987), *cert. denied* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1987). See also *Wainwright v. Witt, supra; Holland, supra; Staley, supra.* When viewed in its entirety Gallo's testimony is sufficient to support the trial court's decision to grant the State's challenge for cause. Point of error number nine is overruled.

45

*Garcia I*, 919 S.W.3d at 390-91. As before, Garcia has failed to satisfy the requirements of 28 U.S.C. § 2254(d) in order to show that the decision of the Court of Criminal Appeals was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. His ground 19 therefore fails.

### D.    Veniremember Wycoff (Ground 20)

In his final *Witherspoon* challenge, Garcia contends that the trial court improperly excused the Reverand Richard Wycoff for cause in violation of *Witherspoon*. Pet. 151. His argument in this instance is brief; he contends that the State challenged Mr. Wycoff because he could not answer the mitigation special issue in favor of the State unless there was an eyewitness to the crime. *Id.* at 152.

Rev. Wycoff was examined at voir dire on October 31, 1991. 47 RR(1991) 5878 (and at caption). The prosecution began direct examination by referring to Rev. Wycoff's juror questionnaire:

Q    On page four of your questionnaire there were some general questions that were asked to give us a feel about your feelings about the death penalty, but before we get to those I want to talk to you about your answer on question number six, page five. For the sake of the record the question reads, do you have any moral, religious, or personal beliefs that would prevent you from returning a verdict which would ultimately result in the execution of another human being. You checked yes, and then in the explanation portion you wrote at least - - and help me with this because my copy isn't exactly legible - - before the death penalty is - - is this issued or - -

A    Assessed.

Q    Assessed. Thank you. There must be two eye witnesses who testify to the guilt of the person. This is called for in the Bible. In other words the death penalty demands - - and then I can't read - -

A    Incontrovertible evidence.

Q    Thank you.

A    Okay. It wasn't your reading or the coping. It's my writing.

Q       No, no.  It's the Xerox machine actually.

A       Okay.

Q       Would you expound on that a little bit for me?

A       All right.  In the book of Numbers, in dealing specifically with the - - with the death penalty for murder it specifies that there would be witnesses.  It does not say eye witnesses, but in the culture in the time it would almost demand an eye witness.  I think today we have lots of eyes in our society.  We have cameras and ways that - - that actions can be recorded and so that a person who wasn't there might be able to witness it, and so I don't know that actually somebody being on the scene would be a necessity, but at the same time I think for me to vote for the death penalty I would - - I would have to have credible witnesses who came and said - - either said I saw it happen or there would have to be ways that we could see it happen.

*Id.* at 5880-82.  Rev. Wycoff went on to testify,

Q       . . . Can you answer - - can you, for example, on those first three special issues where my burden of proof is beyond a reasonable doubt, is it even possible, given your religious beliefs, for you to be convinced beyond a reasonable doubt that, on any of these three special issues, absent an eye witness, a videotape, a photograph, or some electronic recording of the crime in progress?

A       I - - I think I have no problem with coming to a reasonable doubt conclusion without that.

Q       Okay.

A       But at the same time that I do that - - I - - I would find it - - I would not vote for the death penalty without - - without that.  Are you looking - - is that a more - - is that a clear - -

        * * *

Q       . . . [Defense counsel is] entitled to the folks who can assess - - do the things necessary to assess a life sentence.  We're entitled to folks who can do the things that can assess a death sentence, and if you can't, that's fine and I don't have a problem with it, and if you can, that's fine, but it sounds to me like you can't, absent eye witnesses.

A       That's correct.

Q       All right.  And it might well be that these first three questions would be easy enough to answer if you just looked at the evidence because this one, you know, we're talking about these, you could probably answer just from drawing on the evidence that you

47

saw. The real question is when you get down here to this fourth one on the mitigation issue where you know a yes answer equates to a life sentence?

A      Uh-huh.

Q      And it sounds to me, or at least it appears to me - - I shouldn't say it sounds - - but it appears to me that even though you might - - although it probably is not the case that you could answer these questions yes, when you got to this one, absent eye witnesses, this would be the vehicle through which you would express, and absent eye witnesses, the answer to this mitigation issue is going to be yes?

A      That would one of the mitigating influences. Yes.

Q      Okay. So - - okay. So are you telling me - - and, again, don't let me put words in your mouth. Are you telling me that absent eye witnesses, and as I understand you mean somebody who was there, a video camera that recorded it, a photograph that recorded it, or perhaps a tape recorder that recorded the actual killing, absent one of those four or some combination of those four, since apparently you said it requires two eye witnesses?

A      Well, yes.

Q      And I guess absent the defendant taking the stand and saying I did it. Would that be fair?

A      Yes.

Q      Okay. Absent one of those five things, then the answer to special issue number four is always, regardless of the circumstances, regardless of how horrible the crime, regardless of anything else, the answer to that for you is always going to be yes, and the reason for that is because of your religious belief. Would that be fair?

A      That would be fair.

Q      All right. You recognize, Reverend, though that the law is different?

A      Yes. I recognize that.

Q      Okay. And the law allows people to be sentenced to death without any of those five things. Do you understand that?

A      Uh-huh.

Q      Okay. So essentially you have a disagreement, for lack of a better word, you have a disagreement with that aspect of the law upon which I am allowed to rely; correct?

A       Yes. I think you could put it that way.

Q       And that disagreement is such that, absent one of those five things, if you're on this jury, the State of Texas really doesn't have a fair shot at the death sentence, does it?

A       That's correct.

Q       Okay. Thank you, Reverend. [] Judge, we'll submit the juror for cause.

*Id*. at 5884-90. Garcia contends that during cross-examination by defense counsel, Rev. Wycoff "said that he 'could vote the death penalty.'" Pet. 152 (citing 47 RR(1991) 5900). In fact, his entire statement was, "But I could - - I could vote for the death penalty. It would just be the fact that my view of the evidence necessary would be a mitigating circumstance." 47 RR(1991) 5900. In other words, Rev. Wycoff stated that his ability to vote for the death penalty would be influenced by a mitigating circumstance. In this case, the mitigating circumstance to which he repeatedly testified was whether or not there was "incontrovertible evidence" in the form of two eye witnesses or some combination of actual photographic or electronic surveillance capturing Garcia in the act. Garcia also contends that Rev. Wycoff "said that he could answer [the final mitigating special issue] truthfully under oath." Pet. 152 (citing 47 RR(1991) 5902-03). The entire exchange with defense counsel reveals:

Q       You have to base your decision on the evidence.

A       Yes.

Q       You have to take into consideration - - this thing doesn't say that this answer has to be based entirely on the evidence. This thing says when you answer this question, you have to consider all the evidence. Okay? And then considering all the evidence, let's look for mitigating circumstances, and they can be mitigating circumstances about the personal moral culpability of the defendant, they can be mitigating circumstances about the defendant's character and background, and they can be mitigating circumstances including the circumstances of the offense. Absent that - - I think what you're telling me is that absence of incontrovertible evidence in your mind is a mitigating circumstance surrounding the offense. Is that correct?

49

A       I think that's a fair evaluation of it.

Q       And so you would you give a truthful answer to that question under your oath?

A       Yes.

Q       What you considered mitigating might dictate your answer to this question,  but you could give a truthful answer under your oath to all the questions if you were selected as a juror?

A       Yes.

47 RR(1991) 5902-03.  Having elicited that testimony, defense counsel objected to the challenge for

cause.  *Id.* at 5903.  The prosecution countered that "we submit he hasn't come close to rehabilitating

him."  *Id.*  The trial court asked the prosecution to examine Rev. Wycoff further "to clear up some

inconsistencies."  *Id*. at 5904.  The prosecutor asked,

Q       Reverend I don't see any inconsistencies. All right?  But I want to make sure that the reasonable doubt is crystal clear. Okay?  You told Mr. Wilson you can answer these questions truthfully.  Right?

A       Yes.

Q       Of course, that is, those truthful answers are going to be influenced, absolutely, by your personal religious beliefs about the appropriateness or inappropriateness of the death penalty in the absence of eye witnesses; right?

A       Only on the last issue.

Q       Exactly.

A       Yes.

Q       But is that -- okay.  When we talk about mitigating evidence we're talking about evidence that lessens the moral blameworthiness. Okay?  That's what we're talking about under the law.  All right?  It sounds to me like in two different cases in the first case where one person walks in puts a store clerk on his knees blows him away in the course of a robbery and leaves no video camera no electronic recording nobody there at the scene who eye witnesses it he doesn't take the stand and incriminate himself no fingerprints.  Okay?  Case gets proven other ways.  Is a different answer to that question if you take that same defendant and the only thing you will change is that in the second case there's a video camera that sees him in the act or there's somebody who

is crouched back behind the cooler and sees him pull the trigger and that in the one case where the guy was lucky enough to go in or smart enough to choose a store without a camera, without a recording device, and to wait until everybody left is a different circumstance than a guy who is unlucky enough or stupid enough to go into a store where there is a camera running. Is that fair?

A      That is a different circumstance, but no - - not different in his - - I mean, in his - - you prefaced your statement.

Q      I understand.

A      - - with the fact that there's - -

Q      Okay. We're talking - -

A      - - mitigating circumstance.

COURT:      Let's - -

Q      His personal blameworthiness is the same in each case. Would you agree?

A      Yes. I would agree to that.

Q      All right.

A      But my ability to - - my ability to do that that would take his life is different because my knowledge of the circumstances is different.

Q      And - - and that's directly a result of your religious beliefs that dictate that your knowledge of the circumstances must be different; correct?

A      Yes. I think probably so.

*Id*. at 5904-06. The trial court asked a final clarifying question:

COURT:      . . . What I understand you're saying is this: that the mitigating circumstances you're talking about here have absolutely nothing whatsoever to do with this particular defendant. It simply has to do with whether or not there were, quote, eyes observing the crime?

A      Yes.

*Id.* at 5906. Following a brief recess, the trial court "grant[ed] the State's challenge for cause in this

case . . . ." *Id*. at 5907. Garcia argues that Rev. Wycoff agreed with defense counsel that he could vote

the death penalty, that he could answer in favor of the State on the first three special issues, and that he could answer the fourth mitigating evidence special truthfully under oath. Pet. 152. He also contends that "[t]he trial court also failed to ask Mr. Wycoff the critical question: whether in the appropriate case where no or insufficient mitigating circumstances were found would he follow the law and return a 'no' verdict on special issue four in favor of the State?" *Id.*

However, it is clear from the totality of Rev. Wycoff's testimony that his answer to the fourth special issue on mitigating circumstances depended on his biblical view that two eye witnesses, or the electronic or photographic equivalent, would be required before he could elect a response leading to imposition of the death penalty by the trial judge. Moreover, there was no requirement, and Garcia has identified none, for the trial judge to ask any other questions after receiving Rev. Wycoff's testimony. As with each of the previous *Witherspoon* challenges Garcia has raised, it is clear from Rev. Wycoff's entire testimony that he would not have followed the law or the instructions regarding the death penalty absent satisfaction of his view, based not on Texas law but on his understanding of a biblical requirement, that two eye witnesses must verify Garcia's act of capital murder before he could respond in a manner to impose the death penalty. *Witherspoon*, 391 U.S. at 522 n.21. Accordingly, the trial judge was wholly correct in his decision to exclude Mr. Gallo from the jury. *Witt*, 469 U.S. at 425-26.

Furthermore, the TCCA also ruled on Garcia's contention as to Rev. Wycoff:

[Garcia] avers, in point of error number ten, the trial court improperly excused for cause venireperson Wycoff. Wycoff testified that, due to his religious or personal beliefs against the death penalty, he could not answer the special issues in such a way so as to allow imposition of the death penalty. He testified that he would always answer special issue three in the affirmative unless [Garcia] testified he committed the murder or unless at least two eyewitnesses testified [Garcia] committed the murder.

We previously held, in *White, supra*, the trial court properly sustained the State's challenge for cause of a prospective juror who stated she could not convict the defendant of capital murder

52

absent eyewitness testimony.  See also *Caldwell v. State*, 818 S.W.2d 790, 791, 792 (Tex. Cr. App. 1991) and *Barnard v. State*, 730 S.W.2d 703 (Tex. Cr. App. 1987).  As our holding in *White* is clearly on point and appellant does not present compelling reasons for us to repudiate *White*, [Garcia's] point of error number ten is overruled.

*Garcia I*, 919 S.W.2d at 391.  As with each preceding *Witherspoon* challenge, Garcia has failed to satisfy the requirements of 28 U.S.C. § 2254(d) in order to show that the decision of the Texas Court of Criminal Appeals was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  His claim number 20 likewise fails.

> **Claim Number 16:  In the 1991 trial, the trial court improperly granted the State's challenge for cause of venireman Ernestine Ovida Whitehorn Kieke, violating the Effective Assistance of Counsel Clause of the Sixth Amendment to the Federal Constitution.**

> **Claim Number 17:  In the 1991 trial, the trial court improperly denied defense counsel the opportunity to question venireman Ernestine Ovida Whitehorn Kieke, violating the Effective Assistance of Counsel Clause of the Sixth Amendment to the Federal Constitution.**

In claim numbers 16 and 17, Garcia argues that the trial court erred in granting the State's challenge for cause of venireperson Ernestine Ovida Whitehorn Kieke and that it erred in denying defense counsel the opportunity to question her.  He also couches the claims in terms of denial of the Sixth Amendment right to effective assistance of counsel.   The record reveals that Ms. Kieke was questioned over a two day period of time covering four hours.  Both the prosecutor and defense counsel were permitted to question her at length.  The State made four challenges for cause.  The first three challenges for cause were overruled by the trial court.  On the second day of questioning, Ms. Kieke repeatedly indicated that she could not conceive of a situation where she could find that an armed robber had been reasonably provoked into killing someone during the robbery.  28 RR(1991)

2133-35, 2138, 2141-42, 2145-47. Garcia was unsuccessful in his attempts to rehabilitate her. Her final responses to questions posed by defense counsel were as follows:

> Q    And I think you've told me that you can't sit here and visualize a set of circumstances in which you find it was reasonable. Is that true? You can't think of a set of circumstances right now?
>
> A    That's right.
>
> Q    But I think you've also told me that you're willing to listen to the evidence in a particular case and if, based on the evidence in this case, you found that it was reasonable in response to provocation that you could find that it was reasonable?
>
> A    No. I don't think so.
>
> Q    You don't think what?
>
> A    I could find it reasonable.
>
> Q    Okay.

*Id.* at 2156. In light of her responses, the State challenged Ms. Kieke for cause on the grounds that she would be unable to consider the third special issue.[8] As seen in the final exchange, Ms. Kieke would not budge from her position that she could not conceive of a situation where she could find that an armed robber had been reasonably provoked into killing someone during the robbery. Defense counsel tried to rehabilitate her but was unable to do so. Consequently, the trial court granted the State's challenge for cause. *Id.* at 2156-57.

The TCCA addressed this issue on direct appeal as follows:

---

[8]The third special issue, as it existed in 1991, was the "provocation" special issue. Although the special issue was not submitted to the jury, 6 CR(1991) 1095-97, it was discussed during voir dire as follows:

> Do you find beyond a reasonable doubt that the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased?

75 RR(1991) 27.

In points of error numbers five through seven, [Garcia] claims the trial court erred in granting the State's challenge for cause to venireperson Kieke and denied appellant effective assistance of counsel under the Sixth Amendment of the U.S. Constitution and Art. I § 10 of the Texas Constitution by denying him the opportunity to voir dire Kieke.

During the voir dire of venireperson Kieke, the State made four challenges for cause, three of which were overruled by the trial court. The State then asked Kieke a hypothetical question with respect to special issue three (provocation). The question was allowed over the objection of [Garcia]. Kieke answered the question in the negative, essentially stating she could never find that the killing of a robbery victim by the robber was a reasonable reaction to something the victim might have done to provoke him. Kieke did not alter her response despite [Garcia's] attempts to rehabilitate her on this issue. The trial court then sustained the State's challenge for cause.

We have held on several occasions that Art. 35.16(b)(3) allows the State to challenge for cause a venireperson who indicates he or she is biased against the defendant. *White, supra; Flores v. State,* 871 S.W.2d 714, 719 (Tex.Cr.App.1993); *Guerra v. State,* 771 S.W.2d 453, 467 (Tex.Cr.App.1988). Kieke's response clearly indicated that she could not find a murder committed during a robbery to be reasonable as a response to provocation, thus indicating a bias against [Garcia] with respect to special issue three. The record supports the ruling of the trial court and [Garcia] fails to show any abuse of discretion. See *Jacobs, supra,* at 402. Indeed, the entire record of voir dire of Kieke—some four hour's worth—shows a vacillating venireperson and we will accord great deference to the decision of the trial court in such circumstances. *Mooney v. State,* 817 S.W.2d 693 (Tex.Cr.App.1991).

[Garcia] fails to cite any authorities or make any substantive arguments with respect to either his federal or Texas constitutional claims of denial of effective assistance of counsel resulting from the trial court's action concerning venireperson Kieke. Based on *McCambridge, supra, Dinkins, supra,* and Texas Rule of Appellate Procedure 74(f), we overrule these claims as inadequately briefed.

Points of error numbers five, six and seven are overruled.

*Garcia I*, 919 S.W.2d at 389-90.

In the present petition, Garcia argues that Ms. Kieke was qualified and successfully rehabilitated. He went on to assert that the State should have asked other questions, such as "whether, in the appropriate case where the evidence proved beyond a reasonable doubt that the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased." Pet. 139. He did not, however, address the explanation provided by the TCCA, on the

merits, in overruling his challenge to the trial court's decision. The TCCA found that the State could challenge for cause a venireperson who indicates he or she is biased against the defendant. Indeed, Ms. Kieke unequivocally stated that she could not consider the provocation special issue in Garcia's behalf; thus, the TCCA concluded that she showed bias against him and that the trial court appropriately sustained the State's challenge for cause. Instead of directly responding to the TCCA's decision, Garcia asserted that he had "explained the rules for deciding federal juror claims under *Witt* and *Morgan*, cited by the CCA during its disposition of the Juror Phillips claim." Pet. 133. However, he did not show how the rules that were previously discussed by him apply with respect to Ms. Kieke. Garcia simply has not satisfied his burden of showing, as required by 28 U.S.C. § 2254(d), that the TCCA's findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

It is further noted that Garcia's claim lacks merit under federal law. "Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min v. Virgina*, 500 U.S. 415, 431 (1991). "Voir dire 'is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion.'" *Ristaino v. Ross*, 424 U.S. 589, 594 (1976) (citing *Connors v. United States*, 158 U.S. 408, 413 (1895)). The Constitution "does not dictate a catechism for *voir dire*, but only that the defendant be afforded an impartial jury. Even so, part of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). The Director correctly noted that the Supreme Court has found that a criminal defendant is not constitutionally entitled to question prospective jurors to whatever extent he desires. *Mu'Min,*

500 U.S. at 431. The Fifth Circuit has further found that the State "has an interest in seeing that voir dire is not unnecessarily protracted," although voir dire is ordinarily lengthy in death penalty cases. *Milton v. Procunier*, 744 F.2d 1091, 1096 (5th Cir. 1984), *cert. denied*, 471 U.S. 1030 (1985). Ms. Kieke was questioned for four hours over a two day period of time. Garcia was afforded a full and fair opportunity to adequately question Ms. Kieke until it was clear that she would not change her response and that she was biased against him with respect to the provocation special issue. The record supports the trial court's decision granting the State's challenge for cause because she was biased. Garcia's argument that she was qualified and that the trial court should not have sustained the State's challenge for cause lacks merit.

The focus of Garcia's arguments in claim numbers 16 and 17 concern the allegation that he was denied effective assistance of counsel in questioning Ms. Kieke. He argued that the "trial judge's refusal to allow [his] attorney the opportunity to voir dire Ms. Kieke after four successful rehabilitations resulted in the denial of effective assistance of counsel under the Sixth Amendment." Pet. 140. The claim as presented by Garcia misrepresent the facts. She was questioned by both attorneys over a four hour period of time. The final exchange previously quoted by the Court shows that his trial attorney was, in fact, permitted to engage in efforts to rehabilitate her, and she would not budge in her response. The State then reurged its challenge for cause and characterized Garcia's efforts to rehabilitate her as "badgering." 28 RR(1991) 2156. The TCCA rejected Garcia's claim on direct appeal because he failed "to cite any authorities or make any substantive arguments with respect to either his federal or Texas constitutional claims of denial of effective assistance of counsel resulting from the trial court's action concerning venireperson Keike." *Garcia I*, 919 S.W.2d at 390. In the present petition, Garcia once again failed to show any authority for the proposition that he was denied effective assistance of counsel because the trial court did not permit his attorney to question Ms. Kieke

*ad nauseam* in an effort to rehabilitate her. Garcia has not shown, as required by § 2254(d), that the TCCA's findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Garcia complains that the TCCA characterized his claims as inadequately briefed. He asserted that the TCCA has, with ever increasing frequency, refused to review appellate claims while holding that they were inadequately briefed. He argued that this practice violates the Due Process Clause of the Fourteenth Amendment. Pet. 133.

The TCCA has frequently rejected arguments presented by appellants because they were inadequately briefed. *See, e.g., Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011) ("We decide that this point of error is inadequately briefed and presents nothing for review as this Court is under no obligation to make appellant's arguments for her."); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim App. 2008) (The TCCA emphasized that it has no obligation "to construct and compose appellant's issues, facts, and arguments with appropriate citations to authorities and to the record.") (internal quotation marks and citations omitted). Federal courts have likewise rejected claims because they were inadequately developed. *Atlanta Gas Light Co. v. UGI Util., Inc.*, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006) ("Neither the district court nor this court has an obligation to parse a . . . record to search out facts or evidence not brought to the court's attention."); *Corley v. Rosewood Care Center, Inc.*, 388 F.3d 990, 1001 (7th Cir. 2004) ("[W]e will not root through the hundreds of documents and thousands of pages that make up the record to make his case for him."); *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 28 (1st Cir. 2003) ("That amounts to an invitation that we ransack the record, research the law, and make his argument for him. We decline the invitation."); *Carmen v. San*

*Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("[R]equiring the district court to search the entire record, even though the adverse party's response does not set out the specific facts or disclose where in the record the evidence for them can be found, is unfair" to the movant, to the court, and to other litigants whose cases the court could be addressing); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("[W]here the burden to present such specific facts by reference to exhibits and the existing record was not adequately met below, we will not reverse a district court for failing to uncover them itself."); *Herman v. Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing."); *Friedel v. City of Madison*, 832 F.2d 965, 969 (7th Cir. 1987) ("It is not the court's duty on appeal to wade through the record and make arguments for either party."). Neither the TCCA nor this Court have an obligation to research the record and case law to find authority or make substantive arguments to support a claim that Garcia was denied effective assistance of counsel because his attorney was not given an unlimited amount of time to question Ms. Kieke in order to persuade her to change her position on the provocation special issue. Courts are not required to make Garcia's case for him.

It is further noted that Garcia's claim that the trial court denied him effective assistance of counsel lacks merit. The Sixth Amendment, applied to the States through the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defense." *See Kansas v. Ventris*, 556 U.S. 586, 590 (2009). "The core of this right has historically been, and remains today, 'the opportunity for a defendant to consult with his attorney and to have him investigate the case and prepare a defense for trial.'" *Id.* (citing *Michigan v. Harvey*, 494 U.S. 344, 348 (1990)). "The right to the assistance of counsel has thus been given a meaning that ensures to the defense in a criminal trial the opportunity to participate fully and fairly in the adversary factfinding process." *Herring v. New York*, 422 U.S. 853, 858 (1975). A trial court denies a criminal

defendant effective assistance of counsel if, for example, defense counsel is denied the right to make a closing summation, no matter how strong the case for the prosecution may appear to the presiding judge. *Id.* In the present case, Garcia's attorney was given an opportunity to participate fully and fairly in questioning Ms. Kieke during voir dire. The questioning lasted four hours, and the trial court halted the questioning only when it was abundantly clear that Ms. Kieke would not budge from her response on the provocation special issue. Garcia was not denied his Sixth Amendment right to effective assistance of counsel resulting from the trial court's action concerning Ms. Kieke. Garcia's claim that the trial court denied him effective assistance of counsel on this issue lacks merit. Garcia is not entitled to relief on claim numbers 16 and 17.

### Claim Number 21: The Grand Jurors who indicted Garcia were selected in a racially discriminatory manner, violating the Equal Protection Clause of the Fourteenth Amendment.

In claim number 21, Garcia alleges that the Grand Jurors in Collin County were selected in a racially discriminatory manner, thereby violating his rights under the Equal Protection Clause. The record reveals that Garcia filed a motion to quash the indictment on this basis, and the trial court conducted a hearing on the motion. 3 CR(1991) 424.[9] Following the hearing, the trial court issued findings of fact and conclusions of law, including the following:

**Findings of Fact:**

The commissioners selected 20 persons from citizens of the county to be summoned as Grand Jurors for the next term of court. The evidence shows that two of those 20 were white. There is no evidence as to the racial background of the 18 others summoned.

One commissioner, Johnny Rutledge, testified before the Court. He testified that he followed the instructions of the court. Nevertheless he also testified that he did not consider

---

[9]"CR" refers to the Clerk's Record from the trial proceedings, preceded by the volume number and followed by the page number(s). Because there were two trials in this case, "CR" is followed in parenthesis by a designation of the year in which the trial was conducted.

selecting Grand Jurors who represented a broad cross-section of the population of the county considering the factors of race, sex and age. No other commissioner testified. There is no evidence that the non-testifying commissioners did not, to the extent possible, select as grand jurors persons who they determined to represent a broad cross-section of the population of the county considering the factors of race, sex and age. There is no evidence that the commissioners, as a body, did not, to the extent possible, select Grand Jurors who the commissioners determined represented a broad cross-section of the population of the county, considering the factors of race, sex and age. There is no evidence that [Garcia] was harmed by the selection procedures employed by the grand jury commissioners.

[Garcia] is Hispanic.

There is no evidence that there has been a virtual exclusion of Hispanics on grand juries in Collin County, Texas for a substantial number of years. There is no evidence that Hispanics have been underrepresented on grand juries in Collin County, Texas for a substantial number of years. There is no evidence of the racial make-up of Collin County, Texas. With respect to the Grand Jury that indicted [Garcia], the evidence shows that one of the grand jurors selected was white. There is no evidence of the race of the other 11 grand jurors selected. There is no evidence that Hispanics were underrepresented on the Grand jury that returned the Indictments herein. There is no evidence of a sizeable Hispanic population in Collin County, Texas. There is no evidence of the racial composition of grand juries which have served in Collin County in the past. There was presented to the court no historical data regarding the racial composition of the country.

**Conclusions of Law:**

[Garcia] is a member of a recognizable, distinct class, namely Hispanic.

The Grand Jury which returned the indictments was not selected in a racially discriminatory manner.

3 CR(1991) 426-27.

On direct appeal, Garcia alleged that the grand jurors were selected in a racially discriminatory manner in point of error number twenty-two. The TCCA overruled the point of error as follows:

[Garcia] correctly asserts that it is a violation of the U.S. Constitution's equal protection clause for the State to try a defendant under an indictment issued by a grand jury from which persons of his race or color have been excluded by the State. *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954); *Muniz v. State,* 672 S.W.2d 804 (Tex.Cr.App.1984).

The United States Supreme Court, in *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) established a three-part test for determining if an equal protection violation has occurred in the selection of a grand jury. The burden rests on the defendant, the

61

Court held, to ... "(2) demonstrate the group is underrepresented by comparing the proportion of the group in the total population to the proportion called to serve over a significant period of time." *Castaneda,* at 494, 97 S.Ct. at 1280.

[Garcia] failed to present any evidence of the percentage of Hispanics in Collin County. He offered no evidence as to the racial composition of the grand jury that indicted him, except that two of the twenty grand jurors were white. Furthermore, he has failed to produce evidence of any disparity between the percentage of residents of Collin County that are Hispanic and the percentage of residents summoned for service as grand jurors in Collin County that are Hispanic. [Garcia] fails to satisfy the second part of the test set forth in *Castaneda.* We overrule [Garcia's] point of error number twenty-three.

*Garcia I*, 919 S.W.2d at 393.

The Supreme Court "has long recognized that it is a denial of equal protection of the laws to try a defendant of a particular race or color under an indictment issued by a grand jury . . . from which all persons of his race have, solely because of that race or color, been excluded by the State." *Castaneda,* 430 U.S. at 492 (citations and internal quotation marks omitted). "In order to secure federal habeas corpus relief on the ground that the grand jurors were selected in a racially discriminatory manner, the petitioner must show (1) that he is a member of a race or identifiable group singled out for different treatment under the state law, as written or applied, (2) the degree of underrepresentation of his group by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors over a significant period of time, and (3) that the selection procedures employed are susceptible to abuse or are not racially neutral." *Ellis v. Lynaugh*, 873 F.2d 830, 838-39 (5th Cir.) (citing *Castaneda*, 430 U.S. at 494), *cert. denied*, 493 U.S. 970 (1989).

In the present case, Garcia has not satisfied his burden of showing that the grand jurors were selected in a racially discriminatory manner. He failed to present any evidence showing that Hispanics were underrepresented compared to the proportion of Hispanics in Collin County. The claim lacks merit.

The TCCA focused on the second step in the *Castaneda* analysis in finding that Garcia had not shown that he is entitled to relief. In the present petition, Garcia asserts that the conduct of the grand jury commissioners can establish a prima facie case without reference to statistical or historical evidence. *See Cassell v. Texas*, 339 U.S. 282 (1950). Citing *Cassell*, the Fifth Circuit has observed that "where sufficient proof of discrimination in violation of the Fourteenth Amendment has been made out, and not rebutted, the Supreme Court uniformly has required that the conviction be set aside and the indictment returned by the unconstitutionally constituted grand jury be quashed." *Rideau v. Whitley*, 237 F.3d 472, 484 (5th Cir. 2000) (citing *Cassell* and other cases), *cert. denied*, 533 U.S. 924 (2001). In the present case, however, Garcia has not made a prima facie case of discrimination nor provided sufficient proof of discrimination. Instead, he has provided only "mere conclusory allegations of discrimination, [which] are insufficient to entitle an individual to relief." *Ellis*, 873 F.2d at 839. The trial court gave him the opportunity to prove his case, but he failed to show that he was indicted in a racially discriminatory manner. The TCCA subsequently overruled his point of error. Garcia has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. He has not shown that he is entitled to relief. Garcia has not shown that he is entitled to relief with respect to claim number 21.

**Claim Number 22: The trial court conducted voir dire examination of eleven jurors without the presence of Garcia or his attorney, violating the Due Process Clause of the United States Constitution.**

**Claim Number 23: The trial court conducted voir dire examination of eleven jurors without the presence of Garcia or his attorney, violating the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.**

**Claim Number 24: The trial court conducted voir dire examination of eleven jurors without the presence of Garcia or his attorney, violating the Confrontation Clause of the Sixth Amendment to the United States Constitution.**

In claims 22 through 24, Garcia contends that the trial court violated his rights to due process, equal protection and confrontation when, on August 21, 1991, it conducted voir dire of eleven veniremembers outside of his and his attorney's presence. Garcia acknowledges that he and his attorney agreed to waive the error, but he argues that his presence at this stage could not be waived without violating the Constitution.

The issue was fully developed on direct appeal. The TCCA addressed the claim as follows:

> In point of error number twenty-four, [Garcia] contends he was denied his right under art. 33.03 to be present at certain proceedings held on August 21, 1991. On that day about ten prospective jurors were qualified and received instructions from the court. Counsel for appellant was notified in advance but he informed the court he could not be in attendance because of some unspecified medical reason and because he would be in trial. [Garcia] and [Garcia's] counsel indicated they had no objection to the proceedings occurring without their presence and so indicated on the record. Subsequently, the State filed a motion to quash the venire. At the hearing on the motion, [Garcia] indicated his objection to it. The trial court complied with [Garcia's] wishes and denied the state's motion.

> We have held that a defendant may not, by his own actions, create reversible error. [Garcia], in the present case, affirmatively waived his right to be present at the August 21 proceedings, a confrontation clause-based right granted under Texas Code of Criminal Procedure 33.03. We have held that this right, even if denied, is subject to harmless error analysis. *McMahon v. State,* 582 S.W.2d 786 (Tex.Cr.App.1978), *cert. denied* 444 U.S. 919, 100 S.Ct. 238, 62 L.Ed.2d 175 (1978). See also *Weber v. State,* 829 S.W.2d 394, 396 (Tex.App.—Beaumont 1992). [Garcia] was not denied his right to be present—he waived it. Furthermore, he objected to the State's motion to quash the venire, the only method by which the effects of the August 21 proceedings could have been eliminated. Our holdings in *Curtis v. State,* 519 S.W.2d 883 (Tex.Cr.App.1975), *Beasley v. State,* 634 S.W.2d 320 (Tex.Cr.App.1982) and *Kelley v. State,* 823 S.W.2d 300 (Tex.Cr.App.1992) are dispositive.

> [Garcia's] point of error number twenty-four is overruled.

*Garcia I*, 919 S.W.2d at 393-94.

Garcia now argues that he had a statutory entitlement right granted by Texas statute and common law to be present during voir dire. He noted that Texas law provides that "[i]n all

prosecutions for felonies, the defendant must be personally present at trial . . . ." Tex. Code Crim. Proc. Ann. art. 33.03 (Vernon 1991). He added that the TCCA has accordingly held that "an accused's right to be present at his trial is unwaivable until such time as the jury has been selected." *Miller v. State*, 692 S.W.2d 88, 91 (Tex. Crim. App. 1985). Furthermore, the "right to be present at trial is actually an expression of the right to confrontation." *Weber v. State*, 829 S.W.2d 394, 396 (Tex. App. - Beaumont 1992). Without citing any federal case law, he asserted that "under a federal constitutional analysis, . . . these violations are not waivable by a capital murder defendant." Pet. 160.

The Court's first observation about Garcia's argument that he could not waive his right to be present is that he focused on Texas law. It is again noted that the role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery*, 988 F.2d at 1367. Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996), *cert. denied*, 520 U.S. 1242 (1997). In the course of reviewing state proceedings, a federal court does "not sit as a super state supreme court to review error under state law." *Wood*, 503 F.3d at 414; *Skillern*, 720 F.2d at 852.

With respect to Garcia's reference to *Miller*, it is noted that the TCCA observed that its decision that a criminal defendant cannot waive his right to be present during the jury selection process is based on Texas law. *Miller*, 692 S.W.2d at 91. The TCCA further observed, in comparison, that under federal law, "an accused who is present at the time voir dire begins, but who thereafter voluntarily removes himself for any length of time forfeits his Sixth Amendment right to be present for that period of time during which he was absent." *Id.* The TCCA described Texas law as being more protective than its federal counterpart. *Id.* Garcia's argument that he could not waive his right

65

to be present during the jury selection process is based on a right provided by Texas law, as opposed to federal law, and does not give rise to federal habeas corpus relief.

"The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but [the Supreme Court has] recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (internal citation omitted). On the other hand, the "defense has no constitutional right to be present at every interaction between a judge and juror." *Id.* The Due Process Clause only guarantees a defendant "the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). The Court explained that the "presence of a defendant is a condition of due process to the extent that a fair trial and just hearing would be thwarted by his absence, and to that extent only." *Gagnon*, 470 U.S. at 526 (internal quotations omitted).

Citing the foregoing case law, the Fifth Circuit found that a petitioner had not made a substantial showing of the deprivation of a constitutional right because he was not physically present during the initial day of jury selection. *Corwin v. Johnson*, 150 F.3d 467, 474 (5th Cir.), *cert. denied*, 525 U.S. 1049 (1998). Furthermore, the Fifth Circuit has specifically rejected the argument that the right be present during voir dire cannot be waived. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir.), *cert. denied*, 521 U.S. 1123 (1997). It was noted that the petitioner "points to no clearly established Supreme Court precedent that prohibits criminal defendants from voluntarily waiving their presence during the jury selection process." *Id.* The Fifth Circuit went on to hold that the TCCA's finding that the petitioner had voluntarily waived his right to be present during voir dire was "not an unreasonable application of the law to the facts." *Id.* It is apparent from the Fifth Circuit's analysis of the TCCA's

decision that the TCCA has found that a criminal defendant may waive the right to be present despite the blanket statement to the contrary in *Miller.* The decision in *Lockhart* is equally applicable to the present case. He waived his right to be present during a portion of voir dire, and his argument that he could not waive the right lacks merit. Garcia has not made a substantial showing of the denial of a constitutional right. *Id.* Garcia is not entitled to relief in light to *Corwin* and *Lockhart*. Moreover, he is not entitled to relief with respect to claim numbers 22 through 24 because he has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**Claim Number 25: State prosecutors introduced evidence that Texas does not provide adequate prison guard staffing, which therefore leads to more violence in prison. The State used this evidence to argue that because of its lack of staffing, Mr. Garcia should be executed. This violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.**

**Claim Number 26: State prosecutors introduced evidence that Texas does not provide adequate prison guard staffing, which therefore leads to more violence in prison. The State used this evidence to argue that because of its lack of staffing, Mr. Garcia should be executed. This violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.**

**Claim Number 27: State prosecutors introduced evidence that Texas does not provide adequate prison guard staffing, which therefore leads to more violence in prison. The State used this evidence to argue that because of its lack of staffing, Mr. Garcia should be executed. This violates the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.**

**Claim Number 28: If the Court determines that these issues have been procedurally defaulted by the trial or direct appeal counsel, then Mr. Garcia asserts a claim for ineffective assistance of counsel for trial and appeal in violation of the Sixth Amendment.**

Claim numbers 25 through 32 involve rebuttal testimony provided by Royce Smithey, a State witness, during the sentencing retrial that was conducted in 2001. Claim numbers 25 through 28

concern the substance of his testimony, while claim numbers 29 through 32 concern whether he was qualified to testify as an expert witness. The Court's discussion will initially focus on claim numbers 25 through 28. The Director argues claim numbers 25 through 27 are procedurally barred and that claim numbers 25 through 28 lack merit.

The first issue that should be addressed is the Director's argument that claim numbers 25 through 27 are procedurally barred. Garcia challenged Smithey's testimony on direct appeal in his sixth, seventh and eighth points of error. The TCCA discussed the points of error in *Garcia II*, 2003 WL 22669744, at *4-5. The TCCA provided the following discussion concerning Garcia's challenge to the substance of Smithey's testimony:

> In his eighth point of error, [Garcia] asserts the probative value of Smithey's testimony was substantially outweighed by unfair prejudice in violation of Rule of Evidence 403, but fails to explain why that is so. The issue in question was whether [Garcia] posed a future danger. [Garcia] first presented testimony from Dr. Walter Quijano as an expert on prison classification. Quijano testified that, because of [Garcia's] prior attempted prison escape, he would be classified as a security risk that required him to be housed in administrative segregation should he receive a life sentence. Quijano then presented a video to show that inmates within administrative segregation present an extremely low risk, and consequently a low probability of committing acts of violence within the prison system. Smithey was called to directly rebut this implication. He explained that administrative segregation units do not always function in an ideal manner and that, regardless of [Garcia's] disciplinary history, there was a possibility that he could be moved into the general prison population, where there was a higher risk of violent offenses occurring. Further, Smithey's testimony was narrowly tailored to the issue the jury had to decide-whether [Garcia] posed a future danger. The probative value of Smithey's testimony was not substantially outweighed by any unfair prejudice. Therefore, the trial court did not abuse its discretion in admitting Smithey's testimony.

*Id.* at *5. The TCCA accordingly overruled the point of error. *Id.* Garcia proceeded to challenge the substance of Smithey's testimony with totally new arguments in his state application for a writ of habeas corpus in claim numbers one through four, which are identical to claim numbers 25 through 28 in the present petition. The TCCA found that claim numbers one through three were "procedurally defaulted and barred from habeas review because they were available to be raised on direct appeal but

were not, *see Ex parte Gardner*, 959 S.W.2d 189, 198-200 (Tex. Crim. App. 1996)." *Ex parte Garcia*, 2008 WL 4573962, at *1. The TCCA further found that claim number four, an ineffective assistance of counsel claim, lacks merit. *Id.* It is again noted that the Director argues that claim numbers 25 through 27 are procedurally barred in light of the decision by the TCCA.

The procedural default doctrine was announced by the Supreme Court in *Coleman v. Thompson*, 501 U.S. 722 (1991). The Court explained the doctrine as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id.* at 750. Applying this principle, the Fifth Circuit has held that the "procedural-default doctrine precludes federal habeas review when the last reasoned state-court opinion addressing a claim explicitly rejects it on a state procedural ground." *Matchett v. Dretke*, 380 F.3d 844, 848 (5th Cir. 2004) (citation omitted), *cert. denied*, 543 U.S. 1124 (2005). The procedural default doctrine applies to claims that could have been raised but were not raised on direct appeal. *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994). *See also Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012); *Coleman v. Quarterman*, 456 F.3d 537, 546 (5th Cir. 2006), *cert. denied*, 549 U.S. 1343 (2007). The Director appropriately noted that this bar was "firmly established and regularly followed" by the time of Garcia's second trial in 2001, and the Fifth Circuit recognizes it as such. *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004).

The Fifth Circuit recently issued a decision that illustrates the operation of the bar as follows:

> In the first place, Doyle never objected to the admission of the statements he made to his friends wherein he confessed his crimes. Second, though he objected to the voluntariness of his confession based on his mental state, he did not raise his current theory—coercion by the conditioning of state officials—at trial. Nor did he raise those issues on direct appeal. In his state habeas proceedings, the court found that Claim 3 could have been raised on direct appeal

and that Doyle had thus defaulted on it. Texas bars all record-based claims not raised on direct appeal. It also requires contemporaneous objection. We "ha[ve] consistently held that the Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review...." *Fisher v. Texas,* 169 F.3d 295, 300 (5th Cir.1999).

Doyle makes no real response to his default of Claim 3, nor does he attempt to demonstrate actual prejudice or good cause for the default. He instead urges that his IAC claim, Claim 4, is necessarily tied to the merits of Claim 3. That, however, does not satisfy Texas caselaw regarding the default, so Doyle has procedurally defaulted as to the substantive issues of Claim 3.

*Doyle v. Stephens*, 535 F. App'x 391, 393-94 (5th Cir. 2013) (footnotes omitted), *cert. denied*, 134 S. Ct. 1294 (2014).

In the state habeas proceedings in the present case, the TCCA specifically found that the first three claims were "procedurally defaulted and barred from habeas review because they were available to be raised on direct appeal but were not." *Ex parte Garcia*, 2008 WL 4573962, at *1. In the present petition, Garcia responded by asserting that "[t]hese claims were exhausted. They were included in Garcia's timely filed 2003 state habeas application, later denied by the [T]CCA without comment." Pet. 162. Garcia's response misses the point. Exhaustion is not an issue. The problem with claim numbers 25 through 27 is that Garcia raised totally new arguments in his state application, which he repeats in the present petition. The TCCA found that the new arguments were procedurally defaulted and barred. Moreover, Garcia's response misrepresents the record. The TCCA, in fact, commented on the claims and found that they were procedurally defaulted and barred. Garcia did not respond to the holding of the TCCA. He likewise failed to address the holding of the TCCA in his reply to the answer. Much like the situation in *Doyle*, Garcia made no real attempt in his petition or his reply to the answer to demonstrate cause for the default and actual prejudice, nor demonstrate that the failure to consider the claims would result in a fundamental miscarriage of justice; thus, the claims are procedurally barred.

In claim number 28, Garcia presents a contingent claim of ineffective assistance of counsel. He argues that if the Court determines that claim numbers 25 through 27 have been procedurally defaulted by trial or direct appeal counsel, then he asserts a claim of ineffective assistance of counsel regarding both his trial and appellate attorneys. The Director appropriately observed, in response, that Garcia provided no briefing whatsoever on this claim. Indeed, he offered only conclusory allegations and bald assertions, which are insufficient to support a petition for a writ of habeas corpus. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.), *cert. denied*, 531 U.S. 849 (2000); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

The analysis of Garcia's ineffective assistance of counsel claim could end at this juncture. Nonetheless, the issue should be further developed in light of recent decisions by the Supreme Court. Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687. Under the first prong, he must show that counsel's performance was deficient. *Id.* To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 690. Under the second prong, the petitioner must show that his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient

performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

In the context of § 2254(d), the deferential standard that must be accorded to trial counsel's representation must also be considered in tandem with the deference that must be accorded to state court decisions, which has been referred to as "doubly" deferential. *Richter*, 131 S. Ct. at 788. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* "If the standard is difficult to meet, that is because it was meant to be." *Id.* at 786. *Also see Morales v. Thaler*, 714 F.3d 295, 302 (5th Cir.), *cert. denied*, 134 S. Ct. 393 (2013).

Until just recently, Garcia's claim numbers 25 through 27 would unquestionably be foreclosed as procedurally barred. However, the Supreme Court opened the door slightly for a showing of cause and prejudice to excuse the default in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). In *Martinez*, the Supreme Court answered a question left open in *Coleman*: "whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." 132 S. Ct. at 1315. These proceedings were referred to as "initial-review collateral proceedings." *Id.* The Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320. The Supreme Court specified that the standards of *Strickland* apply in assessing whether initial-review habeas counsel was ineffective. *Id.* at 1318.

The Supreme Court extended *Martinez* to Texas in *Trevino*. Although Texas does not preclude appellants from raising ineffective assistance of trial counsel claims on direct appeal, the Court held

that the rule in *Martinez* applies because "the Texas procedural system - as a matter of its structure, design, and operation - does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal." *Trevino*, 133 S. Ct. at 1921. The Court left it to the lower courts to determine on remand whether Trevino's claim of ineffective assistance of counsel was substantial and whether his initial state habeas attorney was ineffective. *Id.*

The Fifth Circuit has summarized the rule announced in *Martinez* and *Trevino* as follows:

> To succeed in establishing cause to excuse the procedural default of his ineffective assistance of trial counsel claims, [petitioner] must show that (1) his underlying claims of ineffective assistance of trial counsel are "substantial," meaning that he "must demonstrate that the claim[s] ha[ve] some merit," *Martinez*, 132 S. Ct. at 1318; and (2) his initial state habeas counsel was ineffective in failing to present those claims in his first state habeas application. *See id.*; *Trevino*, 133 S. Ct. at 1921.

*Preyor v. Stephens*, 537 F. App'x 412, 421 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 2821 (2014). "Conversely, the petitioner's failure to establish the deficiency of either attorney precludes a finding of cause and prejudice." *Sells v. Stephens*, 536 F. App'x 483, 492 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1786 (2014). The Fifth Circuit recently reaffirmed this basic approach in *Reed v. Stephens*, 739 F.3d 753, 774 (5th Cir. 2014).

In the present case, Garcia could have claim numbers 25 through 27 considered on the merits if he could satisfy *Martinez* and *Trevino*. He did not show, however, that his underlying claims of ineffective assistance of trial counsel were substantial, meaning that his claims had some merit. Instead, he merely made the conclusory claim that his trial and appellate attorneys were ineffective if the Court finds that claims 25 through 27 were procedurally defaulted. Once again, conclusory allegations and bald assertions are insufficient to support a petition for a writ of habeas corpus. *See Miller*, 200 F.3d at 282; *Koch*, 907 F.2d at 530; *Ross*, 694 F.2d at 1011. Consequently, Garcia has not shown that his ineffective assistance of counsel, claim number 28, has merit. Furthermore, since

he has not shown that his ineffective assistance of counsel claim has merit, he has not shown cause and prejudice to excuse the procedural default of claim numbers 25 through 27.

It is further noted that claim number 28 was decided on the merits by the state courts. The trial court made a finding of fact that Garcia "presents no facts to support his contingent claims of ineffective assistance of counsel." 6 SHCR-02 at 2171. The trial court went on to issue several conclusions of law. First of all, the trial court found that Garcia's contingent ineffective assistance of counsel claim, presented "without discussion of counsel's alleged deficiency, amount[s] to a request for an advisory opinion which is prohibited by the Court of Criminal Appeals. *Gonzales v. State*, 864 S.W.2d 522 (Tex. Crim. App. 1993)." *Id.* The court observed that the ineffective assistance claim was governed by *Strickland* and found that Garcia had not demonstrated facts that show that his counsel was deficient. *Id.* at 2172. The trial court further found that Garcia had not shown that he suffered harm as a result of trial counsel's performance. *Id.* The trial court ultimately found that Garcia did not receive ineffective assistance of counsel. *Id.* The TCCA subsequently found that the ineffective assistance of counsel claims lacks merit and added that it agrees "with the trial court's findings and conclusion that [Garcia] has failed to demonstrate deficient performance or prove resulting harm, *see Strickland v. Washington*, 466 U.S. 668, 694 (1984)." *Ex parte Garcia*, 2008 WL 4573962, at *1. Garcia did not address the state court findings in either his federal petition or his reply to the answer. Claim number 28 should thus be denied for the additional reason that Garcia failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Furthermore, he failed to overcome the "doubly" deferential standard that must be accorded to trial counsel in conjunction with § 2254(d). Garcia is not entitled to relief on claim number 28.

As a final matter, the Court feels compelled, in the interest of justice, to address the merits of claim numbers 25 though 27. As was noted in the excerpt from *Garcia II*, Smithey testified as a rebuttal witness. Dr. Walter Quijano, the defense's expert on future dangerousness, testified on direct examination that the prison system, even if run perfectly, would not be free of crime:

Q    Now, crime does occur within prison. Is that true?

A    Yes. There are many crimes in prison.

Q    And there's discovered crime and undiscovered crime in prison; correct?

A    Yes.

Q    Would you agree that basically prisoners are creative? They're going to do what they can get away with. Is that about right?

A    Yes.

Q    And is it true that the TDC system is just completely powerless to control criminal behavior in prison?

A    It's not powerless. It's not powerless. They have many measures in place that keep criminal behavior to a minimum, but you cannot eliminate that. It's not powerless, but it's also not omnipotent.

Q    As a general rule, do they do a good job, poor job, fair job?

A    As a general rule, the Texas prison system does a very good job, considering that these are the worst of society that we send there. These are not the best people. We send all of our --the -- the rejects of society and pack them into small places, and you should expect a lot more criminal activity, but they -- we don't have that because of -- the controls that the prison has. In general, we have a good prison system.

30 RR(2001) 46-47. Dr. Quijano, along with Vince Gonzalez, produced a videotape that depicts procedures within the prison system. 34 RR(2001) 20-21.

The State called Smithey as a rebuttal witness. He was questioned about the controls mentioned by Dr. Quijano and the video produced by him:

Q    Now, on that particular tape where it shows -- it shows, like, two guards escorting an inmate to a rec yard that's enclosed within the pod or feeding -- two inmates feeding -- excuse me -- two guards feeding inmates inside a cell. I mean, are those ideal conditions?

A    Yes, sir.

Q    Are those the ideal security procedures?

A    Yes, sir. That's the way they should do it.

Q    Does that always happen?

A    No, sir.

Q    Why is that?

A    Well, you have a shortage of personnel in the prison system. You have times when other things are going on that may require you to take personnel from one section to another. So it could be one individual that is conducting that type of security on -- on that particular pod at any given time.

Q    Have you investigated offenses having occurred in the ad seg portion of a pod-type unit where, because of a deviation in security personnel, it has given an inmate the opportunity to commit a crime?

A    Yes, sir. . . .

Q    Now, is that a common way for, I guess, crimes of opportunity to happen, a deviation of the security protocol and procedure?

A    Sure.

Q    And in the crimes -- first off, could you estimate how many crimes you've investigated in the prison system itself?

A    Be thousands.

Q    Is that -- when you say it's common, roughly what percentage of those types do you think -- roughly what percentage of those times do you think some deviation of security protocol gave rise to opportunity to commit crime?

76

A    I really don't know.  It's been quite a few times, but I have no way of telling at this point, you know, how many times it was.

34 RR(2001) 70-72.

Garcia seizes on Smithey's testimony about personnel shortages to argue that the State advocated that he should be executed because Texas does not provide adequate prison guard staffing, which leads to more violence in prison.  Garcia has twisted and misrepresented Smithey's testiony.  Smithey's testimony was a response to Dr. Quijano's testimony.  His testimony was not related to whether Garcia or anyone should be executed because of staff shortages.  The TCCA appropriately found that his "testimony was narrowly tailored to the issue the jury had to decide - whether [Garcia] posed a future danger."  *Garcia II*, 2003 WL 22669744, at *5.  It should be noted that Garcia went on to talk about overcrowding, particularly in administrative segregation, but his grounds for relief in claim numbers 25 through 27 concern inadequate prison guard staffing, as opposed to overcrowding.  His discussion about overcrowding is irrelevant to the issue of inadequate staffing.

In addition to finding that claim numbers 25 through 27 were procedurally defaulted, the trial court, in the alternative, issued the following findings of fact concerning the claims:

1.    [Garcia] did not demonstrate a nexus between any staffing deficiencies in the Texas prison system and his death sentence.

2.    There was no evidence at the time of [Garcia's] escape from prison that the prison was understaffed or that his escape was a consequence of understaffing.

3.    The testimony of Royce Smithey was offered to rebut the testimony of a defense witness, Dr. Walter Quijano, and to assist the jury in understanding the reality of how prisons function and how they vary from the ideal conditions described by Dr. Quijano. It was not offered to advocate for the death penalty.

4.    Royce Smithey's testimony was both relevant and reliable.

5.    No witness ever referenced or testified that [Garcia] should be put to death because the State does not provide adequate staffing in its positions.

6 SHCR-02 2170-71.  The findings were reasonable in light of the testimony at trial.  Garcia has not

rebutted these findings with clear and convincing evidence as required by 28 U.S.C. § 2254(e)(1).  *See*

*Moody v. Quarterman*, 476 F.3d 260, 267 (5th Cir. 2007), *cert. denied*, 552 U.S. 843 (2007).  The trial

court went on to issue a conclusion of law finding that the "probative value of Mr. Smithey's testimony

was not substantially outweighed by the danger of unfair prejudice.  Tex. R. Evid. 403;  *Garcia*, 203

WL 22669744 at *5."  6 SHCR-02 2171.  The trial court's conclusion of law basically was a finding

that the claims lacked merit for the same reasons provided by the TCCA on direct appeal, although the

specific claims presented in the present petition were not the same as those presented on direct appeal.

Garcia simply has not shown, as required by 28 U.S.C. § 2254(d), that the state court's alternative

findings on the merits resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law as determined by the Supreme Court of the United States,

or resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings.  It is again noted that when a state court provides

alternative reasons for denying relief, a federal court may not grant relief "unless *each* ground

supporting the state court decision is examined and found to be unreasonable."  *Wetzel*, 132 S. Ct. at

1199 (emphasis in original).  Garcia has not shown that any of the reasons provided by the state court

for denying relief were unreasonable.  Garcia has not shown that he is entitled to federal habeas corpus

relief on claim numbers 25 through 28.

> **Claim Number 29:  The testimony of Royce Smithey did not satisfy the reliability requirements of *Daubert v. Merrill Dow* [10] or *Nenno v. State*,[11] and its introduction in a death penalty sentencing hearing violated the Due Process Clause of the Fourteenth Amendment.**

---

[10]509 U.S. 579 (1993)

[11]970 S.W.2d 549, 560 (Tex. Crim. App. 1998).

**Claim Number 30: The testimony of Royce Smithey did not satisfy the reliability requirements of *Daubert v. Merrill Dow* or *Nenno v. State*, and its introduction in a death penalty sentencing hearing violated the Equal Protection Clause of the Fourteenth Amendment.**

**Claim Number 31: The testimony of Royce Smithey did not satisfy the reliability requirements of *Daubert v. Merrill Dow* or *Nenno v. State*, and its introduction in a death penalty sentencing hearing violated the Cruel and Unusual Punishment Clause of the Fourteenth Amendment.**

**Claim Number 32: If the Court determines that these issues have been procedurally defaulted by trial or direct appeal counsel, then Mr. Garcia asserts a claim for ineffective assistance of counsel for trial ad appeal in violation of the Sixth Amendment.**

Garcia continues with an attack on Royce Smithey's testimony in claim numbers 29 through 32. This time, he argues that Smithey did not satisfy the reliability requirements of *Daubert* and similar cases decided by Texas state courts. It is again noted that the State presented Smithey as a rebuttal witness during the sentencing retrial. At the time of the trial, Smithey was the chief investigator for the Texas Special Prison Prosecution Unit. He has regularly testified in death penalty cases. *See, e.g., Sells v. Stephens*, 536 F. App'x 483, 487 (5th Cir. 2013); *Fuller v. Johnson*, 114 F.3d 491, 497 (5th Cir. 1997); *Jones v. Cockrell*, 74 F. App'x 317, 321 (5th Cir. 2003). *See also Williams v. Thaler*, No. 1:09cv271, 2013 WL 1249773, at *9-12 (E.D. Tex. March 26, 2013); *Simpson v. Quarterman*, Civil Action No. 1:04cv485, 2007 WL 1008193, at *21-23 (E.D. Tex. March 29, 2007). Despite his extensive record of testifying in death penalty and non-death penalty criminal cases, Garcia alleges that Smithey should not have been allowed to testify in this case.

Claim numbers 29 through 31 were presented as claim numbers 5 through 7 in Garcia's second state application for a writ of habeas corpus. The trial court issued the finding that the claims were raised and rejected on direct appeal. 6 SHCR-02 at 2170-71. The TCCA, however, disagreed with the trial court's findings. The TCCA found that the "allegations were procedurally defaulted and bared

from habeas review because they were available to be raised on direct appeal but were not." *Ex parte*

*Garcia*, 2008 WL 4573962, at *1.

In order to understand the distinction made by the TCCA, the decision on direct appeal should

be compared to the claims presented in the state habeas proceedings. On direct appeal, the TCCA

addressed the qualifications of Smithey as follows:

> In his sixth, seventh, and eighth points of error, [Garcia] contends the trial court erred
> by allowing Royce Smithey, a prison prosecution investigator, to testify as an expert. This
> Court reviews the trial court's ruling under an abuse of discretion standard and will not reverse
> the trial court's ruling unless it falls outside the zone of reasonable disagreement. *Salazar,* 38
> S.W.3d at 151; *Moreno v. State,* 22 S.W.3d 482, 487 (Tex.Crim.App.1999).

> In his sixth point of error, [Garcia] claims Smithey lacked the requisite knowledge of
> the prison classification system to be qualified as an expert pursuant to Rule of Evidence 702.
> Smithey was called to rebut the implication from [Garcia's] expert that [Garcia] would not
> pose a future danger in prison based on the assumption that [Garcia] would most likely be
> housed in administrative segregation. It was Smithey's opinion that [Garcia] would pose a
> future danger because the administrative segregation units do not function in an ideal manner.

> "The special knowledge which qualifies a witness to give an expert opinion may be
> derived from specialized education, practical experience, a study of technical works, or a
> varying combination of these things." *Wyatt v. State,* 23 S.W.3d 18, 27 (Tex.Crim.App.2000)
> (quoting *Penry,* 903 S.W.2d at 762). The party offering the expert witness, in this case, the
> State, bears the burden of showing that the witness is qualified on the specific matter in
> question. *Id.* When questioned by the defense about his qualifications to give such an opinion,
> Smithey testified that he was a veteran peace officer with twenty-four years of experience and
> that at the time of trial, he had been the chief investigator of the Special Prison Prosecution
> Unit for thirteen years. He related that his job was to investigate and prosecute felonies
> committed by prison inmates and had done so in thousands of cases. He stated that he is
> familiar with the prison classification system and at what levels capital murderers can be
> classified. Further, he is aware of the security procedures for the administrative-segregation
> units, having visited them many times. In light of this testimony, we cannot say the trial court
> abused its discretion in allowing Smithey to testify as an expert witness. *See id.*

> In his seventh point of error, [Garcia] claims Smithey's testimony should not have been
> admitted because he did not disclose the underlying facts or data which supported his opinion
> in violation of Rule of Evidence 705(a). The underlying facts or data which supported
> Smithey's opinion were his personal experiences mentioned above. Although he testified that
> he failed to bring data to support his opinions, Smithey nevertheless complied with Rule of
> Evidence 705(a) by disclosing his personal experiences during his testimony at trial. TEX.R.
> EVID. 705(a). Thus, the trial court did not abuse its discretion in allowing Smithey's testimony.

*Garcia II*, 2008 WL 22669744, at *4-5.

By comparison, claim numbers 29 through 31 concern a challenge to Smithey's qualifications based on *Daubert* and *Nenno v. State.* Neither *Daubert* nor *Nenno* were discussed in Garcia's appellate brief in *Garcia II*. Garcia clearly challenged the qualifications of Smithey as an expert witness on direct appeal, but his arguments were based on the Texas Rules of Evidence, as opposed to *Daubert* and *Nenno*. Consequently, in the state habeas proceedings in the present case, the TCCA specifically found that the claims were "procedurally defaulted and barred from habeas review because they were available to be raised on direct appeal but were not." *Ex parte Garcia*, 2008 WL 4573962, at *1.

In the present petition, Garcia responded by asserting that "[t]hese claims were exhausted. They were included in Garcia's timely filed 2003 state habeas application, later denied by the CCA without comment." Pet. 181. Once again, Garcia's response misses the point. Exhaustion is not an issue. The problem with claim numbers 29 through 31 is that he presented different arguments in the state habeas proceedings. The TCCA found that the new arguments were procedurally defaulted and barred. Moreover, Garcia's response also misrepresents the record. The TCCA, in fact, commented on the claims and found that they were procedurally defaulted and barred. Garcia did not respond to the holding of the TCCA. He likewise failed to address the holding of the TCCA in his reply to the answer. Much like the situation in *Doyle*, *supra*, Garcia made no real attempt in his petition or his reply to the answer to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claims would result in a fundamental miscarriage of justice; thus, the claims are procedurally barred.

The Court would add that there is no merit to a federal habeas claim based on *Daubert*. *Daubert* did not set a constitutional standard for the admissibility of expert testimony. *Milone v.*

*Camp*, 22 F.3d 693, 702 (7th Cir. 1994), *cert. denied*, 513 U.S. 1076 (1995). It simply examined the standard of the admissibility of scientific evidence under the Federal Rules of Evidence. Thus, a violation of *Daubert* does not equal a constitutional violation. In another habeas case involving a capital murder conviction, the Fifth Circuit rejected a claim that the State failed to satisfy the *Daubert* test for reliability with the explanation that such claims are "squarely foreclosed by Supreme Court and circuit precedent." *Rivas v. Thaler*, 432 F. App'x 395, 404 (5th Cir.) (citations omitted), *cert. denied*, 132 S. Ct. 850 (2011). Finally, in August of this year, the Fifth Circuit rejected a similar *Daubert* claim raised by Garcia's current counsel in *Williams v. Stephens*, 761 F.3d 561, 571 (5th Cir. 2014). Garcia's claims based on *Daubert* and various state cases are both procedurally barred and squarely foreclosed by Supreme Court and Fifth Circuit precedent.

As with claim number 28, Garcia tries to bootstrap his *Daubert* claims to an ineffective assistance of counsel claim. In claim number 32, he argues that "[i]f the Court determines that these issues have been procedurally defaulted by trial or direct appeal counsel, then [he] asserts a claim for ineffective assistance of counsel for trial and appeal in violation of the Sixth Amendment." Pet. 181. Other than listing claim number 32, he did not otherwise mention nor develop his ineffective assistance of counsel claim. Once again, Garcia has offered nothing other than conclusory allegations and bald assertions, which are insufficient to support a petition for a writ of habeas corpus. *See Miller*, 200 F.3d at 282; *Koch*, 907 F.2d at 530; *Ross*, 694 F.2d at 1011. Garcia has not shown that he is entitled to federal habeas corpus relief based on his contingent claim of ineffective assistance of counsel. Furthermore, to the extent that Garcia potentially could overcome the procedural default of claim numbers 29 through 31 in light of *Martinez* and *Trevino*, Garcia has not shown an underlying claim of ineffective assistance of trial counsel that is substantial; thus, he has not satisfied the requirements of *Martinez*/*Trevino* in order to overcome the procedural default. Claim numbers 29 through 31 are

procedurally barred and squarely foreclosed by Supreme Court and Fifth Circuit precedent, and claim number 32 alleging ineffective assistance of counsel lacks merit.

The contingent ineffective assistance of counsel claim should additionally be rejected because of the state court findings. In the state habeas corpus proceedings, the TCCA found that the corresponding ineffective assistance of counsel claim presented in the state habeas corpus proceedings lacks merit. *Ex parte Garcia*, 2008 WL 4573962, at *1. The finding was made that Garcia "failed to demonstrate deficient performance or prove resulting harm." *Id.* As before, Garcia made no real attempt in the present petition or in his reply to the answer to address the findings of the TCCA. Ground number 32 should thus be denied for the additional reason that Garcia has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Moreover, he failed to overcome the "doubly" deferential standard that must be accorded to trial counsel in conjunction with § 2254(d). Garcia is not entitled to relief on claim number 32.

As a final matter, Garcia's complaints about the qualifications of Royce Smithey as an expert witness lack merit. He acknowledged that Smithey is a "peripatetic prison specialist." In other words, Smithey regularly testifies in death penalty cases, along with other criminal cases. He is a legitimate witness, regardless of Garcia's complaints about him. Garcia's points and complaints about his testimony go to the weight to be given to his testimony, not its admissibility. In such situations, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Stevenson v. E. I. Dupont De Nemours and Co.*, 327 F.3d 400, 407 (5th Cir. 2003) (citing *Daubert*,

500 U.S. at 599) (internal quotation marks omitted). Overall with respect to the expert witnesses, trial counsel appropriately represented Garcia by calling Dr. Walter Quijano as an expert witness. The State countered with Royce Smithey as a rebuttal witness. Both witnesses were qualified to testify. Both witnesses were subjected to vigorous cross-examination, and it was up to the jury to consider the weight to be given to their testimony in assessing Garcia's punishment. Garcia's complaints about Smithey's qualifications and his attorneys' representation with respect to Smithey lack merit.

> **Claim Number 33: In violation of *Brady v. Maryland* [12] and *Kyles v. Whitley*,[13] the State withheld critical evidence in its possession which was both mitigating and capable of impeachment of one of its star witnesses, thereby violating the Due Process Clause of the Fourteenth Amendment to the United States Constitution.**

> **Claim Number 34: If the Court determines that this issue has been procedurally defaulted by trial or direct appeal counsel, then Mr. Garcia asserts a claim for ineffective assistance of counsel for trial and appeal in violation of the Sixth Amendment.**

Garcia next alleges that the State violated the mandates of *Brady* and *Kyles* when it failed to turn over impeachment evidence related to Smithey's testimony. Specifically, Garcia contends that (1) Smithey had internal TDCJ statistics during the trial of Danielle Simpson, (2) Smithey had denied being an expert in another trial, and (3) Smithey admitted to being only a "lay expert."

The Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The duty to provide favorable evidence includes impeachment evidence as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). In order to prevail on a *Brady* claim, the Fifth Circuit has required a petitioner to show that (1) the prosecution suppressed evidence, (2) the evidence

---

[12]373 U.S. 83 (1963).

[13]514 U.S. 419 (1995).

was favorable to the defense, and (3) the evidence was material to his guilt or innocence. *Mahler v. Kaylo*, 537 F.3d 494, 500 (5th Cir. 2008) (citations omitted). "Evidence is 'material' only when there exists 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (citing *Bagley*, 473 U.S. at 682). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976). "Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *West v. Johnson*, 92 F.3d 1385, 1399 (5th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1242 (1997). The State is not obligated under *Brady* to disclose evidence that is available from other sources. *Rector v. Johnson*, 120 F.3d 551, 559 (5th Cir. 1997) (citation omitted), *cert. denied*, 522 U.S. 1120 (1998).

In the present case, the record shows that defense counsel was fully aware that Smithey had possession of internal TDCJ statistics during a previous trial. 34 RR(2001) 101-02, 106-07, 110-112. Defense counsel was fully aware that Smithey had denied being an expert in another trial and that he admitted to being only a "lay expert." *Id.* at 99-100, 104-06, 112. Counsel vigorously cross-examined Smithey on these points. Counsel clearly had this favorable information at trial and used it to impeach Smithey.

Based upon the record, the trial court issued the following findings of fact regarding the *Brady* claim during the state habeas proceedings:

7.      There is no evidence that supports that either of these items was ever in the possession of the prosecutor or the Collin County Criminal District Attorney.

8.      [Garcia's] trial counsel was in possession of the transcript of Mr. Smithey's testimony in *State v. Eddie Routon*, 34 R.R. 40-41.

9.    [Garcia's] trial counsel used the transcript of Mr. Smithey's testimony in *State v. Eddie Routon*, to impeach Mr. Smithey during cross-examination. 34 R.R. 99.

10.   [Garcia] questioned and cross-examined Mr. Smithey regarding whether he brought any underlying data upon which he based his opinions. 34 R.R. 50, 94.

11.   Mr. Smithey was not subpoenaed to bring any documentation or written data before the Court. 34 R.R. 51.

6 SHCR-02 at 2171. The trial court went on the issue the following conclusions of law:

6.    The impeachment evidence complained of by [Garcia] was a transcript of Royce Smithey's testimony in a previous capital murder case from Ector County, *State v. Eddie Routon*, and any underlying written material that supported Mr. Smithey's testimony, specifically internal TDCJ-ID statistics. 34 R.R. 41.

8.    The information complained of by [Garcia] was not exculpatory. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963).

9.    The information complained of by [Garcia] was not "material". *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999).

10.   [Garcia] cannot show the result of the proceeding would have been different because he was able to use the complained of impeachment evidence against Mr. Smithey.

11.   [Garcia] cannot claim he was harmed by failure to disclose impeachment evidence which is already known to the defense. *Ex parte Russell*, 738 S.W.2d 644, 646 (Tex. Crim. App. 1986).

12.   The State did not fail to disclose impeachment evidence in its possession as required by *Brady v. Maryland*.

6 SHCR-02 at 2172. The TCCA subsequently found that the *Brady* claim is "without merit" and that

it agrees "with the trial court's findings and conclusions that [Garcia] has failed to demonstrate that

the State did not turn over evidence favorable to him that was material to either guilt or punishment."

*Ex parte Garcia*, 2008 WL 4573962, at *1.

Neither Garcia's petition nor his reply to the answer addresses the findings by the state courts.

Garcia has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established federal

law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Moreover, it is clear from the record that the claim lacks merit. Defense counsel already had the complained of information, and he clearly used it in an effort to impeach Royce Smithey. There was no *Brady* violation in this case.

With respect to claim number 34, Garcia asserts that if the Court determines that this issue has been procedurally defaulted by trial or direct appeal counsel, then he asserts a claim for ineffective assistance of counsel for trial and appeal in violation of the Sixth Amendment. However, the state courts did not find that the *Brady* claim was procedurally defaulted. The issue of whether the *Brady* claim was procedurally defaulted was never raised by the State. The contingent ineffective assistance of counsel claim is moot. Moreover, it appears that counsel simply cut and pasted the claim from the state application without ever reading the state court decision. The inclusion of claim number 34 in the present petition was disingenuous.

It is further noted that the state courts fully considered the contingent ineffective assistance of counsel claim on the merits. The trial court found that Garcia "presents no facts to support his contingent claims of ineffective assistance of counsel." 6 SHCR-02 at 2171. The trial court went on to cite the *Strickland* standard and found that Garcia had not shown that his attorney was deficient or that he suffered harm as a result of trial counsel's performance. *Id.* at 2172. The trial court specifically found that Garcia did not receive ineffective assistance of counsel. *Id.* The TCCA subsequently found that the claim lacks merit. *Ex parte Garcia*, 2008 WL 4573962, at *1.

Neither Garcia's petition nor his reply to the answer addressed the findings by the state courts with respect to the contingent claim of ineffective assistance of counsel. Garcia has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Garcia has not shown that he is entitled to relief on either claim number 33 or claim number 34.

> **Claim Number 35: Testimony by the State's psychologist that Mr. Garcia was a future danger lacked scientific reliability required by *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, and *Kumho Tire Co., Ltd. v. Carmichael*.[14]**

> **Claim Number 36: The State's psychologist who testified that Mr. Garcia was a future danger lacked scientific qualifications as required by *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, and *Kumho Tire Co., Ltd. v. Carmichael*.**

> **Claim Number 37: Testimony by the State's psychologist that Mr. Garcia was a future danger lacked scientific reliability, and thereby violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.**

Claim number 35 through 37 is another challenge to the qualifications of an expert witness, this time Dr. Lisa K. Clayton, based on *Daubert*, along with *Kumho Tire Co.* Dr. Clayton testified as a rebuttal witness on the issue of whether Garcia was a future danger to society. The Director argues that the claims are procedurally barred and without merit.

The trial court issued the following findings of fact regarding this claim during the state habeas corpus proceedings:

> 8.      Dr. Clayton was qualified as an expert. 33 R.R. 8-9.

> 9.      [Garcia's] claims regarding these issues are entirely record based.

6 SHCR-02 at 2181. The trial court went on to find that the claim was procedurally barred. *Id.* at 2182. The TCCA subsequently found that the allegations were "procedurally defaulted and barred from habeas review because they were available to be raised on direct appeal but were not. *see Ex*

---

[14]526 U.S. 137 (1999).

*parte Gardner*, 959 S.W.2d 189, 198-200 (Tex. Crim. App. 1996)." *Ex parte Garcia*, 2008 WL 4573962, at *1. Once again, Garcia made no real attempt to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, claim numbers 35 through 37 are procedurally barred.

The Court would add that there is no merit to a federal habeas claim based on *Daubert*. *Daubert* did not set a constitutional standard for the admissibility of expert testimony. *Milone*, 22 F.3d at 702. It simply examined the standard of the admissibility of scientific evidence under the Federal Rules of Evidence. Thus, a violation of *Daubert* does not equal a constitutional violation. As noted in conjunction with claim numbers 29 through 31, the Fifth Circuit has rejected habeas claims based on *Daubert* with the explanation that such claims are "squarely foreclosed by Supreme Court and circuit precedent." *Rivas*, 432 F. App'x at 404 (citations omitted). Finally, in August of this year, the Fifth Circuit rejected a similar *Daubert* claim raised by Garcia's habeas counsel. *Williams*, 761 F.3d at 571. Garcia's claims based on *Daubert* and related cases are both procedurally barred and squarely foreclosed by Supreme Court and Fifth Circuit precedent.

> **Claim Number 38. In violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the trial court excluded the definition of mitigating evidence which would have permitted jurors to apply a reasoned moral response to Mr. Garcia's crime.**
>
> **Claim Number 39: In violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the trial court excluded the definition of mitigating evidence which would have permitted jurors to apply a reasoned moral response to Mr. Garcia's crime.**
>
> **Claim Number 40: In violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution, the trial court excluded the definition of mitigating evidence which would have permitted jurors to apply a reasoned moral response to Mr. Garcia's crime.**

In claim numbers 38 through 40, Garcia complains that the trial court refused to give the following instruction requested by his attorney defining mitigating evidence:

> You are instructed that when you deliberate on the questions posed in the special issues you are to consider all relevant mitigating circumstances, if any, by the evidence presented by the State or the Defendant. A mitigating circumstance may include, but is not limited, to any aspect of the defendant's character, background, record, emotional instability, intelligence, or circumstances of the crime which you believe could make a death sentence inappropriate in this case. If you find that there are any -- if you find that there are any, give effect and consideration to them in assessing the defendant's personal culpability at the time you answer the special issue. If you determine, in giving effect to the mitigating evidence, if any, that a life sentence as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, a negative finding should be given to that special issue under consideration.

34 RR(2001) 132-133. Garcia further complains that the meaning of "moral blameworthiness" was not defined.

The TCCA addressed both issues on direct appeal as follows:

> In his ninth point of error, [Garcia] contends the trial court erred by failing to include his requested instruction on mitigating evidence in the jury charge in violation of *Mason v. State,* 905 S.W.2d 570 (Tex.Crim.App.1995).

> Mason was tried in March of 1992 for the capital murder of his wife that occurred in January of 1991. At that time, there was no statutory question for the jury to answer regarding mitigating evidence. Thus, the trial judge crafted its own instruction-virtually identical to the one that appellant attempted to have included in the jury charge-which this Court ultimately held to be constitutional. *Mason,* 905 S.W.2d at 576. But nowhere in this Court's opinion in *Mason* was it even suggested that a trial court must give that same instruction in all capital cases. Further, at the time of [Garcia's] punishment hearing in January 2001, there was a statutory question for the jury to answer regarding mitigating evidence-the question presented in Article 37.0711, section 3(e). It states:

> > The court shall instruct the jury that if the jury returns an affirmative finding on each issue submitted under Subsection (b) of this section, it shall answer the following issue:

> > > Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Art. 37.0711 § 3(e). The plain language of this provision is mandatory; the trial court did not have the discretion to use a different instruction. The trial court submitted this statutory instruction to the jury in [Garcia's] case.

Garcia argues that the *Mason* instruction is needed in order to allow the jury to consider and give effect to mitigating evidence that goes beyond the scope of the special issues, including appellant's mental and emotional problems. *See Mason,* 905 S.W.2d at 576. The present statutory question has been held sufficient to allow the jury to consider the very factors appellant discusses. *See Penry v. Johnson,* 532 U.S. 782, 803, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001)(noting that current sentencing scheme allows the jury to consider and give effect to the appellant's mental retardation and abuse as a child as mitigating evidence); *Bell v. State,* 938 S.W.2d 35, 54 (Tex.Crim.App.1996). Therefore, the trial court did not err in refusing appellant's requested instruction. . . .

[Garcia] further contends that the phrase "moral blameworthiness" was not defined. It is well settled that if there is no statutory definition of a term, the trial court is not obligated to define the term when it "has such a common and ordinary meaning that jurors can be fairly presumed to know and apply such meaning." *Resendiz v. State,* 112 S.W.3d 541, 550 (Tex.Crim.App.2003) (quoting *Phillips v. State,* 597 S.W.2d 929 (Tex.Crim.App.1980)). "Likewise, when the terms used are simple in themselves and are used in their ordinary meaning, such as in this case, it is presumed that jurors know their meaning and, therefore, a definition in the jury charge is not necessary." *Id.* (citing *Hogan v. State,* 496 S.W.2d 594 (Tex.Crim.App.1973)); *Ladd v. State,* 3 S.W.3d 547, 572-73 (Tex.Crim.App.1999). The meaning and function of the term "moral blameworthiness," when read in context of the jury instruction, is easily understood. *See* Art. 37.0711 § 3(f)(3).

*Garcia II,* 2003 WL 22669744, at 6-7. The TCCA rejected both claims.

In the present proceeding, Garcia contends that the statutory definition of mitigating evidence is too restrictive and that it offends the principles of *Lockett v. Ohio*, 438 U.S. 586 (1978) and progeny. The Fifth Circuit rejected this type of argument in *Beazley v. Johnson*, 242 F.3d 248, 260 (5th Cir. 2001). In *Blue, supra*, the Fifth Circuit rejected the argument again with the following discussion:

Blue nonetheless contends that there is a reasonable likelihood that the jurors in his case interpreted the new special issues as prohibiting them from giving full consideration and effect to all of the mitigating evidence that he presented during his punishment-phase trial. Blue acknowledges that "the language in the Texas mitigation issue itself," i.e., § 2(e)(1), is constitutionally adequate. But he argues that § 2(f)(4)'s definition of mitigating evidence as evidence that a juror might regard as reducing the defendant's moral blameworthiness is unconstitutionally narrow and "effectively nullifies the word 'background' in the special issue itself." According to Blue, many reasonable, law-abiding jurors "will assume that the phrase 'moral blameworthiness' relates only to those factors that are directly related to the commission

of the crime, but not to the perhaps more remote socio-economic and psychological reasons why the defendant may have been predisposed to commit it." Thus, he concludes, the evidence he presented of his "poor mental health, low IQ, and good conduct while incarcerated" were effectively put beyond the reach of the jury.

This Court considered and rejected this very line of argument in *Beazley v. Johnson,* where it held that the capital sentencing scheme presently codified in article 37.071 "does *not* unconstitutionally 'preclude the jury from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." This Court concluded that "*all* mitigating evidence can be given effect under the broad definition of mitigating evidence found in" § 2(e)(1) and that § 2(f)(4)'s "definition of mitigation evidence does *not* limit the evidence considered under" § 2(e)(1). On this latter point, the *Beazley* court stressed that " '[v]irtually *any* mitigating evidence is capable of being viewed as having some bearing on the defendant's 'moral culpability.' " Over the last ten years, this Court has reaffirmed its holding in *Beazley* in at least four unpublished decisions.

*Blue*, 665 F.3d at 665-66. The argument that the statutory definition of mitigating evidence is too restrictive simply lacks merit. These decisions also implicitly reject Garcia's embedded complaint concerning the failure to provide a definition for the phrase "moral blameworthiness." Moreover, with respect to the alleged need for a definition of moral blameworthiness, the Fifth Circuit has repeatedly rejected claims arguing that the terms employed in the death penalty statute need to be defined because the terms are not unconstitutionally vague and their meanings are readily understood. *See, e.g., Woods v. Johnson*, 75 F.3d 1017, 1033-34 (5th Cir.), *cert. denied*, 519 U.S. 854 (1996); *James v. Collins*, 987 F.2d 1116, 1119-20 (5th Cir.), *cert. denied*, 509 U.S. 947 (1993); *Nethery v. Collins*, 993 F.2d 1154, 1162 (5th Cir. 1993), *cert. denied*, 511 U.S. 1026 (1994); *Rivas*, 432 F. App'x at 405. Claim numbers 38 through 40 lack merit in light of clearly established Fifth Circuit precedent.

Relief on these claims should be denied for the additional reason that Garcia has not shown, as required by 28 U.S.C. § 2254(d), that the TCCA's findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings. Relief should be denied on claim numbers 38 through 40.

> **Claim Number 41: In violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the trial court excluded the definition of reasonable doubt which would have permitted jurors to apply the appropriate burden of proof.**

> **Claim Number 42: In violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the trial court excluded the definition of reasonable doubt which would have permitted jurors to apply the appropriate burden of proof.**

> **Claim Number 43: In violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution, the trial court excluded the definition of reasonable doubt which would have permitted jurors to apply the appropriate burden of proof.**

> **Claim Number 44: In violation of the constitutional guarantee against *ex post facto* laws, the trial court excluded the definition of reasonable doubt which would have permitted jurors to apply the appropriate burden of proof.**

In claim numbers 41 through 44, Garcia complains that the trial court failed to provide a definition of reasonable doubt, thereby violating the Eighth and Fourteenth Amendments and the proscription against *ex post facto* laws. The Director argued that the claims are procedurally barred and without merit.

Garcia presented these allegations as claim numbers 22 through 25 in his state application. The TCCA found that the "allegations are procedurally defaulted and barred from habeas review because they were available to be raised on direct review but were not. *see Ex parte Gardner*, 959 S.W.2d 189, 198-200 (Tex. Crim. App. 1996)." *Ex parte Garcia*, 2008 WL 4573962, at *1. Garcia did not address the TCCA's decision in either his petition or his reply to the answer. Much like the situation in *Doyle*, *supra*, Garcia made no real attempt in his petition or his reply to the answer to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claims would result in a fundamental miscarriage of justice; thus, the claims are procedurally barred.

Claim numbers 41 through 44 must be rejected for the additional reason that they lack merit under clearly established federal law. The Constitution does not require courts to define reasonable doubt. *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). The Fifth Circuit has held that "attempts by trial courts to define 'reasonable doubt' have been disfavored by this court." *Thompson v. Lynaugh*, 821 F.2d 1054, 1961 (5th Cir.), *cert. denied*, 483 U.S. 1035 (1987). Garcia's argument that he was entitled to the instruction under state law as it existed in 1991, which was the law at the time of the commission of the offense, has likewise been rejected by the Fifth Circuit. *Lackey v. Scott*, 28 F.3d 486, 491 (5th Cir. 1994), *cert. denied*, 513 U.S. 1086 (1995). Claim numbers 41 through 44 are procedurally barred and devoid of merit.

> **Claim Number 45: Garcia's Fourteenth Amendment right to due process and Eighth Amendment right to be free from the arbitrary and capricious infliction of the death penalty were violated because the statute under which he was sentenced to death allows the jury too much discretion to determine who should live and who should die and because it lacks the minimal standards and guidance necessary for the jury to avoid the arbitrary and capricious imposition of the death penalty.**

Garcia next argues that the statute under which he was sentenced to die allows the jury too much discretion in determining who should live and die because it lacks the minimal standards and guidance necessary for the jury to avoid the arbitrary and capricious imposition of the death penalty. He argued that the evolution of the death penalty has come full circle because, under the present Texas statute as applied to him, the jury has once again been given unfettered discretion that both invites and permits arbitrary application of the ultimate penalty. *Cf. Gregg v. Georgia*, 428 U.S. 153, 189 (1976) (plurality op.) ("*Furman*[15] mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.").

---

[15]*Furman v. Georgia*, 408 U.S. 238 (1972).

Garcia places special emphasis on the dissenting opinion in the denial of certiorari by Justice Blackmun in *Callins v. Collins*, 510 U.S. 1141 (1994). He stressed that Justice Blackmun asserted that the death penalty must be fairly administered with reasonable consistency in order to comply with the mandates of Eighth Amendment. *Id.* at 1144.

The Director argues that the claim is procedurally barred and lacks merit. The state habeas records reveal that Garcia presented the claim in the state habeas corpus proceedings as claim number 27. The TCCA found that the allegation is procedurally defaulted and barred from habeas review because it was available to be raised on direct review but was not. *Ex parte Garcia*, 2008 WL 4573962, at *1. Garcia did not address the TCCA's decision in either his petition or his reply to the answer. Much like the situation in *Doyle*, *supra*, Garcia made no real attempt in his petition or his reply to the answer to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, claim number 45 is procedurally barred.

Claim number 45 must be rejected for the additional reason that it lacks merit under clearly established federal law. The Supreme Court distinguished between two aspects of the capital sentencing decision, more specifically, the eligibility decision and the selection decision, in *Tuilaepa v. California*, 512 U.S. 967, 971-72 (1994). The Supreme Court has repeatedly upheld the constitutionality of Texas' procedures for determining the existence of aggravating circumstances to make eligibility decisions. *See Jurek v. Texas*, 428 U.S. 262, 276 (1976); *see also Sonnier v. Quarterman*, 476 F.3d 349, 366-67 (5th Cir.), *cert. denied*, 552 U.S. 948 (2007). In making the selection decision, the jury must be allowed to make "an *individualized* determination" by considering "relevant mitigating evidence of the character and record of the defendant and the circumstances of the crime." *Tuilaepa*, 512 U.S. at 972. A jury "may be given 'unbridled discretion in determining

whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty.'" *Id.* at 979-80 (quoting *Zant v. Stephens*, 462 U.S. 862, 875 (1983)). In exercising its discretion, the jury "need not be instructed how to weigh any particular fact in the capital sentencing decision." *Id.* at 979. During the years following the issuance of the decision in *Tuilaepa*, the Fifth Circuit regularly rejected complaints that juries in Texas have unbridled discretion in determining who should live or die. *See, e.g., Sprouse v. Stephens*, 748 F.3d 609, 621-22 (5th Cir. 2014); *Turner v. Quarterman*, 481 F.3d 292, 299 (5th Cir. 2007), *cert. denied*, 551 U.S. 1193 (2007); *Woods v. Cockrell*, 307 F.3d 353, 359 (5th Cir. 2002); *Moore v. Johnson*, 225 F.3d 495, 506-07 (5th Cir. 2000) ("Texas followed Supreme Court instructions to the letter"), *cert. denied*, 532 U.S. 949 (2001). In addition to the foregoing, the Fifth Circuit rejected such claims in unpublished decisions. *See, e.g., Adams v. Thaler*, 421 F. App'x 322, 337 (5th Cir.), *cert. denied*, 132 S. Ct. 399 (2011); *Vasquez v. Thaler*, 389 F. App'x 419, 427-28 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 2445 (2011). Finally, prior to the filing of the present petition, this Court rejected an identical claim raised by Garcia's current counsel in *Simpson,* 2007 WL 1008193, at *30. Counsel improvidently included the claim in the present petition with the knowledge that it lacks merit.

> **Claim Number 46: Garcia's Fourteenth Amendment right to due process and Eighth Amendment rights as interpreted by *Penry v. Johnson*[16] were violated because the mitigation special issue set forth in the Texas death penalty statute sends mixed signals to the jury thereby rendering any verdict reached in response to that special issue intolerably unreliable.**

Garcia next argues that the mitigation special issue set forth in the Texas death penalty statute sends "mixed signals" to the jury thereby rendering any verdict reached in response to that special issue intolerably unreliable. He asserts that this Court should hold that the Texas death penalty scheme

---

[16]532 U.S. 782 (2001) ("*Penry II*").

violates the Eighth Amendment under the Supreme Court's "recent" decision in *Penry II*. He added that while the opinion in that case only repudiated a judicially-crafted mitigation instruction, the statutory mitigation special issue given in his case is similarly vulnerable to the criticism that it sends "mixed signals" to the jury. The signals are mixed, he says, because the statutory issue is unclear about the burden of proof. *See Lawton v. State*, 913 S.W.2d 542, 557 (Tex. Crim. App. 1995), *cert. denied*, 519 U.S. 826 (1996).

The Director argues that the claim is procedurally barred and lacks merit. The state habeas records reveal that Garcia presented the claim in the state habeas corpus proceedings as claim number 28. The TCCA found that the allegation is procedurally defaulted and barred from habeas review because it was available to be raised on direct review but was not. *Ex parte Garcia*, 2008 WL 4573962, at *1. Garcia did not address the TCCA's decision in either his petition or his reply to the answer. Much like the situation in *Doyle*, *supra*, Garcia made no real attempt in his petition or his reply to the answer to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, claim number 46 is procedurally barred.

Claim number 46 must be rejected for the additional reason that it lacks merit under clearly established federal law. The Fifth Circuit rejected this precise argument in *Oliver v. Quarterman*, 254 F. App'x 381 (5th Cir. 2007). The following explanation was provided:

> In *Penry II,* the Supreme Court struck down a judicially crafted jury instruction because it was confusing and, in effect, required the jury to answer the special issues dishonestly in order to give effect to the defendant's mitigating evidence. *Id.* at 801, 121 S.Ct. 1910. The Court rejected the instruction as sending "mixed signals" to the jury. *Id.* at 802, 121 S.Ct. 1910. The Court, however, implicitly upheld Texas's current scheme:
>
>> A clearly drafted catchall instruction on mitigating evidence also might have complied with [the Court's precedents]. Texas' current capital sentencing scheme (revised after Penry's second trial and sentencing) provides a helpful frame of reference. Texas now

requires the jury to decide "[w]hether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed." TEX.CODE CRIM. PROC. ANN. art. 37.071(2)(e)(1) (Vernon Supp. 2001).... At the very least, the brevity and clarity of this instruction highlight the confusing nature of the supplemental instruction actually given, and indicate that the trial court had adequate alternatives available to it as it drafted the instructions for Penry's trial.

*Id.* at 803, 121 S. Ct. 1910. Far from rejecting the current scheme regarding mitigation, therefore, the Supreme Court implicitly endorsed it. *See, e.g., Coleman v. Quarterman,* 456 F.3d 537, 542 (5th Cir.2006), *cert denied,* 549 U.S. 1343, 127 S. Ct. 2030, 167 L.Ed.2d 772 (2007) (quoting *Rowell,* 398 F.3d at 378) ("[N]o Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof."). Oliver has failed to make any plausible argument that Texas's mitigation special issue does not allow the jury to consider and give effect to a defendant's mitigating evidence. Oliver also points to no other cases to support his position.

*Id.* at 386-87. In light of the decision in *Oliver*, Garcia's argument that Texas' current scheme should be rejected as unconstitutional lacks merit. More recently, the Fifth Circuit rejected such arguments again in *White v. Thaler*, 522 F. App'x 226, 234 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 907 (2014). In *White*, the Court also upheld the district court's conclusion that the claim is barred by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). *Id.* Garcia simply is not entitled to relief on this claim. Finally, prior to the filing of the present petition, this Court rejected an identical claim raised by Garcia's current counsel in *Simpson*, 2007 WL 1008193, at *30-31. Counsel was clearly aware that the claim lacked merit when he included it in the present petition. The claim was improvidently included in the present petition.

> **Claim Number 47: The mitigation inquiry violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it does not provide adequate guidance for jurors to consider and give effect to Garcia's mitigating circumstances.**

> **Claim Number 48: The mitigation inquiry violates the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution because it does not**

**provide adequate guidance for jurors to consider and give effect to Garcia's mitigating circumstances.**

**Claim Number 49: The mitigation inquiry violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it fails to assign the burden of proof to either party to prove whether or not Garcia's mitigating circumstances are sufficient to warrant a life sentence.**

**Claim Number 50: The mitigation inquiry violates the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution because it fails to assign the burden of proof to either party to prove whether or not Garcia's mitigating circumstances are sufficient to warrant a life sentence.**

**Claim Number 51: The mitigation inquiry violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it fails to assign the burden of proof to the prosecution to prove the truth of the facts it offered in rebuttal of Garcia's mitigation case beyond a reasonable doubt.**

**Claim Number 52: The mitigation inquiry violates the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution because it fails to assign the burden of proof to the prosecution to prove the truth of the facts offered in rebuttal of Garcia's capital defendant's mitigation case beyond a reasonable doubt.**

Garcia raises six related claims concerning the constitutionality of the special sentencing issue regarding mitigation, as provided by Tex. Code Crim. Proc. Ann. art. 37.071(e). He argues that the special sentencing issue violates the Due Process Clause and the Cruel and Unusual Punishment Clause for the following reasons: (1) it does not provide adequate guidance for the jurors to consider and give effect to his mitigating circumstances; (2) it fails to assign a burden of proof to either party to prove whether his mitigating circumstances are sufficient to warrant a life sentence; and (3) it fails to assign the burden of proof to the prosecution to prove the truth of the facts it offered in rebuttal to his mitigation case beyond a reasonable doubt.

The analysis of Garcia's claims is somewhat problematic because he substantially revamped his arguments from the way he presented them to the state courts. His complaints about the special sentencing issue regarding mitigation were presented as claim numbers 32 through 37 in the state

habeas corpus proceedings. He argued that the special sentencing issue violates the Due Process Clause and the Cruel and Unusual Punishment Clause for the following reasons: (1) it does not provide a means for jurors to give effect to the mitigating circumstances warranting a life sentence; (2) it shifts the burden of proof to the defendant to prove that sufficient mitigating circumstances exist to warrant a life sentence; and (3) it does not require jurors to consider mitigating circumstances alone in determining whether a life sentence is warranted. The TCCA found that the allegations were procedurally defaulted and barred from habeas review because they were available to be raised on direct review but were not. *Ex parte Garcia*, 2008 WL 4573962, at *1. Garcia did not address the TCCA's decision in either his petition or his reply to the answer. Once again, he made no real attempt in his petition or his reply to the answer to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, claim numbers 47 through 52 are procedurally barred.

Nonetheless, because Garcia revamped his arguments, his claims as presented in this proceeding raise the problem of exhaustion of state remedies. State prisoners bringing petitions for a writ of habeas corpus are required to exhaust their state remedies before proceeding to federal court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). In order to exhaust properly, a state prisoner must "fairly present" all of his claims to the state court. *Picard v. Connor*, 404 U.S. 270, 275 (1971). This means that a petitioner must have informed the state court system of the same facts and legal theories upon which he bases his assertions in his federal petition. *Id.* at 276-77; *Dispensa v. Lynaugh*, 847 F.2d 211, 217-18 (5th Cir. 1988). The exhaustion requirement is not satisfied where the petitioner presents new legal theories or factual claims in his federal petition. *Neville v. Dretke*, 423 F.3d 474, 478 (5th Cir. 2005) (citations omitted). "It is not

enough that all the facts necessary to support the federal claim were before the state courts . . . or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Rather, the petitioner must afford the state court a "fair opportunity to apply controlling legal principles to the facts bearing on his constitutional claim." *Id.* "Indeed, where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in state court, he fails to satisfy the exhaustion requirement." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (citations omitted). In Texas, all claims must be presented to and ruled upon the merits by the TCCA. *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985).

When a petition includes claims that have been exhausted along with claims that have not been exhausted, it is called a "mixed petition," and historically federal courts in Texas have dismissed the entire petition for failure to exhaust. *See, e.g., Galtieri v. Wainwright*, 582 F.2d 348, 355 (5th Cir. 1978) (en banc). In recent years, however, unexhausted claims in a mixed petition have been dismissed as procedurally barred. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir.), *cert. denied*, 515 U.S. 1153 (1995). *See also Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). "Procedural default . . . occurs when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Williams v. Thaler*, 602 F.3d 291, 305 (5th Cir.) (citations and internal quotation marks omitted), *cert. denied*, 131 S. Ct. 506 (2010). A petitioner may overcome the procedural bar by demonstrating cause and prejudice for the default or that a fundamental miscarriage of justice would occur from the court's refusal to consider his claim. *Fearance*, 56 F.3d at 642.

In the present case, Garcia substantially revamped his claims. He presented legal theories distinct from the theories that he presented to the TCCA. Consequently, he did not afford the state

courts a fair opportunity to consider his claims regarding the mitigation inquiry. The TCCA would dismiss the claims as procedurally barred if he returned to state court to present his new legal theories. *See* Tex. Code Crim. Proc. art. 11.071 § 5(a). As before, Garcia has made no real attempt in his petition or in his reply to the answer to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claims would result in a fundamental miscarriage of justice. Consequently, to the extent that Garcia has substantially revamped his arguments, his claims as presented in the present proceeding are unexhausted and procedurally barred.

Despite the foregoing, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). *See Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir. 2005) ("As noted, under § 2254(b)(2) we can *deny* (but *not* grant) [petitioner's] non-exhausted claim."), *cert. denied*, 549 U.S. 838 (2006). Claim numbers 47-52 may also be denied because they lack merit in light of clearly established federal law. The Fifth Circuit has repeatedly held that "no Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof." *Blue*, 665 F.3d at 668 (citations omitted). Garcia's claims about the failure to assign a burden of proof to either party or the failure to require the State to rebut his mitigation case beyond a reasonable doubt simply lacks merit in light of Fifth Circuit precedent. *Druery v. Thaler*, 647 F.3d 535, 546 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1550 (2012); *Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir. 2005), *cert. denied*, 546 U.S. 848 (2005); *Adams*, 421 F. App'x at 334; *Kerr v. Thaler*, 384 F. App'x 400, 403 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 907 (2011). Similarly, the Fifth Circuit has rejected claims based on the argument that the mitigation inquiry under Texas law does not provide "adequate guidance" for jurors. *Parr v. Thaler*, 481 F. App'x 872, 878 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 842 (2013). Claim numbers 47 through 52 are procedurally barred and devoid of merit.

**Claim Number 53: The trial court violated the Eighth and Fourteenth Amendments to the United States Constitution by failing to instruct the jury that a "No" vote by a single jury member would result in a life sentence instead of a death sentence despite the statutory requirement of 10 votes for a "No" answer to Article 37.071 § 2(b) or for a "Yes" vote to Article 37.071 § 2(e).**

In claim number 53, Garcia argues that the trial court violated the Eighth and Fourteenth Amendments by failing to instruct the jury that a "No" vote by a single jury member would result in a life sentence instead of death despite the statutory requirement of 10 votes for a "No" answer to article 37.071 § 2(b)(1) or for a "Yes" vote to article 37.071 § 2(e). The Texas procedure "is commonly known as the '10-12 Rule.'" *Blue*, 665 F.3d at 669 (citations omitted). Garcia admits that both the Fifth Circuit and TCCA have rejected these claims.

Garcia raised the issue on direct appeal. The TCCA rejected the claim as follows:

> In his twenty-second, twenty-third, and twenty-fourth points of error, appellant argues the 12-10 rule of Article 37.0711, section 3(a)(d)(2), which requires ten votes for the jury to return a negative answer to the first or second special issue and at least ten votes for the jury to return an affirmative answer to the third special issue, violates the Eighth and Fourteenth Amendments to the United States Constitution. We have repeatedly rejected identical claims. *Johnson v. State,* 68 S.W.3d 644, 656 (Tex.Crim.App.2002); *Wright v. State,* 28 S.W.3d 526, 537 (Tex.Crim.App.2000), *cert. denied,* 531 U.S. 1128, 121 S.Ct. 885, 148 L.Ed.2d 793 (2001); *Chamberlain,* 998 S.W.2d at 238. **[Garcia's] twenty-second, twenty-third, and twenty-fourth points of error are overruled.**

*Garcia II,* 2003 WL 22669744, at *11. Garcia raised the issue again in his state application for a writ of habeas corpus as claim number 38. The TCCA found that the claim was procedurally barred from habeas review because it had already been raised and rejected on direct appeal. *Ex parte Garcia*, 2008 WL 4573962, at *1.

Garcia's response notes perceived trends that existed at the time he filed the petition in 2009. In particular, he cited the decision in *Nelson v. Quarterman*, 472 F.3d 287 (5th Cir. 2006) (en banc), *cert. denied*, 551 U.S. 1141 (2007). *Nelson*, however, is irrelevant to the present case. The Fifth Circuit explained that the petitioner in *Nelson* was sentenced under the pre-1991 special issue scheme,

which did not include the mitigation special issue.  *Blue*, 665 F.3d at 667.  Garcia was sentenced under the new rules which provide for the mitigation special issue.  Despite the perceived trends that may have been occurring up until 2009, the Fifth Circuit's more recent decisions have soundly rejected challenges to the 10-12 Rule.  *Blue*, 665 F.3d at 669-670;  *Druery*, 647 F.3d at 542-43.  The Fifth Circuit provided the following explanation:

> [Petitioner] contends that Texas's system of instructing punishment-phase jurors of the consequences of a failure to agree on a sentence violates the Eighth Amendment.  Article 37.071 requires capital jurors to be instructed that they can answer "Yes" to the future dangerousness issue and "No" to the mitigation special issue only if all twelve of them agree to do so and that they can give the opposite answers only if ten or more of them agree to do so.  If the jurors answer "No" to the future-dangerousness issue or "Yes" to the mitigation issue, the defendant is sentenced to life without parole.  The same result obtains if the jurors fail to agree on an answer, but the statute prohibits the court and the parties from informing the jurors of the effect of their failure to agree.  This is commonly known as the 10-12 Rule. . . . [Petitioner] contends that the 10-12 Rule is unconstitutional because it affirmatively misleads jurors about their role in the sentencing process. . . .  However, the Supreme Court held in *Jones v. United States* that a failure to instruct the jury as to the consequences of deadlock in no way affirmatively misleads the jury about its role in the sentencing process.[17]  This Court has concluded that *Jones* insulates the 10-12 Rule from constitutional attack.  And it has also held that the 10-12 Rule passes constitutional muster independently of the holding announced in *Jones*.  Because no clearly established federal law invalidates the 10-12 Rule or calls its constitutionality into doubt, [Petitioner] is not entitled to a COA on this issue.

*Blue*, 665 F.3d at 669-70.  Earlier this year, the Fifth Circuit rejected yet another challenge to the rule.  *Reed v. Stephens*, 739 F.3d at 779.  Claim number 53 lacks merit in light of *Blue, Dreury* and *Reed*.  Relief should be denied for the additional reason that Garcia has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

---

[17]527 U.S. 373, 381-82 (1999).

**Claim Number 54: Garcia's right to a fair trial was fundamentally compromised because jurors were instructed that they may infer intent to commit murder generally, rather than find intent specifically, in violation of the Due Process Clause of the 14th Amendment and the heightened reliability of the 8th Amendment.**

During the guilt/innocence phase of the 1991 trial, the trial court's instructions to the jury included the following:

> A person commits capital murder when such person intentionally, in the course of committing robbery, causes the death of an individual.

> A person commits robbery if, in the course of committing theft, as defined hereinafter, and with intent to obtain or maintain control of the property, he intentionally or knowingly causes bodily injury to another. . . .

> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

> Intent or knowledge may be inferred by acts done or words spoken.

6 CR(1991) 1048-1050A. Garcia complains about the last sentence of the instruction that intent may be inferred by acts done or words spoken, as opposed to finding intent specifically. He asserted that the Due Process Clause requires that juries receive adequate guidance in applying the law. *Sandstrom v. Montana*, 442 U.S. 510, 524 (1979); *Cupp v. Naughten*, 414 U.S. 141, 147-48 (1973). He added that the Due Process Clause is concerned with the accuracy of the verdict and in assuring that no citizen is convicted unless the government is held to the high standard of beyond a reasonable doubt. He observed that "[t]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Because of the Due Process Clause's demand for accuracy, a jury instruction which can be read by a juror to presume an element of the State's case is

unconstitutional. *Sandstrom*, 442 U.S. at 524. Garcia argues that the instruction permitting the jury to infer his intent by acts done or word spoken is a classic *Sandstrom* error.

The Director argued that the claim is time-barred and that it lacks merit. With respect to the time-barred argument, he noted that the TCCA addressed Garcia's argument in his first appeal. *Garcia I*, 919 S.W.2d at 396-97. The decision in *Garcia I* was issued on March 27, 1996. Garcia filed his first application for a writ of habeas corpus in state court in 1997, which was denied on February 10, 1999. He filed his first federal petition for a writ of habeas corpus in this Court on August 23, 1999. The first petition included many of the claims discussed earlier in this Memorandum Opinion. He did not, however, include the present claim. In his current federal habeas petition, filed on October 11, 2009, he reurged most of the claims from his original petition. It is stressed once again that he did not include the current claim in the original federal petition. The Director argued that the present claim is not saved by relating back to the original petition. *See* Fed. R. Civ. P. 15(c)(2); *Mayle v. Felix*, 545 U.S. 644, 664 (2005) ("So long as the original and amended petitions state claims that are tied back to a common core of operative facts, relation back will be in order."). Garcia did not respond to the argument that claim number 54 is time-barred in his reply to the answer.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations of one year. 28 U.S.C. § 2244(d)(1). AEPDA provides that the one year limitations period shall run from the latest of four possible situations. Section 2244(d)(1)(A), the applicable provision in the present case, specifies that the limitations period shall run from the date a judgment becomes final by the conclusion of direct review or the expiration of the time for seeking such review. In cases where "a state prisoner's conviction is affirmed on direct appeal but the sentence is vacated and the case is remanded for resentencing, the judgment of conviction does not become final within the meaning of 28 U.S.C. § 2244(d)(1)(A) until both the conviction and the sentence have become final

by the conclusion of direct review or the expiration of the time for seeking such review." *Scott v. Hubert*, 635 F.3d 659, 666 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 763 (2011).

Garcia was resentenced on March 23, 2001. *Garcia II* was decided on November 12, 2003. The Supreme Court denied his petition for a writ of certiorari on October 4, 2004. His motion for rehearing was denied on November 15, 2004. *Garcia v. Texas*, 543 U.S. 995 (2004). The Fifth Circuit has held that a conviction is final for purposes of AEDPA's one-year limitations period when a petition for certiorari is denied by the Supreme Court, not when a petition for rehearing is denied or the time to file for rehearing expires. *Giesberg v. Cockrell*, 288 F.3d 268, 271 (5th Cir. 2002). *See also Howland v. Quarterman*, 507 F.3d 840, 843 (5th Cir. 2007), *cert. denied*, 553 U.S. 1081 (2008). Garcia's conviction became final on October 4, 2004. The present petition was due one year later on October 4, 2005, in the absence of tolling provisions.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. Garcia filed an application for a writ of habeas corpus in state court on April 15, 2003, which was before his conviction was final. The Texas Court of Criminal Appeals denied the application on October 15, 2008. The deadline was tolled from October 4, 2004 until October 15, 2008. The present petition was due one year later on October 15, 2009. It was timely filed four days earlier on October 11, 2009. The petition was timely filed, and the present claim is not time-barred.

In the alternative, the Director also argued that the claim lacks merit. He concurred that the Due Process Clause requires that the prosecution prove each element of a crime beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364. Jury instructions that relieve the State of this burden violate the Constitution. *Sandstrom*, 442 U.S. at 515. "Such instructions subvert the presumption of

innocence accorded to accused persons and also invade the truth finding task assigned solely to juries in criminal cases." *Carella v. California*, 491 U.S. 263, 265 (1989). The Supreme Court went on to explain that a reviewing court "should ask whether the presumption in question is mandatory, that is, whether the specific instruction, both alone and in the context of the overall charge, could have been understood by reasonable jurors to require them to find the presumed fact if the State proves certain predicate facts." *Id*. (citing *Sandstrom*, 442 U.S. at 414). The Fifth Circuit observed that *Sandstrom* "differentiated between permissive inferences, which do not violate a defendant's due process rights, and conclusive presumptions or burden shifting presumptions, which do." *United States v. Waldron*, 118 F.3d 369, 370 (5th Cir. 1997). The Fifth Circuit rejected a challenge to a jury charge that instructed jurors that "'you *may* infer' intent." *United States v. White*, 972 F.2d 590, 598 (5th Cir. 1992). The Director correctly argued that there was nothing mandatory about the instructions. The jurors were told that they "may" infer intent, as opposed to being told that they "shall" infer intent. Moreover, nothing in the instructions suggested that the jury could find intent generally rather than specifically. The Director persuasively argued that the instruction did not violate the Constitution.

On direct appeal, the TCCA addressed Garcia's claim as follows:

> [Garcia] avers, in point of error number fifty-two, the trial court erred, in its charge to the jury in the guilt/innocence phase of the trial, in including the phrase "intent or knowledge may be inferred by acts done or words spoken." The State was required, in order to convict [Garcia] of capital murder, to prove beyond a reasonable doubt that the murder was committed in the course of a robbery or attempted robbery. Tex.Penal Code § 19.03(a)(2).

> The trial court defined robbery in its charge to the jury thusly: "A person commits a robbery if in the course of committing theft, as defined hereinafter, and with intent to obtain or maintain control of the property, he intentionally or knowingly causes bodily injury to another." Neither the State nor [Garcia] objected to this portion of the charge; nor did either object to the trial court's definition of "knowingly."

> [Garcia] objected to inclusion of the phrase described above as, among other things, a comment on the evidence. [Garcia's] objection was overruled. [Garcia] also claims that the inclusion of the phrase complained of allowed the jury to impermissibly find appellant

108

intentionally committed the murder (a required element for capital murder) based on inferences as opposed to specifically finding that [Garcia] had a conscious desire or intent to cause the death of Mr. Turski.

The facts of the offense clearly support the jury's finding that [Garcia] intentionally and knowingly murdered Mr. Turski in the course of committing or attempting to commit a robbery. First, he entered the station, toting a shotgun. Then, after ordering Mr. Turski to give him all the money in the cash register, he forced him into a back area and made him get down and shot him in the stomach with a shotgun blast, and after chasing him outside, appellant reloaded and shot him in the back of the head. A rational jury could find beyond a reasonable doubt from the evidence—including [Garcia's] videotaped and written confessions—that appellant intentionally and knowingly murdered Mr. Turski. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Dunn v. State,* 721 S.W.2d 325 (Tex.Cr.App.1986).

Assuming, arguendo, that it was error to include the complained-of words in the jury charge, the test for determining whether a jury charge error requires reversal is set forth in *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1984).

"If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of the defendant,' which means no more than there must be some harm to the accused from the error." *Almanza,* at 171. "... [T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* at 171.

No objection was made to any other portion of the jury charge given at the guilt/innocence phase. An examination of the jury charge shows the trial court properly charged the jury on the definitions of robbery, knowingly, intentionally, reasonable doubt and capital murder. (Transcript, vol. 6, pp. 1048–1059.) The evidence of [Garcia's] guilt—including written and videotaped confessions—is overwhelming. Accordingly, based on *Almanza,* we hold that any error in including the words in the jury charge at the guilt/innocence phase to which [Garcia] objects is harmless beyond a reasonable doubt.

*Garcia I*, 919 S.W.2d at 396-97.

A federal court will reverse a state court conviction based on an erroneous jury charge only when the instruction in question renders the entire trial fundamentally unfair. *Boyd v. Scott*, 45 F.3d 876, 881 (5th Cir. 1994). The question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned. *Henderson v. Kibbe*, 431 U.S. 145, 154

(1977)) (internal quotation marks and citations omitted); *Kinnamon v. Scott,* 33 F.3d 462, 465 (5th Cir), *cert. denied*, 513 U.S. 1054 (1994). Any error or omission must be evaluated in the context not only of the overall charge, but also of the entire record, including testimony and the argument of counsel. *See Henderson*, 431 U.S. at 152; *Cupp* , 414 U.S. at 146-47. The court must determine whether there is reasonable likelihood that the jury applied the instruction in a constitutionally impermissible way. *Kinnamon*, 33 F.3d at 465.

In the present case, the instruction at issue was not ambiguous, and it did not violate the Constitution as discussed in *Sandstrom, Carella, Waldron* and *White*. Assuming *arguendo* that the instruction was flawed, considering the instruction as a whole in the context of the entire record, Garcia is not entitled to relief because the instruction did not render the entire trial fundamentally unfair. The claim lacks merit. Finally, relief must be denied for the additional reason that Garcia has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**Claim Number 55: The refusal of the Texas courts to properly define the terms and phrases in the future dangerousness special issue was a decision contrary to, and an unreasonable application of clearly established constitutional law in that Garcia was 1) deemed eligible for the imposition of death as a penalty by the use of an unconstitutionally vague aggravator, and 2) Garcia was selected for the death penalty without giving full consideration and effect to record evidence of his mitigating circumstances.**

In claim number 55, Garcia complained that the Texas courts refuse to properly define the terms in the future dangerousness special issue. He asserted that the claim was fully preserved on

direct appeal and discussed by the TCCA in response to his tenth, eleventh, nineteenth, twentieth and twenty-first points of error.

The TCCA decided this issue as follows:

> In his tenth, eleventh, nineteenth, twentieth, and twenty-first points of error, [Garcia] claims the trial court erred in overruling his motion to quash the indictment and failed to properly instruct the jury because the words, "deliberate," "acts," "criminal acts of violence," "probability," "continuing threat," and "society" were not defined in the statute or the jury instructions. We have previously decided these claims adversely to [Garcia]. *Feldman v. State,* 71 S.W.3d 738, 757 (Tex.Crim.App.2002); *Chamberlain v. State,* 998 S.W.2d 230, 238 (Tex.Crim.App.1999); *McDuff v. State,* 939 S.W.2d 607, 620 (Tex.Crim.App.1997).

> [Garcia] further contends that the phrase "moral blameworthiness" was not defined. It is well settled that if there is no statutory definition of a term, the trial court is not obligated to define the term when it "has such a common and ordinary meaning that jurors can be fairly presumed to know and apply such meaning." *Resendiz v. State,* 112 S.W.3d 541, 550 (Tex.Crim.App.2003) (quoting *Phillips v. State,* 597 S.W.2d 929 (Tex.Crim.App.1980)). "Likewise, when the terms used are simple in themselves and are used in their ordinary meaning, such as in this case, it is presumed that jurors know their meaning and, therefore, a definition in the jury charge is not necessary." *Id.* (citing *Hogan v. State,* 496 S.W.2d 594 (Tex.Crim.App.1973)); *Ladd v. State,* 3 S.W.3d 547, 572-73 (Tex.Crim.App.1999). The meaning and function of the term "moral blameworthiness," when read in context of the jury instruction, is easily understood. *See* Art. 37.0711 § 3(f)(3). **Appellant's tenth, eleventh, nineteenth, twentieth, and twenty-first points of error are overruled.**

*Ex parte Garcia*, 2003 WL 22669744, at *6-7.

The Director correctly noted that the Fifth Circuit has repeatedly rejected claims complaining that these terms were not defined. *Paredes v. Quarterman*, 574 F.3d 281, 294 (5th Cir. 2009) (finding that the terms used in the future dangerousness special issue "have a plain meaning of sufficient content that the discretion left to the jury [is] no more than that inherent in the jury system itself"); *Hughes v. Johnson*, 191 F.3d 607, 615-16 (5th Cir. 1999); *Milton v. Procunier*, 744 F.2d 1091, 1095 (5th Cir. 1984) ("Under Texas law, these terms are sufficiently common that their definition is not required in a jury charge under the capital murder statute."). *See also Jurek*, 428 U.S. at 274-76 (holding that the future dangerousness special issue is not unconstitutionally vague). Garcia's

complaint that the terms used in the future dangerousness special issue were not defined lacks merit in light of clearly established federal law.

Relief should be denied for the additional reason that Garcia has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Garcia acknowledges that prior attacks on the lack of definitions in the Texas special issue survived a facial attack on vagueness grounds in *Jurek*. He, nonetheless, argued that the lack of definitions is unconstitutional "as applied" to him, particularly since the decision that he is a "continuing threat to society" did not take into consideration his age at the time of the commission of the offense. He had just turned eighteen years of age at the time of the commission of the offense. He stressed that if he had committed the offense just a few months earlier, then his death sentence would have been commuted to life along with about twenty other Texas death row inmates that received relief pursuant to *Roper v. Simmons*, 543 U.S. 551 (2005).

Garcia's "as applied" argument was not, however, presented to the TCCA. He did not exhaust this legal argument. As with claims 47 through 52, he did not demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider this legal argument would result in a fundamental miscarriage of justice. His new argument is unexhausted and procedurally barred.

The Court would add that Garcia's focus on *Roper* is misplaced. The Fifth Circuit observed that *Roper* "established a lower boundary: No one under eighteen may be executed, meaning only that, based on that metric, a defendant is not disqualified from receiving the death penalty. The jury may still consider other factors during the punishment phase, including mitigating factors. . . . He is entitled

to and did present evidence of his age and purported psychological and developmental shortcomings as mitigating factors." *Doyle*, 535 F. App'x at 395-96. The Fifth Circuit rejected the efforts to "undermine" *Roper*. *Id.* at 396 n.3. Garcia's similar efforts to undermine or extend *Roper* are unpersuasive. Moreover, his age and other mitigating factors were likewise presented to the jury, and the jury found that he was a future danger and that his life should not be spared in light of mitigating factors. Claim number 55 lacks merit.

> **Claim Number 56: Article 37.071 § 2(e) is unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution because appellate review of the second special issue is impossible.**

In claim number 56, Garcia argues that Article 37.071 § 2(e) of the Texas Code of Criminal Procedure is unconstitutional because the jury's answer to the question is not capable of appellate review. He acknowledges that he is making precisely the same argument that was rejected by the TCCA in *Eldridge v. State*, 940 S.W.2d 646 (Tex. Crim. App. 1996). He specified that he raised the matter merely to preserve it for Supreme Court review.

The claim was presented as claim number 40 in the state habeas corpus proceedings. The TCCA found that the allegation is procedurally defaulted and barred from habeas review because it was available to be raised on direct review but was not. *Ex parte Garcia*, 2008 WL 4573962, at *1. Garcia did not address the TCCA's decision in either his petition or his reply to the answer. Once again, he made no real attempt in his petition or his reply to the answer to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, claim number 56 is procedurally barred.

In addition to the foregoing, Garcia's claim lacks merit in light of clearly established federal law as decided by the Fifth Circuit. The Fifth Circuit has regularly rejected claims complaining that the Constitution requires the Texas Court of Criminal Appeals to review mitigating evidence. *Rowell*,

398 F.3d at 378; *Woods*, 307 F.3d at 359-60; *Moore*, 225 F.3d at 506-07. More recently, the Fifth

Circuit rejected this type of claim once again "because it is easily rejected on the merits." *Adams*, 421

F. App'x at 336. Claim number 56 should be denied because it is procedurally barred and lacks merit

under clearly established federal law.

> **Claim Number 57: Science evidence demonstrates that the jury instructions used in the sentencing phase failed to explain the concept of mitigating evidence, thereby violating Garcia's rights to a fair trial, due process, equal protection, and not to suffer cruel and unusual punishment as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.**

> **Claim Number 58: Social science evidence demonstrates that the jury instructions used in the sentencing phase failed to define key terms "deliberately," "criminal acts of violence," "probability," "continuing threat," "society," thereby violating Garcia's right to a fair trial, due process, equal protection, and not to suffer cruel and unusual punishment as guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.**

In claim numbers 57 and 58, Garcia contends that the jury instructions and special issues failed

to adequately explain the concept of mitigating evidence and define key terms, including "criminal acts

of violence," "probability," "continuing threat," "society," and "culpability," thereby denying him a

fair trial, due process, equal protection, and rendering his death sentence cruel and unusual

punishment. The claims are akin to Garcia's complaints about the lack of definitions in claim number

55.

As was explained in the discussion concerning claim number 55, Garcia complained about the

lack of definitions on direct appeal. *Garcia II*, 2003 WL 22669744, at *6-7. He did not, however,

present the specific legal arguments contained in claim number 57 to the state courts on either direct

appeal or in his application for a writ of habeas corpus; thus, he failed to exhaust the claim. He did

not demonstrate cause for the default and actual prejudice, nor demonstrate that the failure to consider

this legal argument would result in a fundamental miscarriage of justice. Consequently, claim number 57 is unexhausted and procedurally barred.

On the other hand, Garcia presented claim number 58 as claim number 42 in his state application for a writ of habeas corpus. The TCCA found that the allegation was procedurally defaulted and barred from habeas review because it was available to be raised on direct review but was not. *Ex parte Garcia*, 2008 WL 4573962, at *1. Garcia did not address the TCCA's decision in either his petition or his reply to the answer. Once again, he did not demonstrate cause for the default and actual prejudice, nor demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, claim number 58 is procedurally barred.

In addition to the foregoing, Garcia's claims lack merit in light of clearly established federal law as decided by the Fifth Circuit. The terms "probability," "criminal acts of violence," "criminal acts of violence," have a "common-sense core of meaning and that criminal juries should be capable of understanding them." *Paredes*, 574 F.3d at 294 n.17 (citing *Jurek*, 428 U.S. at 279 (White, J., concurring)). More recently, the Fifth Circuit rejected the same basic claims yet again with the following explanation:

> In this claim, Rivas complains that his due process rights were violated by the trial court's instructions to the jury with special issues that contained allegedly vague and undefined terms. Specifically, Rivas complains of the trial court's failure to define the terms "probability," "criminal acts of violence," and "continuing threat to society," included in the first special issue submitted to the jury. As with his previous claim, Rivas acknowledges that this claim is foreclosed by circuit precedent holding that these terms are not unconstitutionally vague and that their meanings may be readily understood. *See, e.g., Woods v. Johnson*, 75 F.3d 1017, 1033-34 (5th Cir. 1996); *James v. Collins*, 987 F.2d 1116, 1119-20 (5th Cir. 1993); *Nethery v. Collins*, 993 F.2d 1154, 1162 (5th Cir. 1993). Rivas again maintains this argument to preserve it for further review. We deny a COA on this claim.

*Rivas*, 432 F. App'x at 405 (footnote omitted). The cases cited by the Fifth Circuit reveal that this issue was settled in the 1990s. Moreover, the Director persuasively argued that the claims are barred

by the non-retroactivity principle of *Teague*.  Finally, prior to the filing of the present petition, this

Court rejected these same claims raised by Garcia's current counsel in *Simpson*, 2007 WL 1008193,

at *36-37.  Counsel was clearly aware that the claims lacked merit when he included them in the

present petition.  The inclusion of these claims in the present petition was disingenuous.

> **Claim Number 59:  The Texas capital punishment scheme and the Texas Code of Criminal Procedure Article 37.071 violate the Cruel and Unusual Punishment Clause of the Eighth and Fourteenth Amendments to the United States Constitution because they fail to provide for life without parole.**

In claim number 59, Garcia complains that the Texas capital punishment scheme does not

provide jurors the option of assessing life without parole.  He acknowledged that both the TCCA and

the Fifth Circuit have found that the Texas and United States' Constitutions do not require that option.

*Arnold v. State*, 873 S.W.2d 27, 39 (Tex. Crim. App. 1993); *Andrade v. McCotter*, 805 F.2d 1190 (5th

Cir.), *cert. denied*, 475 U.S. 1112 (1986).  He, nonetheless, stressed that the Supreme Court has never

ruled on the matter, and he asserted that the trend in the Court's decisions suggest that the Court may

take the next step and require states to offer life without parole.  *Simmons v. South Carolina*, 512 U.S.

154 (1994).  He argued that had Texas allowed the jury to consider the possibility of life without

parole, then there would have been a strong chance that he would not have received the death penalty.

The TCCA rejected the claim on direct appeal as follows:

> In his twenty-fifth and twenty-sixth points of error, [Garcia] contends that the death penalty statute violates the Eighth and Fourteenth Amendments to the United States Constitution and Article I sections 10, 14, and 19, of the Texas Constitution because it fails to provide for a sentence of life without parole. We have previously rejected identical claims. *Arnold v. State,* 873 S.W.2d 27, 39-40 (Tex.Crim.App.1993).

*Garcia II*, 2003 WL 22669744, at *11.  Garcia raised the claim again in his state application for a writ

of habeas corpus as claim number 43.  The TCCA found that the claim was procedurally barred from

116

habeas review because it had already been raised and rejected on direct appeal. *Ex parte Garcia*, 2008 WL 4573962, at *1.

Garcia's claim lacks merit in light of Fifth Circuit precedent. In addition to the case cited by Garcia, the Fifth Circuit recently rejected the claim yet again in *Ripkowski v. Thaler*, 438 F. App'x 296, 303 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1544 (2012).[18] Furthermore, the Director persuasively argued that the claim is barred by the non-retroactivity principle of *Teague*. *Id.* Finally, to the extent that Garcia is trying to obtain relief based on the reasoning in *Simmons*, the Supreme Court expressly held that its ruling did not apply to Texas. *Simmons*, 512 U.S. at 168 n.8; *Tigner v. Cockrell*, 264 F.3d 521, 525 (5th Cir. 2001), *cert. denied*, 534 U.S. 1164 (2002).

Garcia is not entitled to relief for the additional reason that he has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Garcia is not entitled to relief based on claim number 59.

**Claim Number 60: Garcia was only 18 years, 2 months and 12 days old at the time of his crime. The application of the Texas capital punishment scheme and Texas Code of Criminal Procedure Article 37.071 violated Garcia's right to be free of cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution because the Texas courts failed to exempt him from the death penalty.**

**Claim Number 61: Execution of a man who was only 18 years of age at the time of his offense would violate the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.**

---

[18]It is noted that Texas has changed the law and now provides for the possibility of life without parole. *See Oliver*, 254 F. App'x at 387 n.1.

In claim numbers 60 and 61, Garcia argues that executing him would be cruel and unusual punishment because he was only 18 years, 2 months and 12 days old at the time of the commission of his offense. The claims are yet another attempt to extend the Supreme Court's holding in *Roper v. Simmons, supra*. *See* claim number 55. The Court held that the "Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." *Roper*, 543 U.S. at 578. The Court provided the following analysis in reaching the decision:

> Drawing the line at 18 years is subject, of course to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for the death penalty ought to rest.

*Id.* at 574. The Fifth Circuit has thus held that *Roper* "established a lower boundary." *Doyle*, 535 F. App'x at 395. The dividing line of eighteen years of age has been characterized as a "categorical rule." *United States v. Ebron*, 683 F.3d 105, 156 (5th Cir. 2012), *cert. denied*, 134 S. Ct. 512 (2013). Garcia's age satisfied the criteria for being eligible for the death penalty. He has not shown any precedent to support a claim that the minimum age should be inched higher to encompass 18 years, 2 months and 12 days old. Indeed, in denying a motion for a certificate of appealability, the Fifth Circuit rejected another death row inmate's argument that he should not be executed in light of *Roper* because he was only 18 years and 4 days at the time of the commission of the alleged murder. *Parr v. Quarterman*, 472 F.3d 245, 261 (5th Cir. 2006), *cert. denied*, 551 U.S. 1133 (2007). Garcia's claim that it is unconstitutional to execute him because he was barely over the minimum age of 18 years when he murdered Turski lacks merit.

**Claim Number 62: Was Garcia denied effective assistance of counsel because his trial counsel failed to object at trial to Garcia's confession on the basis that he is legally blind and could not read the *Miranda* warnings or the statement?**

The remainder of Garcia's claims involve allegations of ineffective assistance of counsel. Claim numbers 62 through 65 concern his first trial. Claim number 66 concerns allegations of ineffective assistance of counsel during the punishment retrial. Ineffective assistance of counsel claims are governed by the standard established by the Supreme Court in *Strickland v. Washington, supra*, which was discussed earlier in this opinion on pages seventy-one through seventy-two. To succeed on a claim of ineffective assistance of counsel, a petitioner must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. A petitioner must meet both prongs; otherwise, "it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

In claim number 62, Garcia claims that his trial attorney was ineffective because he failed to object at trial to his confession on the basis that he was legally blind and could not read the *Miranda* warnings or the statement. This issue was fully developed by the state trial court. The record reveals that trial counsel filed a motion to suppress the confession, which was considered by the trial court. 4 CR(1991) 709, 715. The trial court found that the evidence shows that Garcia "read his written statements before signing them." *Id.* at 721. The trial court further found that there was no evidence that Garcia was unable to understand his statements. *Id.* The motion to suppress was denied.

Later, during the first state habeas corpus proceedings, the issue was revisited. The trial court issued the following findings of fact:

8.     The evidence before the Court indicates that [Garcia] could, and did, read the warnings and his statement of confession without his glasses.

9.     [Garcia's] counsel did raise the issue of [Garcia's] ability to read without his glasses during the motion to suppress.

SHCR-01 at 96. The trial court went on to issue the following conclusion of law:

> 15.    [Garcia] has failed to carry his burden of proving by a preponderance of the evidence that his attorneys were ineffective as alleged in any of his allegations in the application.

*Id.* at 97. The TCCA subsequently denied Garcia's first application without written order.

A challenge to a state court decision under § 2254(d)(2) challenges the determination of facts by the state court. Under § 2254(e)(1), "a determination of the factual issue made by a State court shall be presumed to be correct" and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *See Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014). A state court's factual finding is "not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (citing *Wood v. Allen*, 558 U.S. 290, 301 (2010)). The state court record in the present case reveals that counsel objected to the admissibility of the confession, and his motion was denied. The findings of fact issued by the state court in this case are supported by the record. Garcia has not rebutted the presumption of correctness with clear and convincing evidence. He has not shown that the findings of fact were unreasonable. In light of the findings of fact, the trial court reasonably found that Garcia had not shown that his trial attorneys were ineffective on this issue. The TCCA subsequently denied relief. The Director appropriately observed that counsel cannot be deemed ineffective simply because his motion was denied. Overall, Garcia has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. He has not shown that he is entitled to relief on claim number 62.

**Claim Number 63: Was Garcia denied effective assistance of counsel because his trial counsel failed to explain to Garcia that Garcia had the right to testify in his suppression hearing for the limited purpose of challenging the admissibility of his statement?**

Garcia did not testify at his suppression hearing. In claim number 63, he alleges that he was never told that he could testify at the suppression hearing for the limited purpose of challenging the admissibility of his statement. This issue was fully developed during the first state habeas corpus proceedings. Garcia's trial attorney provided an affidavit in response to the allegation. Counsel made the following statement:

> During the course of the pretrial proceedings, [Garcia] was advised of his legal rights to testify at the pretrial hearings on the Motions to Suppress his confessions for the purpose of [Garcia] testifying to facts which were related to the issue of whether or not [Garcia] voluntarily gave a confession, could read or understand the written confession, and other related purposes. Both myself and Mr. Ronnie Wilson, co-counsel at the trial and during pretrial proceedings, had numerous conversations with [Garcia] on the issue of [Garcia] testifying at the pretrial hearings. It was determined by myself, after consultation with co-counsel and [Garcia], that [Garcia] would not testify at the pretrial hearings.

SHCR-01 at 44. The trial court then issued the following findings of fact:

> 10. There is no evidence that [Garcia's] trial counsel failed to inform him of his right to testify for the limited purpose of the admissibility of his statement.
>
> 11. The evidence before the Court indicates that [Garcia] was properly informed concerning his right to testify for the limited purpose of the admissibility of his statement.

*Id.* at 96. The trial court went on to issue the following conclusion of law:

> 15. [Garcia] has failed to carry his burden of proving by a preponderance of the evidence that his attorneys were ineffective as alleged in any of his allegations in the application.

*Id.* at 97. The TCCA subsequently denied Garcia's application without written order.

In the present petition, Garcia argues that a hearing is required on this issue, but "review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits." *Pinholster*, 131 S. Ct. at 1398. "The same rule necessarily applies to a federal court's review of purely

factual determinations under § 2254(d)(2), as all nine Justices acknowledged." *Blue*, 665 F.3d at 656

(applying *Pinholster* to § 2254(d)(2)). Because a state court's judgment is entitled to AEDPA

deference, "there [is] no reason for the district court to conduct an evidentiary hearing." *Id.* at 661.

As was noted in conjunction with claim number 62, the state court's factual findings are entitled to a

presumption of reasonableness unless a petitioner rebuts the presumption of correctness by clear and

convincing evidence. The state court findings of fact on this issue are supported by the record, and

Garcia has not rebutted the presumption of correctness with clear and convincing evidence. In light

of the findings of fact, he has not shown that his trial attorney's performance on this issue was deficient

and that the deficient performance prejudiced the defense.

Garcia is not entitled to relief because he has not shown, as required by 28 U.S.C. § 2254(d),

that the state court findings resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law as determined by the Supreme Court of the United States,

or resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings. Relief on claim number 63 should be denied.

**Claim Number 64: Was Garcia denied effective assistance of counsel because his trial counsel failed to investigate and call an eyewitness who could not identify Garcia, but instead described the assailant as African-American?**

In claim number 64, Garcia argues that his trial attorney was ineffective for failing to call an

eyewitness to the Beverage Warehouse robbery who did not identify him, but instead described the

assailant as African-American.

This issue was fully developed during the first state habeas corpus proceedings. Counsel

provided the following response to this claim:

> Through pretrial discovery and investigation it was learned by the undersigned that during the commission of the offense for which [Garcia] was tried, a woman named Donna Delozier walked into the Beverage Warehouse store and observed the crime in progress.

Further investigation revealed that the woman entered the store, observed the perpetrator for a few seconds holding a shotgun, was told to leave the store by the perpetrator, left the store and called the local police by dialing 911 at a payphone nearby. Donna Delozier was interviewed by the Plano Police detectives investigating the offense and could not recall facts of her observations regarding the crime in progress due to the emotional trauma suffered by the witness. The Plano Police Department, through Detective Wilson, had Ms. Delozier hypnotized at the Plano Police Department and interviewed under hypnosis as to her observations. The hypnotic interview was videotaped and reviewed by undersigned counsel.

After Donna Delozier described the perpetrator under hypnosis, it appeared that the Plano Police Department interviewer drew a conclusion that the perpetrator was black. After review of the videotape, subsequent investigation prior to trial or pretrial proceedings revealed that Donna Delozier did not have an independent recollection or memory of the events that she observed. For that reason, the witness was not called.

Instead of utilizing the video or presenting the witness live to the jury, evidence in testimonial form was admitted by [Garcia's] counsel at trial through cross-examination of the chief investigator on the case, Billy Meeks, that Donna Delozier was the witness to the offense in progress and that Donna Delozier had informed the Plano Police Department that two black males had been seen at the store in Donna Delozier's identification of the perpetrators of the offense.

At no time did either trial counsel refuse to call Donna Delozier. The critical testimony of such witness which was favorable to [Garcia] was admitted into evidence through another witness. The decision not to call Donna Delozier was due to her absence of memory and desire to avoid the potential admissibility of the videotaped interview of Delozier. The failure to identify specifically [Garcia] either in photo line-up, or live at trial, as the perpetrator of the offense was readily explainable by the State due to her failed memory from trauma.

SHCR-01 at 45-46.

In light of the evidence and affidavit provided by counsel, the trial court issued the following findings of fact:

12.    There is no evidence that [Garcia's] trial counsel failed to investigate or failed to call as a witness any person that could identify any individual other than [Garcia] as the assailant.

13.    The evidence before the Court indicates that [Garcia's] trial counsel properly investigated all known witnesses.

*Id.* at 96. The trial court went on to issue the following conclusion of law.

10. [Garcia's] trial counsel exploited the issue of "mistaken identity" to the fullest extent possible without opening the door to [Garcia's] other capital murder case to prove identity in the State's case in chief at the guilt/innocence phase of the trial.

*Id.* at 97. The TCCA subsequently denied Garcia's first application without written order. Garcia's current counsel acknowledged that he thought that it made perfect sense not to call Mrs. Delozier under these circumstances. Pet. 316. He, nonetheless, raised the issue to assure that the case is completely examined. Pet. 317.

The issue before the Court with respect to this claim concerns trial strategy. The Supreme Court explained in *Strickland* that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *See Strickland,* 466 U.S. at 690-91. Federal courts "will not question a counsel's reasonable strategic decisions." *Bower v. Quarterman*, 497 F.3d 459, 470 (5th Cir. 2007), *cert. denied*, 553 U.S. 1006 (2008). In applying *Strickland*, the Fifth Circuit "has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Habeas corpus relief is unavailable if a petitioner fails to overcome the presumption that counsel made sound strategic decisions. *Del Toro v. Quarterman*, 498 F.3d 486, 491 (5th Cir. 2007), *cert. denied*, 552 U.S. 1245 (2008).

In the present case, trial counsel made the decision not to call Mrs. Delozier due to her absence of memory and his desire to avoid the potential admissibility of the videotaped interview of her. Nonetheless, the critical testimony of such witness which was favorable to Garcia was admitted into evidence through another witness. Garcia has not rebutted the presumption that counsel made a sound

strategic decision in not calling Mrs. Delozier. He has not shown that counsel's performance on this issue was deficient and that the deficient performance prejudiced the defense. He failed to satisfy his burden of showing ineffective assistance of counsel.

Garcia is not entitled to relief for the additional reason that he has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Garcia is not entitled to relief based on claim number 64.

### Claim Number 65: Was Garcia denied effective assistance of counsel because his trial counsel failed to raise the issue of collateral estoppel in response to the State's conflicting positions as to who was the shooter?

In claim number 65, Garcia alleges that his attorney was ineffective for failing to raise the issue of collateral estoppel in response to the State's contradictory positions in two trials as to the identity of the shooter. In the State's opening statement during the punishment phase of the 1991 trial, the prosecutor made the following reference to the murder of Gregory Martin at the Texaco store:

> We have not played games with you. We have not tried to deceive you in any manner. I don't know who the trigger man is. It is entirely possible, it may even be likely that Vargas is the trigger man because he's got a spent shell on him. Okay? But you know from voir dire and the process we went through and the discussions about criminal responsibility, bank robber, getaway car driver, you know he is criminally responsible for the death of Gregory Martin,...

68 RR(1991) 273-74. Later, during closing arguments during the punishment phase of the 1991 trial, the State argued that Garcia had been the one to shoot and kill Gregory Martin. 73 RR(1991) 1494, 1496. Garcia asserts that during Chris Vargas' trial in the Texaco robbery, the State asserted that Vargas was the person who actually shot Gregory Martin.

125

In response, the Director asserted that although the prosecutor did argue at Garcia's trial that he was the triggerman during this extraneous offense - which was admitted solely for the purpose of establishing future dangerousness - that was clearly a deduction from the evidence and accompanied with an acknowledgment from the prosecutor that the identity of the Martin triggerman was an open question. The Director correctly observed that the state habeas court found that the prosecutor's deduction from the evidence in this regard was supported by the physical evidence relating to that extraneous offense. SHCR-01 at 96 (FF ¶¶ 14-15). The court further found that the State "properly argued that [Garcia] could be or was the shooter in the other capital murder during the punishment closing argument." *Id.* at 97 (CL ¶ 11). Consequently, the court found that "[a]ny objection attempting to prevent the State from arguing that [Garcia] was the shooter in the other capital murder would have been overruled." *Id.* (CL ¶ 12). The Director appropriately observed that counsel cannot be faulted for failing to make an objection that would have been rejected by the trial court and the TCCA. *See Koch*, 907 F.2d at 527 ("This Court has made it clear that counsel is not required to make futile motions or objections."). The Director went on to argue that the collateral estoppel argument lacks merit.

In analyzing this claim, the Court initially notes that the issue of whether counsel was ineffective during the punishment phase of the 1991 trial is irrelevant at this juncture since Garcia was granted a punishment retrial. Even if counsel's representation during the punishment phase of the 1991 trial could be construed as deficient, Garcia cannot show prejudice. The present ineffective assistance of counsel claim lacks merit on this basis alone.

The claim lacks merit for the additional reasons noted by the Director. The Fifth Circuit has dealt with contradictory statements made by the State as to the identity of the shooter in two separate trials involving two different defendants as follows:

Although we agree that the state's brief on direct appeal appears to contradict its statements to the jury during the Hogan trial, we have found no authority, and [petitioner] has cited none, that the state's contradictory statements amount to federal constitutional error. [Petitioner] has failed to prove facts that would entitle him to relief under established constitutional principles.

*Jacobs v. Scott*, 31 F.3d 1319, 1326 (5th Cir. 1994), *cert. denied*, 513 U.S. 1067 (1995). The Fifth Circuit went on to hold that the petitioner in *Jacobs* was seeking a "new" rule of constitutional law and was not entitled to relief under the non-retroactivity rule of *Teague*. *Id.*

The Fifth Circuit subsequently made the same finding in *Nichols v. Scott*, 69 F.3d 1255, 1273 (5th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996). The following explanation was provided:

In the present case, to hold that the state was constitutionally barred by any form of estoppel - whether under the rubric of collateral estoppel or some variety of judicial or other estoppel - from taking the position in Nichol's case that the shot he fired was the fatal shot because it had previously taken the position in Williams' case, in which Williams received the death sentence, that the fatal shot was the one fired by Williams, would be to apply "a new rule" of constitutional law "not *dictated* by precedent existing at the time" Nichols' conviction became final - January 9, 1989 - contrary to *Teague v. Lane*.

*Id.* (emphasis in original). The holdings in *Jacobs* and *Nichols* are equally applicable to the present case. Garcia's collateral estoppel argument lacks merit. Counsel was not required to raise an unrecognized legal objection. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *McCoy v. Lynaugh*, 874 F.2d 954, 963 (5th Cir. 1989). Garcia thus has not shown that his attorney's representation on this issue was deficient. Nonetheless, even if counsel should have objected, Garcia cannot establish prejudice since he was granted a punishment retrial. Garcia is not entitled to federal habeas corpus relief based on claim number 65.

**Claim Number 66:  Garcia did not receive effective assistance of counsel in his 2001 trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution.**

In claim number 66, Garcia argues that his trial attorney in his 2001 punishment retrial was ineffective. He lists 24 ways in which his attorney was allegedly ineffective.

**Claim 66A:  Trial counsel introduced Garcia's juvenile criminal record and permitted other aspects without challenge.**

**Claim 66B:  Trial counsel allowed introduction of extraneous offenses in through Mrs. Knox.**

Claims 66A and 66B concern testimony by Mrs. Phane Knox.  Mrs. Knox was the mother of Garcia's girlfriend, Sheila Loe.  Garcia argues that his attorney was ineffective for asking his girlfriend's mother about her knowledge of his juvenile criminal history.  He noted that this was the first reference to his juvenile crimes.  As authority in support of the claim, he cited nothing more than an unpublished Tennessee case for the proposition that facts of a juvenile disposition could not be used to impeach character witness.  *See State v. Sexton*, No. E2000-01779-CCA-R3-CD, 2002 WL 1787946 (Tenn. Crim. App. Aug. 2, 2002).

The record reveals that Mrs. Knox testified that she was aware that Garcia had previously broken into the liquor store where he would later murder Craig Turski.  26 RR(2001) 16.  She added that it was her understanding that he was on juvenile probation for that incident.  *Id.*

Mrs. Knox went on to testify about another incident.  This time she testified about her daughter being arrested for stealing gasoline.  Garcia was driving, but Sheila switched places with him when they were pulled over because Garcia was on probation at the time.  Later that night, when Mrs. Knox could not find Sheila, she went to Mo's house looking for her.  She explained that Mo ran around with Sheila and Garcia.  She did not know at the time that Sheila was in jail for stealing gas.  When she became loud wanting to know where her daughter was, Mo raised his shirt so she could see that he had a gun.  Garcia was standing next to Mo and took no steps to protect Mrs. Knox.  *Id.* at 20-25.

The Director appropriately observed, in response, that juvenile admissions and confessions are generally admissible under Texas law during the punishment phase of a trial where the defendant faces the death penalty.  *See East v. State*, 702 S.W.2d 606, 615 (Tex. Crim. App. 1985) ("[Texas Code of

Criminal Procedure Article] 37.071 provides that during the punishment phase of a capital murder trial, evidence may be presented as to any matter that the trial court deems relevant to sentence. This has been construed to allow the admission into evidence of unadjudicated extraneous offenses.") (citations omitted). The TCCA explained that this "enables a jury to consider several factors in determining the likelihood that a defendant would be a continuing threat to society." *Id.* The Director correctly argued that the evidence was admissible, regardless of whether Garcia's counsel or the State introduced the evidence. The Fifth Circuit has accordingly held that "[t]rial counsel's decision to admit these damaging documents before the State was able to introduce them, and soften their potential damage, is a reasonable trial strategy and will not be second guessed." *Coble v. Quarterman*, 496 F.3d 430, 439 (5th Cir. 2007). Just like the situation in *Coble*, counsel's decision to introduce evidence regarding Garcia's juvenile record before the State had the opportunity to do so must be construed as reasonable trial strategy. Claims 66A and 66B lack merit.

Claims 66A and 66B should also be rejected in light of § 2254(d). The claims were presented as claims 17A and 17B in the state habeas proceedings. The trial court made the following findings of fact with respect to these two claims:

1.  [Garcia] offered no proof that he suffered any harm directly attributable to evidence of his juvenile criminal history.

2.  Any decision by counsel not to object to the testimony of Mrs. Knox was not facially unreasonable.

3.  [Garcia's] juvenile history was relevant to the issue of punishment.

4.  [Garcia] committed the juvenile criminal conduct complained of in Mrs. Knox's testimony. 26 R.R. 16-18, 23-25, 31-33.

5.  Mrs. Knox had personal knowledge of the acts committed by [Garcia].

6.  [Garcia] was placed on juvenile probation as a result of his criminal behavior. 27 R.R. 151-52.

129

6 SHCR-02 at 2173. The trial court went on to issue the following conclusions of law with respect

to these claims:

4.     [Garcia's] juvenile convictions were relevant and admissible under article 37.0711. Tex. Code Crim. proc. art. 37.0711.

5.     [Garcia's] juvenile adjudications and convictions were admissible in the punishment phase of his capital murder trial. *East v. State*, 702 S.W.2d 606,615 (Tex. Crim. App. 1985).

6.     [Garcia's] juvenile adjudications and convictions as testified to by witnesses were admissible in the punishment phase of [Garcia's] capital murder trial. *East v. State*, 702 S.W.2d 606, 615 (Tex. Crim. App. 1985).

7.     Evidence of [Garcia's] juvenile criminal history and unadjudicated juvenile acts were admissible under article 37.0711. Tex. Code Cim. Proc. art. 37.0711.

8.     Because evidence of [Garcia's] juvenile criminal history and unadjudicated juvenile acts were admissible in the punishment phase of his capital murder trial, counsel's performance was not deficient. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

9.     Even if there was an arguable objection, it was not beyond the realm of reasonable performance not to object. *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997).

11.    [Garcia] has not shown harm or that his counsel's action fell below those constituting reasonable professional assistance. *Strickland*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

*Id.* at 2177. The TCCA subsequently found that these ineffective assistance of counsel claims lacked

merit and that it agreed with the trial court's findings and conclusions that Garcia failed to demonstrate

deficient performance or prove resulting harm. *Ex parte Garcia*, 2008 WL 4573962, at *1.

In the present petition, Garcia simply repeated his claims exactly as he presented them to the

TCCA. He failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the Supreme Court of the United States, or resulted in a decision that was

130

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. He has not shown that he is entitled to federal habeas corpus relief.

It should be recalled that in the context of § 2254, the deferential standard that must be accorded to counsel's representation must also be considered in tandem with the deference that must be accorded to state court decisions, which has been referred to as "doubly" deferential. *Richter*, 131 S. Ct. at 788. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Elsewhere in the decision, the Supreme Court held that "[t]he pivitol question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 785. "If the standard is difficult to meet, that is because it was meant to be." *Id.* at 786. It was reasonable trial strategy for counsel to present Garcia's juvenile adjudications before the State did so. *See Coble*, 496 F.3d at 439. The Director's also persuasively argued that the decision not to object to Mrs. Knox's testimony about Mo was reasonable trial strategy in that it showed Garcia was influenced by the friends he had at the time. Garcia has not shown that the TCCA's application of the *Strickland* standard was unreasonable. His claims "cannot survive under *Strickland* and AEDPA's combined, 'doubly' deferential review." *See Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2103). Indeed, he made no real attempt to overcome the doubly deferential standard. Overall, with respect to claims 66A and 66B, Garcia has not shown that his trial attorney was ineffective nor satisfied the requirements of § 2254(d); thus, relief should be denied.

### Claim 66C: Trial counsel failed to object to hearsay statements of SWIFT, without requiring SWIFT to prove firearm ballistics similarity.

In claim 66C, Garcia presented the following two sentence claim: " Detective Meeks said that a Dallas laboratory had tested the gun and concluded that the gun produced a similar strike point on

131

the primer of a cartridge as that used in the Beverage Warehouse crime. (R.R. vol. 26 at 170) There was no objection." Pet. 335. Garcia's ground for relief consists of nothing more than this two sentence statement.

The Director appropriately observed that Garcia did not develop the issue. Garcia did not explain why counsel should have objected or how this testimony prejudiced him. The Director thus persuasively argued that by failing to adequately brief the issue, Garcia waived it. *Summers v. Dretke*, 431 F.3d 861, 870 (5th Cir. 2005), *cert. denied*, 549 U.S. 840 (2006); *Woods*, 307 F.3d at 357; *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1995). The claim should be rejected for the related reason that it is conclusory, which is insufficient to support a petition for a writ of habeas corpus. *See Miller*, 200 F.3d at 282; *Koch*, 907 F.2d at 530; *Ross*, 694 F.2d at 1011

The Director also appropriately observed that the evidence Garcia complained about was actually favorable to Garcia. The only thing the lab technician was able to say was that the gun produced a similar strike point on the primer of the cartridge as that used in the Beverage Warehouse murder. 26 RR(2001) 170. In response to the very next question, the lab technician stated that he could not say that it was "conclusive or exclusively this gun that made those point, but that this gun was not ruled out." *Id.* Counsel thus had no reason to object. *Green*, 160 F.3d at 1037; *McCoy*, 874 F.2d at 963. Garcia simply has not shown that his attorney's representation on this issue was deficient. He likewise failed to show prejudice. Garcia failed to satisfy his burden of showing ineffective assistance of counsel with respect to claim 66C.

It is further noted that Garcia presented the claim as claim 17C in the state habeas corpus proceedings. The TCCA found that the ineffective assistance of counsel claim lacked merit and that it agreed with the trial court's findings and conclusions that Garcia failed to demonstrate deficient performance or prove resulting harm. *Ex parte Garcia*, 2008 WL 4573962, at *1.

In the present petition, Garcia simply repeated the claim exactly as he presented it to the TCCA. He failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, he failed to overcome, or even make any attempt to overcome, the doubly deferential standard that governs the analysis of this ineffective assistance of counsel claim in conjunction with § 2254(d). Overall, with respect to claim 66C, Garcia has not shown that his trial attorney was ineffective nor satisfied the requirements of § 2254(d); thus, relief should be denied.

**Claim 66D: Trial counsel failed to object to hearsay of SWIFT on fingerprint issues, without requiring SWIFT to prove the fingerprints on the Texaco cigarettes and containers were Garcia's.**

In claim 66D, Garcia presented yet another perfunctory claim. This time he stated nothing more than his fingerprints and Chris Vargas' fingerprints were found on cigarette cartons and a plastic storage box found in Sheila's car, indicating that they had hauled the goods from the store to the car. 26 RR(2001) 154-55. He complained that there was no objection nor any attempt to require the State to prove the fingerprints. That was the extent of Garcia's claim 66D. As with claim 66C, relief should be denied because the claim is conclusory and because he failed to adequately brief the issue. He failed to make any real attempt to apply the *Strickland* standard to these facts. Nonetheless, assuming *arguendo* that his claim supports an inference of deficient performance, he failed to show that such performance prejudiced the defense. He failed to satisfy his burden of showing ineffective assistance of counsel.

The claim should be rejected for several additional reasons. In response to the claim, the Director observed that the record actually establishes a sound strategy for counsel's decision to allow the testimony without objection. The same evidence had been admitted during the previous trial, and the State proved up the evidence with the testimony of John Naylor, the actual ID technician who had recovered the items and matched the fingerprints on those items to Garcia. The Director opined that since this evidence was admitted during the previous trial, it was highly unlikely that the trial court would have granted counsel's objections this time around; thus, counsel cannot be deemed ineffective. *Green*, 160 F.3d at 1037; *McCoy*, 874 F.2d at 963.

Claim 66D should also be rejected in light of § 2254(d). During the state habeas corpus proceedings, the trial court made the following findings of fact with respect to this claim:

11.     The same fingerprint evidence admitted in [Garcia's] current punishment hearing had been admitted in [Garcia's] previous trial.

12.     The fingerprints recovered from the crime scene were the fingerprints of [Garcia]. 27 R.R. 21-22.

6 SHCR-02 at 2174. The trial court went on to issue the following conclusion of law:

20.     [Garcia] cannot show harm from admission of evidence that is favorable to his case.

*Id.* at 2178. The TCCA subsequently found that the ineffective assistance of counsel claim lacked merit and that it agreed with the trial court's findings and conclusions that Garcia failed to demonstrate deficient performance or prove resulting harm. *Ex parte Garcia*, 2008 WL 4573962, at *1.

In the present petition, Garcia simply repeated his claim exactly as he presented it to the state courts. He failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings.  Furthermore, he failed to overcome, or even make any attempt to overcome, the doubly deferential standard that governs the analysis of this ineffective assistance of counsel claim in conjunction with § 2254(d).  Overall, with respect to claim 66D, Garcia has not shown that his trial attorney was ineffective nor satisfied the requirements of § 2254(d); thus, relief should be denied.

**Claim 66E:  Trial counsel failed to object to the first confession.**

Garcia next complains that trial counsel did not object to the introduction of Garcia's confession in the 2001 sentencing retrial.  Counsel purportedly failed to object on the theory that since its admissibility was upheld by the TCCA in 1996, there remained no grounds nor a need to challenge it during the second trial.  Garcia acknowledges that there is some logic to the theory, but he asserts that it overlooks the prospect of later federal review and to avoid federal procedural default.  He argues that it may have been necessary for trial counsel to make a strong challenge to the confession, even if such a challenge was likely to fail in state court.

The Director cited Garcia's acknowledgment that there is some logic to the theory and argued that counsel was not required to make frivolous or futile motions.  *Green*, 160 F.3d at 1037; *McCoy*, 874 F.2d at 963.  He asserted that defense counsel's reason for not objecting cannot be considered anything but sound trial strategy; thus, counsel's representation cannot be deemed deficient.  *Richter*, 131 S. Ct. at 788.  The arguments are persuasive.  Garcia has not shown that his trial attorney was ineffective.

Claim 66E should also be rejected in light of § 2254(d). During the state habeas corpus proceedings, the trial court issued the following conclusions of law regarding this claim:

> 22.    Because this same confession had been admitted in [Garcia's] previous trial, and the admission upheld on appeal, counsel cannot be considered deficient for not objecting to such evidence.

135

23.    The Court of Criminal Appeals has previously ruled [Garcia's] confession admissible. *Garcia*, 919 S.W.2d 370 (Tex. Crim. App. 1994).

24.    Neither deficiency nor harm can result from an attorney's decision not to object to admissible evidence. *Mallett v. State*, 65 S.W.3d 59, 68 (Tex. Crim. App. 2001).

6 SHCR-02 at 2178. The TCCA subsequently found that the ineffective assistance of counsel claim lacked merit and that it agreed with the trial court's findings and conclusions that Garcia failed to demonstrate deficient performance or prove resulting harm. *Ex parte Garcia*, 2008 WL 4573962, at *1.

In the present petition, Garcia simply repeated his claim exactly as he presented it to the state courts. He failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, he failed to overcome, or even make any attempt to overcome, the doubly deferential standard that governs the analysis of this ineffective assistance of counsel claim in conjunction with § 2254(d). Overall, with respect to claim 66E, Garcia has not shown that his trial attorney was ineffective nor satisfied the requirements of § 2254(d); thus, relief should be denied.

**Claim 66F: Trial counsel failed to object to hearsay information in the reports from Faubion Middle School. These contain many hearsay reports of improper behavior.**

Claim 66F is yet another perfunctory claim. This time he stated nothing more than the following:

These reports are contained in the exhibits introduced by the State. The State was allowed to introduce abundant hearsay statements about Garcia's juvenile record without any interruption by defense counsel, who could have objected on Rule 404(b), Rule 403, confrontation clause, and hearsay grounds.

Pet. 336.  As with claims 66C and 66D, relief should be denied because the claim is conclusory and because Garcia failed to adequately brief the issue.  He failed to make any real attempt to apply the *Strickland* standard to these facts.  Nonetheless, assuming *arguendo* that his claim supports an inference of deficient performance, he failed to show that such performance prejudiced the defense. He failed to satisfy his burden of showing ineffective assistance of counsel.

The claim should also be rejected for several additional reasons.  The Director again correctly noted that evidence of extraneous conduct is admissible during the punishment phase of a capital murder trial.  The full explanation was provided in conjunction with claims 66A and 66B.  Moreover, similar evidence concerning Garcia's disciplinary problems in school was provided by the testimony of Jim Chandler, Pat Rodgers and Richard Smotherman.  27 RR(2001) 89-101, 119-32, 142-46.  Each of these three witnesses had personal interaction with Garcia and were able to explain the events described in the documents.  Finally, the Director opined that defense counsel may very well have deemed it better to cross-examine these witnesses rather than object to admissible evidence; thus, Garcia cannot establish deficient performance.  *Richter*, 131 S. Ct. at 788.

Claim 66F should also be rejected in light of § 2254(d).  This issue was fully developed during the state habeas corpus proceedings.  The trial court made the following findings of fact with respect to the claim:

7.  Jim Chandler, Pat Rodgers, and Richard Smotherman all testified to [Garcia's] discipline problems and corrective action taken.  27 R.R. 89-101, 119-32, 142-46.

8.  Any decision by counsel not to object to the testimony of either Chandler, Rodgers, or Smotherman was not facially unreasonable.

9.  Each witness had personal interaction with [Garcia] and was able to testify to the events contained within the documents [Garcia] complains about.  *Id.*

10.  The same information [Garcia] complains about was admitted through witnesses Chandler, Rodgers, and Smotherman.  *Id.*

137

6 SHCR-02 at 2173-74. The trial court went on to issue the following conclusions of law:

> 8.      Because evidence of [Garcia's] . . . acts committed as a juvenile were admissible in the punishment phase of his capital murder trial, counsel's performance was not deficient. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

> 9.      Even if there was an arguable objection, it was not beyond the realm of reasonable performance not to object. *Ex parte Morrow*, 952 S.W.2d 530, 537 (Tex. Crim. App. 1997).

*Id*. at 2177. The TCCA subsequently found that the ineffective assistance of counsel claim lacked merit and that it agreed with the trial court's findings and conclusions that Garcia failed to demonstrate deficient performance or prove resulting harm. *Ex parte Garcia*, 2008 WL 4573962, at *1.

In the present petition, Garcia simply repeated his claim exactly as he presented it to the state courts. He failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, he failed to overcome, or even make any attempt to overcome, the doubly deferential standard that governs the analysis of this ineffective assistance of counsel claim in conjunction with § 2254(d). Overall, with respect to claim 66F, Garcia has not shown that his trial attorney was ineffective nor satisfied the requirements of § 2254(d); thus, relief should be denied.

**Claim 66G:  Trial counsel failed to object to Garcia's juvenile confession.**

**Claim 66H:  Trial counsel failed to challenge the juvenile confession which contained reference to four other burglaries which could not be corroborated.  Corroboration is required for a confession.**

In claim 66G, Garcia complains that counsel failed to object to the introduction of his juvenile confession to two burglaries. Garcia asserts that he was not adequately warned before his juvenile

confession. He also contends that his mother was not notified before he was taken into custody as required by state law. *See* Tex. Fam. Code § 52.02(b)(1). In claim 66H, he further complained that counsel did not object to the juvenile confession which contained reference to four other burglaries that were not corroborated. Instead, counsel stated on the record that he had no objections to the introduction of the juvenile confession. 27 RR(2001) 184-85.

The Director appropriately noted that Garcia's mother was not questioned on the issue of whether she was notified during her testimony. *See* 31 RR(2001) 61-106, 161-205, 207-38. The Director thus characterized the claim that she was not notified as rank speculation. Nonetheless, assuming that she was not notified when he was taken into custody, such failure to notify her was not the end of the inquiry. *See Gonzales v. State*, 67 S.W.3d 910, 913 (Tex. Crim. App. 2002) (holding that some causal connection is required between the illegality and the acquisition of evidence).

The record reveals that Officer Tulley testified that he went to Garcia's home, informed him of the reason for speaking with him, took him before a magistrate and had him properly warned before he voluntarily gave his statement. 27 RR(2001) 182. After the statement was complete, Officer Tulley again took Garcia before a judge and had him warned a second time before signing the statement. *Id.* at 184. The face of the statement bears the warnings given to Garcia.

Moreover, even if the confession itself could be deemed inadmissible, Officer Tulley would have been allowed to testify as to the facts of his investigation - that Garcia was a suspect and that he returned property taken during the burglaries, and Officer Tulley returned that property to the victims. 27 RR(2001) 185. Further, the victims of the burglaries - Eddie W. Bradley, Kathleen Kripaitis, Sandra Klein and Rodney Marks - all testified. 28 RR(2001) 15-19, 19-23, 24-28, 28-31. Each testified to the facts and circumstances surrounding the individual burglary of which he or she was a victim. Each also described what property had been taken, the method it had been taken, and how it

was returned after being found in Garcia's possession.  *Id.* at 15-19, 21-22, 25, 30.  Consequently, Garcia cannot show prejudice by counsel's failure to object to the introduction of his juvenile confessions.

With respect claim 66H, the Director appropriately noted that the TCCA has held that there only needs to be some evidence outside the extra-judicial confession which, when considered alone or in connection with the confession, establishes the crime actually occurred.  *Salazar v. State*, 86 S.W.3d 640, 645 (Tex. Crim. App. 2002).  Corroboration of specific details is not required.  *Id.* at 644.  The Director persuasively argued that the testimony of the victims and the statements made by Garcia in his confession were more than enough to establish that the burglaries actually happened.

Claims 66G and 66H should also be rejected in light of § 2254(d).  Garcia's claims were fully developed during the state habeas corpus proceedings.  The trial court made the following findings of fact with respect to the claims:

14. Officer Tulley testified regarding the procedures followed during [Garcia's] juvenile confession.  27 R.R. 179-187.

15. Officer Tulley took [Garcia] before a magistrate and had him properly warned prior to the giving of his voluntary statement.  27 R.R. 182.

16. After completing his statement, [Garcia] was again taken before the same magistrate and warned before signing the confession.  27 R.R. 184.

17. The face of the statement bears the warnings given by the magistrate to Garcia.  26 R.R., State's Exhibit 3.

18. Any decision by counsel not to object to the testimony of Officer Tulley was not facially unreasonable.

19. The State called the victims of the burglaries, Eddie Bradley, Kathleen Kripatitis, Sandra Klein, and Rodney Marks to testify to circumstances of the burglaries.  28 R.R. 15-19, 19, 23, 24-28, and 31.

20.     Each victim was able to relate information about property that had been stolen, the method by which it had been taken, and what was returned after being found in [Garcia's] possession.  28 R.R. 15-19, 21-22, 25, 30.

21.     [Garcia's] juvenile confession was voluntary.

22.     This same confession was the subject of a motion to suppress rejected in the previous trial.  *Garcia v. State*, 919 S.W.2d 370 (Tex. Crim. App. 1994).

6 SHCR-02 at 2174.  These findings of fact were supported by the record.  The trial court went on to issue the following conclusions of law:

4.      [Garcia's] juvenile convictions were relevant and admissible under article 37.0711. Tex. Code Crim. Proc. art. 37.0711.

10.     A decision by counsel not to contest admission of [Garcia's] juvenile confession was not facially unreasonable.  *See Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997).

11.     [Garcia] has not shown harm or that his counsel's action fell below those constituting reasonable professional assistance.  *Strickland*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

12.     Lack of parental notification did not render the written statement obtained from [Garcia] inadmissible.  *See Gonzales v. State*, 67 S.W.3d 910 (Tex. Crim. App. 2002).

13.     There was no causal connection between the confession and lack of parental notification and the acquisition of the evidence.  *Id.*

14.     Objecting to the complained of evidence would have been futile.

15.     Corroboration of specific details in a confession is not required.  *Salazar v. State*, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002).

16.     Counsel's performance was not deficient.  *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

17.     Because the evidence is admissible, [Garcia] could not suffer harm from trial counsel's failure to object to such evidence.  *Mallett v. State*, 65 S.W.3d 59, 68 (Tex. Crim. App. 2001).

18.     There is no reasonable likelihood that had trial counsel made an objection to the complained of evidence, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

*Id.* at 2177-78. The TCCA subsequently found that these ineffective assistance of counsel claims lacked merit and that it agreed with the trial court's findings and conclusions that Garcia failed to demonstrate deficient performance or prove resulting harm. *Ex parte Garcia*, 2008 WL 4573962, at *1.

In the present petition, Garcia simply repeated his claims exactly as he presented them to the state courts. He failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, he failed to overcome, or even make any attempt to overcome, the doubly deferential standard that governs the analysis of this ineffective assistance of counsel claim in conjunction with § 2254(d). Overall, with respect to claims 66G and 66H, Garcia has not shown that his trial attorney was ineffective nor satisfied the requirements of § 2254(d); thus, relief should be denied.

> **Claim 66I: Trial counsel failed to challenge the uncorroborated hearsay testimony of co-conspirators admitted through Det. Heaton, in violation of the accomplice-witness rule.**
>
> **Claim 66J: Trial counsel failed to seek and include a jury instruction on corroboration of a confession.**
>
> **Claim 66K: Trial counsel failed to challenge testimony of Det. Heaton as entirely hearsay.**
>
> **Claim 66L: Trial counsel failed to seek a limiting instruction requiring jurors to disregard uncorroborated testimony of accomplices.**
>
> **Claim 66M: Trial counsel failed to obtain the written statements and offense reports from Det. Heaton.**

**Claim 66N:   Trial counsel failed to seek a pre-trial *Franks*[19] hearing on the admissibility of all of Det. Heaton's hearsay, confession by Garcia, and accusations by co-conspirators.**

**Claim 66O:   Trial counsel elicited extraneous offense from Det. Heaton.**

**Claim 66P:   Trial counsel failed to challenge photographic lineup and entirely hearsay testimony by a police officer that co-conspirators picked out the right suspect.**

**Claim 66Q:   Trial counsel failed to object to in-custody interrogations and oral statements of Garcia as a juvenile.**

Claims 66I though 66Q are ineffective assistance of counsel claims concerning the testimony of Detective Chris Heaton.  27 RR(2001) 187-208.  The claims overlap, and the state trial court grouped its discussion of these claims together.  In light of the requirements of § 2254(d), the Court is likewise of the opinion that all of these claims should be grouped together.

In claim 66I, Garcia complains that counsel did not object to uncorroborated hearsay testimony of a co-conspirator that was admitted through Det. Heaton.  He did not identify the specific testimony to which he was referring.  He discussed the accomplice-witness rule at some length, but he did not show how the rule applied to the facts of this case.  Furthermore, he failed to show how he was prejudiced by counsel's failure to object to such testimony.   In claim 66J, Garcia also argues that counsel was ineffective for failing to seek an accomplice witness jury instruction.

The Director responded by noting that the accomplice witness rule does not apply to the punishment phase of a capital murder trial.  *See Jones v. State*, 982 S.W.2d 386, 395 (Tex. Crim. App. 1998).  In addition to the case cited by the Director, this rule has regularly been cited by the TCCA. *See Farris v. State*, 819 S.W.2d 490, 507 (Tex. Crim. App. 1990); *Thompson v. State*, 691 S.W.2d 627, 633 (Tex. Crim. App. 1984).  The TCCA has "explained that even uncorroborated accomplice testimony about the defendant's extraneous bad acts constitutes 'relevant information about a

---

[19]*Franks v. Delaware*, 438 U.S. 154 (1978).

defendant' within the scope of Article 37.071." *Bible v. State*, 162 S.W.3d 234, 247 (Tex. Crim. App. 2005). In light of the clearly established Texas law on this issue, counsel's representation was not deficient for failing to object. Any objection from counsel would have been futile, and counsel was not required to make futile objections. *Green*, 160 F.3d at 1037; *McCoy*, 874 F.2d at 963. Claims 66I and 66J lack merit.

In claim 66K, Garcia argued that counsel was ineffective for failing to challenge the testimony of Det. Heaton as entirely hearsay. He complained that Det. Heaton testified that Rene Guajardo confessed to several burglaries and implicated him in the burglaries. Det. Heaton also testified that he interviewed several people and recovered property from a Plano apartment complex. Some of the people had told him that they had obtained the property from Garcia. Det. Heaton testified that he assumed that the apartment complex residents with the stolen property were fencing the property from Garcia. Det. Heaton further testified that he interviewed a couple with the last name of Jackson and arranged for them to review a photographic line-up. They identified Garcia as one of the men who sold the stolen property to them. Garcia complained that his attorney did not object to any of this hearsay evidence.

The Director responded by noting that the victims of the burglaries testified at trial. It should be recalled that their testimony was fully discussed in conjunction with claim 66H. Each of them described what property was stolen and that property was either mentioned in Garcia's confession or returned to the rightful owner by Det. Tulley. The Director appropriately noted that putting that aside, during punishment, "[a] court may rely upon uncorroborated hearsay testimony." *United States v. Rodriguez*, 897 F.2d 1324, 1328 (5th Cir. 1990). The Due Process Clause "merely requires that information relied on in determining an appropriate sentence have 'some minimal indicum of reliability' and 'bear some rational relationship to the decision to impose a particular sentence.'"

144

*United States v. Young*, 981 F.2d 180, 187 (5th Cir. 1992) (quoting *United States v. Galvan*, 949 F.2d 777, 784 (5th Cir. 1991)). The Director also appropriately noted that the statements made by Rene Guajardo implicating Garcia in burglaries and related to Det. Heaton were admissible as statements against interest pursuant to Texas Rule of Evidence 803(24). Finally, even though all of the testimony was admissible, counsel's representation was not deficient because he thoroughly cross-examined Det. Heaton regarding the lack of a direct link between Garcia and the burglaries. Garcia did not respond to the Director's answer in his reply regarding this issue. He failed to show that counsel's representation was deficient or that he was prejudiced by counsel's representation.

In claim 66L, Garcia argued that his attorney was ineffective for failing to seek a limiting instruction requiring jurors to disregard uncorroborated testimony of accomplices. Other than making the statement, he failed to develop this claim. Instead, he did nothing more than discuss a decision from a Georgia appellate court in *Mann v. State*, 252 Ga. App. 70, 555 S.E.2d 527 (Ga. App. 2001).

The Director appropriately responded by arguing that "[b]y failing to adequately brief these issues, [Garcia] has waived them." *Summers*, 431 F.3d at 870; *Woods*, 307 F.3d at 357; *Yohey*, 985 F.2d at 224-25. He also persuasively argued that the claim is wholly conclusory. He noted that even though Garcia did not identify the accomplice to whom he was referring, he presumably was referring to statements made by Rene Guajardo, and such statements were admissible as statements against interest. Counsel's representation was not deficient for failing to seek a limiting instruction that had no basis in law.

In claim 66M, Garcia presented another perfunctory claim. This time he alleged nothing more than "trial counsel failed to obtain the written statements and reports from Mr. Heaton. Counsel for Mr. Garcia asks the Court to compel the State to produce these statements and reports immediately." He failed to develop the claim. The claim should be rejected as inadequately briefed and conclusory.

145

The Director also appropriately noted that counsel was able to effectively cross-examine Det. Heaton. Garcia has not shown that his attorney's representation was deficient on this issue and that he was prejudiced by such deficient representation.

In claim 66N, Garcia alleges that his attorney was ineffective for failing to seek a pre-trial *Franks* hearing on the admissibility of all of Det. Heaton's hearsay, confession by Garcia, and accusations by co-conspirators. He provided absolutely no discussion to support the claim. It should be rejected as inadequately briefed and conclusory. The Director further persuasively argued that it has been repeatedly shown in the discussion about Det. Heaton's testimony that such testimony was admissible; thus, even if counsel had sought a hearing, he would not have been able to keep Det. Heaton from testifying. Counsel was not required to file futile motions. *Green*, 160 F.3d at 1037; *McCoy*, 874 F.2d at 963.

In claim 66O, Garcia alleges hat his attorney was ineffective for eliciting testimony from Det. Heaton about an extraneous offense. Counsel questioned Det. Heaton about Garcia bringing a rifle to be fenced. Once again, he did not develop the claim. It should be rejected as inadequately briefed and conclusory.

In claim 66P, Garcia alleged that counsel was ineffective for failing to challenge a photographic lineup and entirely hearsay testimony by Det. Heaton that co-conspirators picked out the right suspect. Once again, this involves the Jacksons picking out Garcia in a photographic lineup. Garcia did not develop this claim. It should be rejected as inadequately briefed and conclusory.

Garcia's last ineffective assistance of counsel claim as it relates to Det. Heaton's testimony is claim 66Q. This time he alleged that counsel was ineffective for failing to object to in-custody interrogation and oral statements made by him as a juvenile. He added that Det. Heaton also told jurors that Garcia lied to him about his name; nonetheless, counsel failed to object. As before, Garcia

failed to develop the claim. He failed to develop the claim in his reply to the answer even though he was clearly placed on notice of the shortcomings of his petition by the Director's answer. Claim 66Q should be rejected as inadequately briefed and conclusory. The Director also appropriately noted that questions posed to Garcia about his name, place of employment and the like do not fall within the definition of custodial interrogation. *See, e.g., Jones v. State*, 795 S.W.2d 171, 176 (Tex. Crim. App. 1990). Counsel had no basis to object to such testimony. Claim 66Q lacks merit.

Claims 66I through 66Q involving Det. Heaton's testimony should be dismissed for several additional reasons. Despite Garcia's perfunctory discussion of the factual basis of many of his claims, the claims were fully developed during the state habeas corpus proceedings. The trial court made the following findings of fact with respect to these claims:

24.     Detective Heaton testified to his investigation involving burglaries in Plano, Texas. 27 R.R. 189.

25.     Detective Heaton testified to statements made by Rene Guajardo which implicated [Garcia] in extraneous burglaries. 27 R.R. 190, 197.

26.     Detective Heaton testified that during his investigation witnesses were able to identify [Garcia] out of a photographic lineup. 27 R.R. 205.

27.     Any decision by counsel not to object to the testimony of Detective Heaton was not facially unreasonable.

28.     Trial counsel used weaknesses in Detective Heaton's testimony to cross-examine the witness. 27 R.R. 196-203.

29.     [Garcia] did not provide proof of what documents he complains of regarding trial counsel's failure to obtains documents from Detective Heaton.

30.     [Garcia] did not provide proof of the content of the complained of documents.

31.     [Garcia's] trial counsel performed a complete cross-examination of Detective Heaton. 27 R.R. 196-203.

32.     Detective Heaton did not bring any documents to court. *Id.*

33.     During his testimony, Detective Heaton testified that he questioned [Garcia].  27 R.R. 207.

34.     Detective Heaton asked [Garcia] to identify himself.  *Id.*

35.     [Garcia] lied about his name.  *Id.*

6 SHCR-02 at 2174-75.  These findings of fact were supported by the record.   Garcia has not rebutted

the presumption of correctness with clear and convincing evidence.

The trial court went on to issue the following conclusions of law:

26.     The statements made by Rene Guajardo and related by Detective Heaton were admissible as statements against interest.  See T.R.E. 803(24) (Vernon 2003).

27.     The statement made by Rene Guajardo were exceptions to hearsay.  *Id.*

28.     Article 38.14 has no application to evidence of [Garcia's] extraneous offenses offered in the punishment phase of his capital murder trial.  *Jackson v. State*, 65 S.W.3d 317, 321 (Tex. App. - Waco 2001, no pet.).

29.     The requirement imposed by the Texas accomplice witness rule is entirely a product of the Texas Legislature and not of Federal Import.

30.     The requirement of the Texas accomplice witness rule does not apply to the punishment phase of a trial.  *See Jackson v. State*, 65 S.W.3d 317, 321 (Tex. App. - Waco, no pet.).

31.     Since the accomplice witness rule was not applicable in this situation, [Garcia's] trial counsel was not deficient for failing to request such instruction or object to the court's failure to include such instruction.  *Matthews v. State*, 960 S.W.2d 750, 753 (Tex. App. - Tyler 1997, no pet.).

32.     Requesting the instructions [Garcia] complains of would have been futile.

33.     Counsel cannot be ineffective for failing to do something which would be futile.  *See Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997).

34.     There is no reasonable likelihood that had trial counsel made an objection to the court's failure to include the complained of instructions, the outcome of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).  [Garcia] has not shown that failure to request either instruction resulted in harm or that his counsel's actions fell below those constituting reasonable professional assistance.  *Strickland*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

35.     [Garcia] has failed to allege and prove facts concerning trial counsel's cross-examination, which if true, would entitle him to relief. *Ex parte Maldonado*, 688 S.W.2d at 116.

36.     [Garcia] has not shown harm from counsel's decision on how to conduct his cross-examination or that his counsel's actions fell below those constituting reasonable assistance. *Strickland*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

37.     Counsel's performance in cross-examining Detective Heaton was not deficient. *Id.*

38.     [Garcia] fails to identify evidence supporting his contention that trial counsel was ineffective and deficient in his cross-examination of Detective Heaton and has inadequately briefed this issue. *Alvarado v. State*, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995).

39.     Questions seeking [Garcia's] name did not constitute custodial interrogation. *Hernandez v. State*, 13 S.W.3d 78, 81-82 (Tex. App. - Texarkana 2000, no pet.).

40.     Regardless of counsel's motivations, the testimony [Garcia] complains of would not have been subject to a motion to suppress or an objection even if one had been made. *Id.*

41.     Because such questions did not constitute custodial interrogation, trial counsel was not deficient for not objecting to such statements. *Matthews v. State*, 960 S.W.2d 750, 753 (Tex. App. - Tyler 1997, no pet.).

6 SHCR-02 at 2178-79. The TCCA subsequently found that these ineffective assistance of counsel claims lacked merit and that it agreed with the trial court's findings and conclusions that Garcia failed to demonstrate deficient performance or prove resulting harm. *Ex parte Garcia*, 2008 WL 4573962, at *1.

In the present petition, Garcia simply repeated his claims exactly as he presented them to the state courts. He failed to show or even attempt to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, he failed to overcome, or even make any

attempt to overcome, the doubly deferential standard that governs the analysis of this ineffective assistance of counsel claim in conjunction with § 2254(d). Overall, with respects to claims 66I through 66Q, Garcia simply has not shown that his trial attorney was ineffective nor satisfied the requirements of § 2254(d); thus, relief should be denied.

### Claim 66R: Trial counsel failed to object to hearsay of an owner of a car dealership regarding recovery of cars allegedly stolen by Garcia as a juvenile.

In claim 66R, Garcia alleges that his attorney was ineffective with respect to testimony provided by Eddie W. Bradley, a manager of a Plano car dealership. Bradley reported that on November 21, 1988, someone broke into the building, stole all of the car keys from the lock box, and took two cars from the lot. The thieves drove through the cable barrier crossing the driveway. The cars were found several weeks later driven by someone near Plano High School. Garcia noted that Bradley had no personal knowledge of the recovery of these cars, but he merely reported what was told to him.

The Director correctly observed that Garcia failed to identify an objection that would have been successful. Garcia further failed to explain how this testimony affected the outcome of the trial. Indeed, Garcia has once again raised a claim that was inadequately briefed and conclusory. He has not shown that his attorney's representation was deficient or that he was prejudiced by such deficient representation. He has not satisfied his burden of showing ineffective assistance of counsel.

Claim 66R should also be rejected in light of § 2254(d). The trial court made the following findings of fact with respect to the claim:

19.    The State called the victims of the burglaries, Eddie Bradley, Kathleen Kripatitis, Sandra Klein, and Rodney Marks to testify to circumstances of the burglaries. 28 R.R. 15-19, 19, 23, 24-28, and 31.

20. Each victim was able to relate information about property that had been stolen, the method by which it had been taken, and what was returned after being found in [Garcia's] possession. 28 R.R. 15-19, 21-22, 25, 30.

36. Mr. Eddie Bradley testified to an incident involving the burglary of a building housing his car delearship and the theft of an automobile. 28 R.R. 14-19.

37. Mr. Bradley testified from personal knowledge. *Id.*

38. [Garcia] participated in the theft of the automobile that was the subject of Mr. Bradley's testimony.

39. [Garcia's] confession to Officer Tulley supported the claims made by Mr. Bradley.

6 SHCR-02 at 2174-75. These findings of fact were supported by the record. The trial court went on to issue the following conclusions of law:

7. Evidence of [Garcia's] juvenile criminal history and unadjudicated juvenile acts were admissible under article 37.071. Tex. Code Crim. Proc. art. 37.0711.

8. Because evidence of [Garcia's] . . . acts committed as a juvenile were admissible in the punishment phase of his capital murder trial, counsel's performance was not deficient. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

9. Even if there was an arguable objection, it was not beyond the realm of reasonable performance not to object. *Ex parte Morrow*, 952 S.W.2d 530, 537 (Tex. Crim. App. 1997).

*Id.* at 2177. The TCCA subsequently found that the ineffective assistance of counsel claim lacked merit and that it agreed with the trial court's findings and conclusions that Garcia failed to demonstrate deficient performance or prove resulting harm. *Ex parte Garcia*, 2008 WL 4573962, at *1.

In the present petition, Garcia simply repeated his claim exactly as he presented it to the state courts. He failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings. Furthermore, he failed to overcome, or even make any attempt to overcome, the doubly deferential standard that governs the analysis of this ineffective assistance of counsel claim in conjunction with § 2254(d). Overall, with respect to claim 66R, Garcia has not shown that his trial attorney was ineffective nor satisfied the requirements of § 2254(d); thus, relief should be denied.

**Claim 66S: Trial counsel failed to object to the hearsay statements of Deputy Mehman, Deputy Blackburn and Deputy Ponder.**

In claim 66S, Garcia stated nothing more than "[t]hese were guards involved in responding to the attempted escape by inmates at the Ellis Unit. They were described what they were told by other guards, rather than what they observed." Pet. 349. The Director persuasively argued that the claim should be rejected because it was inadequately briefed and was conclusory. Indeed, Garcia failed to satisfy his burden of showing that his attorney's representation was deficient on this matter or that he was prejudiced by such deficient representation. He failed to satisfy his burden of showing ineffective assistance of counsel.

Claim 66S should also be rejected in light of § 2254(d). The trial court made the following findings of fact with respect to the claim:

40.     Deputies Mehman, Blackburn, and Ponder were employed with the Collin County Sheriffs office. 28 R.R. 31, 74-75, 106.

41.     All deputies were jailers who monitored [Garcia] while he was housed in the Collin County jail. *Id.*

42.     Any decision by counsel not to object to the testimony of Mehman, Blackburn, or Ponder, was not facially unreasonable.

43.     None of the deputies worked for the Texas Department of Criminal Justice.

6 SHCR-02 at 2175-76. These findings of fact were supported by the record. The trial court went on to issue the following conclusion of law:

42. Any statements made by [Garcia] which were heard by Collin County deputies would be admissible as statements of a defendant.  Tex. R. Evid. 801(e)(2).

*Id*. at 2180.  The TCCA subsequently found that the ineffective assistance of counsel claim lacked merit and that it agreed with the trial court's findings and conclusions that Garcia failed to demonstrate deficient performance or prove resulting harm.  *Ex parte Garcia*, 2008 WL 4573962, at *1.

In the present petition, Garcia simply repeated his claim exactly as he presented it to the state courts.  He failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Furthermore, he failed to overcome, or even make any attempt to overcome, the doubly deferential standard that governs the analysis of this ineffective assistance of counsel claim in conjunction with § 2254(d).  Overall, with respect to claim 66S, Garcia has not shown that his trial attorney was ineffective nor satisfied the requirements of § 2254(d); thus, relief should be denied.

### Claim 66T:  Trial counsel failed to challenge the signature on the note signed by Garcia in the jail demanding a match.

In claim 66T, Garcia claims that his attorney was ineffective with respect to testimony provided by Deputy Mehman.  Mehman testified that inmates Garcia and Wilson were confined in a single cell. 28 RR(2001) 85.  Inmate Wilson gave Mehman a note that "basically stated that if they could not have a match or could not smoke that they would rather die."  *Id.*  They subsequently observed Wilson banging his head on the glass door.  *Id.*  The deputies asked the inmates to open the door, but they refused.  *Id.*  The inmates had jammed a roll of toilet paper between the wall and the door and a ballpoint pen was stuck in the door track.  Consequently, the door would not open.  Garcia contends

that his attorney was ineffective because he should have objected to the admission of the note on the basis that no one ever testified that it was Garcia's signature or handwriting.

The Director noted that Deputy Ponder subsequently testified that Garcia was doing most of the talking. *Id.* at 108-09. He correctly opined that the evidence demonstrates that Garcia was complicit in the behavior and assented to the contents of the note. Thus counsel did not have any basis to object. If he had objected, then the objections would have been overruled. The Director persuasively argued that counsel was not ineffective for failing to make a futile objection. *Green*, 160 F.3d at 1037; *McCoy*, 874 F.2d at 963. The Director also appropriately noted that even if the note should have been excluded, the deputies' testimony regarding the incident would not have been excluded. Consequently, Garcia has not shown prejudice. The Court concludes that Garcia has not satisfied either *Strickland* prong.

Claim 66T should also be rejected in light of § 2254(d). The trial court made the following findings of fact with respect to the claim:

44.     Deputy Mehman monitored [Garcia] while he was housed in the Collin County Jail. 28 R.R. 31.

45.     Deputy Mehman testified that both [Garcia] and his cellmate refused to open their cell door. 28 R.R. 86.

46.     A note was passed out to deputies signed by both prisoners. 28 R.R. 87.

47.     Both [Garcia] and his cellmate had placed mattresses up against the cell door and were looking out the cell door window during the incident. 28 R.R. 89.

48.     [Garcia] was doing most of the communicating with the jail staff during the incident. 28 R.R. 108.

6 SHCR-02 at 2176. These findings of fact were supported by the record. The trial court went on to issue the following conclusions of law:

154

43.     Deputy Mehman's testimony along with the testimony of other deputies, supported the conclusion that [Garcia] signed the note passed to deputies during the time [Garcia] and his cellmate were barricaded in their cell.

44.     There was sufficient circumstantial as well as direct evidence to support admission of the note into evidence.

*Id.* at 2180.  The TCCA subsequently found that the ineffective assistance of counsel claim lacked merit and that it agreed with the trial court's findings and conclusions that Garcia failed to demonstrate deficient performance or prove resulting harm.  *Ex parte Garcia*, 2008 WL 4573962, at *1.

In the present petition, Garcia simply repeated his claim exactly as he presented it to the state courts.  He failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Furthermore, he failed to overcome, or even make any attempt to overcome, the doubly deferential standard that governs the analysis of this ineffective assistance of counsel claim in conjunction with § 2254(d).  Overall, with respect to claim 66T, Garcia has not shown that his trial attorney was ineffective nor satisfied the requirements of § 2254(d); thus, relief should be denied.

### Claim 66U:  Trial counsel failed to challenge Royce Smithey's qualifications in a 702 hearing.

In support of claim 66U, Garcia provided a one sentence statement asserting that "[a] full discussion of the problems with Mr. Smithey's dicey qualifications appears above." Pet. 349.  Once again, Garcia failed to adequately brief the claim and it is wholly conclusory.  Furthermore, trial counsel, in fact, repeatedly objected to Smithey's qualifications during the State's direct examination, which were overruled.  Smithey's qualifications were reviewed out of the presence of the jury.  34

RR(2001) 17-53. Counsel fully questioned Smithey about his qualifications. *Id.* at 38-53. He then objected to Smithey "testifying to anything in this case." *Id.* at 53. Counsel provided a number of reasons why he objected to Smithey testifying. *Id.* at 53-54. The trial court overruled the objections. *Id.* at 54. On appeal, the TCCA overruled Garcia's points of error challenging the trial court's decision allowing Smithey to testify. *Garcia II*, 2008 WL 22669744, at *4-5. Garcia has not shown that his attorney was ineffective with respect to this issue.

In the state habeas proceedings, the TCCA found that the ineffective assistance of counsel claim lacked merit. *Ex parte Garcia*, 2008 WL 4573962, at *1. In the present petition, Garcia simply repeated his claim exactly as he presented it to the state courts. He failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, he failed to overcome, or even make any attempt to overcome, the doubly deferential standard that governs the analysis of this ineffective assistance of counsel claim in conjunction with § 2254(d). Overall, with respect to claim 66U, Garcia has not shown that his trial attorney was ineffective nor satisfied the requirements of § 2254(d); thus, relief should be denied.

### Claim 66V: Trial counsel failed to request instruction of definition in charge of key term "reasonable doubt" or make proper objections to its omission.

In claim 66V, Garcia alleges that his attorney was ineffective for failing to request an instruction of definition of the term "reasonable doubt" or make proper objection to its omission. In support of his claim, he cited nothing more than decisions by courts in Georgia, Montana and Tennessee, which are not authority in Texas. On the other hand, his argument lacks merit in light of

binding authority in Texas. Prior to the sentencing retrial in this case, the TCCA overruled an earlier decision requiring trial courts to instruct juries on the definition of "beyond a reasonable doubt" and found "that the better practice is to give no definition of reasonable doubt at all to the jury." *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). Moreover, as discussed in conjunction with Claim Number 41, the Supreme Court has clearly stated that the Constitution does not require courts to define reasonable doubt. *Victor*, 511 U.S. at 5. The Fifth Circuit has further observed that "attempts by trial courts to define 'reasonable doubt' have been disfavored by this court." *Thompson*, 821 F.2d at 1961. The trial court's decision not to define "reasonable doubt" complied with clearly established law by the Supreme Court, the Fifth Circuit and the Texas Court of Criminal Appeals. Counsel's failure to request a definition of the term or object to its omission did not constitute ineffective assistance of counsel. Counsel was not required to make frivolous or futile motions or objections. *Johnson*, 306 F.3d at 255; *Koch v. Puckett*, 907 F.2d at 527. A failure to make meritless objections does not result in the ineffective assistance of counsel. *Clark*, 19 F.3d at 966 (the "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite."). Garcia's inclusion of the present ineffective assistance of counsel claim in light of clearly established law was disingenuous.

Claim 66V should also be rejected in light of § 2254(d). The trial court made the following finding of fact with respect to the claim:

50. There was no instruction in the Court's charge defining the term "reasonable doubt." 6 SHCR-02 at 2176. The finding of fact is clearly supported by the record. The trial court went on to issue the following conclusion of law:

45. Failure to include a definition of the term "reasonable doubt" or object to the omission of such term in the court's charge did not constitute deficient performance on the part of trial counsel. *See Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000).

157

*Id*. at 2180. The TCCA subsequently found that the ineffective assistance of counsel claim lacked merit and that it agreed with the trial court's findings and conclusions that Garcia failed to demonstrate deficient performance or prove resulting harm. *Ex parte Garcia*, 2008 WL 4573962, at *1.

In the present petition, Garcia simply repeated his claim exactly as he presented it to the state courts. He failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, he failed to overcome, or even make any attempt to overcome, the doubly deferential standard that governs the analysis of this ineffective assistance of counsel claim in conjunction with § 2254(d). Overall, with respect to claim 66V, Garcia has not shown that his trial attorney was ineffective nor satisfied the requirements of § 2254(d); thus, relief should be denied.

**Claim 66W: Trial counsel failed to object to interview of Garcia by the State's psychologist and forced waiver of his Fifth Amendment right to silence or to challenge constitutionality of *Lagrone v. State*.**[20]

In claim 66W, Garcia complains that his attorney allowed him to be interviewed by a state psychologist without objecting or preserving the issue. In support of the claim, Garcia stated only that "it may be impossible for anyone to overcome *Lagrone v. State*, but without an objection, the matter may be procedurally defaulted for federal review." Pet. 397. Garcia did not discuss *Lagrone*, the significance of the case, how the decision applies to the present case, or how counsel was ineffective in this matter. Once again, Garcia failed to adequately brief the claim, and it is wholly conclusory. Relief should be denied.

---

[20]942 S.W.2d 602 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997).

It is noted, however, that the TCCA held that a trial court may "order criminal defendants to submit to a state-sponsored psychiatric exam on future dangerousness when the defense introduces, *or plans to introduce*, its own future dangerousness expert testimony." *Lagrone*, 942 S.W.2d at 611 (emphasis in original). In the present case, Garcia presented two expert witnesses regarding future dangerousness: Dr. Quijano and Dr. Kessner. In light of *Lagrone*, the State was entitled to have a state psychologist interview Garcia since he presented his own future dangerousness expert. Any objection raised by counsel would have been futile in light of the TCCA's decision in *Lagrone*. Once again, counsel was not required to make frivolous or futile motions or objections. *Johnson*, 306 F.3d at 255; *Koch*, 907 F.2d at 527.

Garcia, nonetheless, argues that counsel should have preserved the issue for federal review. The Fifth Circuit discussed *Lagrone* in *Brewer v. Quarterman*, 475 F.3d 253 (5th Cir. 2006), *cert. denied*, 552 U.S. 834 (5th Cir. 2007). The Fifth Circuit rejected complaints about *Lagrone* as follows:

> Brewer's first claim actually consists of two sub-parts. One sub-part claims that Brewer's Fifth Amendment right against self-incrimination was violated when the state court ordered him to submit to an examination by the prosecution's psychiatric expert before he presented any psychiatric evidence at trial. Although Brewer had not yet presented any psychiatric evidence, he had explicitly indicated to the court an intent to do. The Texas Court of Criminal Appeals upheld the trial court's decision, relying on *Lagrone v. State,* 942 S.W.2d 602 (Tex.Crim.App.1997), which states that a trial court may "order criminal defendants to submit to a state-sponsored psychiatric exam on future dangerousness when the defense introduces, *or plans to introduce,* its own future dangerousness expert testimony." *Id.* at 611 (emphasis in original).

> The district court, in denying habeas on this claim, found that *Lagrone* was neither contrary to nor an unreasonable application of clearly established. Although the Supreme Court has never directly addressed the constitutionality of the Texas rule, it has signaled that an intent to present psychiatric evidence is material to determining the petitioner's Fifth Amendment rights. *See Estelle v. Smith,* 451 U.S. 454, 465-66, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) ("When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case .... Respondent, however, introduced no psychiatric evidence, nor had he indicated that he might do so."). In this case, Brewer did indicate that he might introduce psychiatric evidence. The Texas courts have stated that the

purpose behind ordering the defendant to submit to the prosecutor's psychiatric examination is to protect the effectiveness of that examination as rebuttal. *Lagrone,* 942 S.W.2d at 611 ("Prohibiting the trial court from ordering a psychiatric exam until after the defense has actually presented his own expert testimony is bound to work against the State in almost every case."). It can hardly be said that jurists of reason would debate with the district court's decision to deny habeas on this claim.

*Id.* at 256-57 (footnote omitted). In light of *Brewer*, Garcia's complaints about *Lagrone* lack merit. Counsel was not ineffective for failing to object to the State interviewing Garcia since he presented his own expert witnesses on future dangerousness.

Claim 66W should also be rejected in light of § 2254(d). The trial court made the following findings of fact with respect to the claim:

51.    [Garcia] made no objection to speaking with the State's psychologist.

52.    [Garcia] acknowledges that Texas law is contrary to his position regarding his claim of ineffective assistance of counsel for allowing him to speak with the State's psychologist. See [Garcia's] application at p. 171.

6 SHCR-02 at 2176. The TCCA subsequently found that the ineffective assistance of counsel claim lacked merit and that it agreed with the trial court's findings and conclusions that Garcia failed to demonstrate deficient performance or prove resulting harm. *Ex parte Garcia*, 2008 WL 4573962, at *1.

In the present petition, Garcia simply repeated his claim exactly as he presented it to the state courts. He failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, he failed to overcome, or even make any attempt to overcome, the doubly deferential standard that governs the analysis of this ineffective assistance of counsel claim in

conjunction with § 2254(d).  Overall, with respect to claim 66W, Garcia has not shown that his trial

attorney was ineffective nor satisfied the requirements of § 2254(d); thus, relief should be denied.

**Claim 66X:  Trial counsel failed to put Garcia on the stand outside the jury's presence to create a record of what he would have explained really occurred during his interview and confession.**

In claim 66X, Garcia asserts that counsel should have challenged the voluntariness of the

confession and built a record for the higher courts by putting him on the stand to explain what really

occurred.  He argued that his testimony in a hearing would likely have altered the analysis and decision

of the trial court to permit the confessions, and would have provided a record for later federal use.

The Director persuasively argued that given the strength of the confessions and the fact that

the TCCA had already found them admissible, it would have been poor trial strategy to subject Garcia

to cross-examination with no hope of getting the confessions deemed inadmissible on his word alone.

This issue was likewise addressed by the state courts.  The trial court issued the following

conclusion of law with respect to the claim:

> 51.    Any decision not to place [Garcia] on the stand and subject him to cross-examination is not facially unreasonable.

6 SHCR-02 at 2180.  The TCCA then found that the ineffective assistance of counsel claim lacked

merit and that it agreed with the trial court's findings and conclusions that Garcia failed to demonstrate

deficient performance or prove resulting harm.  *Ex parte Garcia*, 2008 WL 4573962, at *1.

In the present petition, Garcia simply repeated his claim exactly as he presented it to the state

courts.  He failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the Supreme Court of the United States, or resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings. Furthermore, he failed to overcome, or even make any attempt to overcome, the doubly deferential standard that governs the analysis of this ineffective assistance of counsel claim in conjunction with § 2254(d). With respect to the doubly deferential analysis, the "question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S. Ct. at 788. The trial court's finding that the "decision not to place [Garcia] on the stand and subject him to cross-examination is not facially unreasonable" more than satisfies the doubly deferential standard. Overall, with respect to claim 66X, Garcia has not shown that his trial attorney was ineffective nor satisfied the requirements of § 2254(d); thus, relief should be denied.

## CONCLUSION

Having carefully considered all of Garcia's claims, the Court is of the opinion, and so finds, that he has not shown that he is entitled to federal habeas corpus relief and his petition should be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a federal habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Garcia has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander*, 211 F.3d at 898 (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the

requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Garcia's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). The Court thus finds that Garcia is not entitled to a certificate of appealability as to his claims. It is accordingly

**ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the case is **DISMISSED** with prejudice. It is further

**ORDERED** that a certificate of appealability is **DENIED**. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

**SIGNED** this the **10** day of **November, 2014.**

_____
Thad Heartfield
United States District Judge